STUART F. DELERY
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

BRIGHAM J. BOWEN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail: Brigham.Bowen@usdoj.gov

*Attorneys for Defendants Federal Bureau
of Investigation, Eric Holder, State
Department, John Kerry, James B.
Comey, and Christopher M. Piehota*[1]

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| YONAS FIKRE,<br><br>     *Plaintiff,* | Case 3:13-cv-00899-BR |
| v.<br><br>THE FEDERAL BUREAU OF INVESTIGATION, et al.,<br><br>     *Defendants*. | **OFFICIAL-CAPACITY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), James B. Comey may be substituted for defendant Robert S. Mueller as the current Director of the Federal Bureau of Investigation, while Christopher M. Piehota may be substituted for defendant Timothy Healy as the current Director of the Terrorist Screening Center.

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................2

I.    Plaintiff's Claims Concerning The No Fly List Are Not Ripe For Review............2

II.   Plaintiff's Claims Concerning The No Fly List Should Be Dismissed
      Because He Failed To Exhaust His Administrative Remedies Prior To
      Filing Suit........................................................................................................4

III.  Plaintiff's First And Fifth Claims Fail To State An Actionable Claim
      Because He Has Not Been Prevented From Entering The United States. .............6

IV.   Plaintiff's Sixth Claim Should Be Dismissed Because The Government's
      Traveler Redress Inquiry Program Fully Complies With Due Process. ...............10

      A.    Plaintiff Fails To Allege The Invasion Of A Cognizable Protected
            Interest....................................................................................................10

      B.    The Government Provides Sufficient Process While Protecting Its
            Interest In Preventing The Disclosure Of Law Enforcement And
            National Security Information. .................................................................12

            1.    Due Process Does Not Require The Government To Reveal
                  The Basis For An Individual's Placement On The No Fly
                  List. ...........................................................................................13

            2.    Due Process Does Not Require The Government To Reveal
                  Whether An Individual Is On The No Fly List. ...........................17

            3.    Due Process Does Not Require A More Open Redress
                  Process. .....................................................................................20

V.    Plaintiff's Claims Should Be Dismissed As To The Department Of State...........23

VI.   Plaintiff's Second Claim Should Be Dismissed.................................................23

CONCLUSION.....................................................................................................26

# TABLE OF AUTHORITIES

## CASES

*ACLU v. U.S. Dep't of Defense*,
628 F.3d 612 (D.C. Cir. 2011) ......................................................................... 19

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,
686 F.3d 965 (9th Cir. 2012) ............................................................... 13, 15, 16

*Aleknagik Natives Ltd. v. Andrus*,
648 F.2d 496 (9th Cir. 1980) ............................................................................. 4

*Al-Kidd v. Gonzales*,
No. CV 05-093, 2007 WL 4391029 (D. Idaho Dec. 10, 2007) ......................... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................ 23, 24, 25

*Bareford v. Gen. Dynamics Corp.*,
973 F.2d 1138 (5th Cir. 1992) ......................................................................... 19

*Barnard v. DHS*,
531 F. Supp. 2d 131 (D.D.C. 2008) .................................................................. 18

*Bassiouni v. CIA*,
392 F.3d 244 (7th Cir. 2004) ........................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 24

*Buckingham v. Sec'y of U.S. Dep't of Agric.*,
603 F.3d 1073 (9th Cir. 2010) ......................................................................... 12

*Califano v. Aznavorian*,
439 U.S. 170 (1978)........................................................................................... 8

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)............................................................................... 17, 19

*Conservation Force v. Salazar*,
677 F. Supp. 2d 1203 (N.D. Cal. 2009) ........................................................... 23

*Dep't of the Navy v. Egan*,
484 U.S. 518 (1988)......................................................................................... 21

*Doe v. Rumsfeld*,
No. 1:08-cv-1902-JSG, Dkt. No. 78 (D.D.C. Sept. 7, 2012) .......................... 5, 6

*Ege v. DHS*,
No. 13-1110, Docket No. 1455976 (D.C. Cir. Sept. 11, 2013) ........................ 22

*Eunique v. Powell*,
  302 F.3d 971 (9th Cir. 2002) ..................................................................................... 8

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996) ..................................................................................... 8

*Gilbert v. Homar*,
  520 U.S.924 (1997).............................................................................................. 12, 16

*Global Relief Found., Inc. v. O'Neill*,
  315 F.3d 748 (7th Cir. 2002) ................................................................................... 14

*Gordon v. FBI*,
  388 F. Supp. 2d 1028 (N.D. Cal. 2005) ................................................................... 18

*Haig v. Agee*,
  453 U.S. 280 (1981).......................................................................................... 7, 8, 17

*Handy v. Shaw, Bransford, Veilleux & Roth*,
  325 F.3d 346 (D.C. Cir. 2003) ................................................................................... 5

*Holder v. Humanitarian Law Project*,
  130 S. Ct. 2705 (2010)......................................................................................... 13, 17

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
  333 F.3d 156 (D.C. Cir. 2003) ............................................................................ 13, 14

*In re Nat'l Sec. Agency Telecommc'ns Records Litig.*,
  700 F. Supp. 2d 1182 (N.D. Cal. 2010) ................................................................... 16

*Islamic Am. Relief Agency v. Unidentified FBI Agents*,
  394 F. Supp. 2d 34 (D.D.C. 2005), *aff'd in part*, 477 F.3d 728 (D.C. Cir. 2007) ................... 14

*Jifry v. FAA*,
  370 F.3d 1174 (D.C. Cir. 2004) ......................................................................... *passim*

*Latif v. Holder*,
  __ F. Supp. 2d __, 2013 WL 4592515 (D. Or. Aug. 28, 2013) ........................... 7, 11

*Latif v. Holder*,
  686 F.3d 1122 (9th Cir. 2012) ................................................................................. 22

*Marbury v. Madison*,
  5 U.S. (1 Cranch) 137 (1803)................................................................................... 15

*McCarthy v. Madigan*,
  503 U.S. 140 (1992).............................................................................................. 4, 5

*Meridian Int'l Logistics, Inc. v. United States*,
  939 F.2d 740 (9th Cir. 1991) ................................................................................... 15

*Mohamed v. Jeppesen Dataplan, Inc.*,
  614 F.3d 1070 (9th Cir. 2010) ................................................................................. 19

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001) ............................................................................ 13, 16

*Nguyen v. INS*,
    533 U.S. 53 (2001) ......................................................................................................... 7

*Omni Capital Int'l, Inc. v. Rudolph Wolff & Co.*,
    484 U.S. 97 (1987) ......................................................................................................... 2

*Patterson by Patterson v. FBI*,
    893 F.2d 595 (3d Cir. 1990) ....................................................................................... 14

*Personal Elec. Transports, Inc. v. Office of U.S. Tr.*,
    313 Fed. Appx. 51 (9th Cir. 2009) ............................................................................. 23

*Rahman v. Chertoff*,
    530 F.3d 622 (7th Cir. 2008) ...................................................................................... 17

*Raz v. Mueller*,
    389 F. Supp. 2d 1057 (W.D. Ark. 2005) .................................................................... 18

*Shearson v. Holder*,
    725 F.3d 588 (6th Cir. 2013) .................................................................................... 5, 6

*Stehney v. Perry*,
    101 F.3d 925 (3d Cir. 1996) .................................................................................. 13, 15

*Tabbaa v. Chertoff*,
    509 F.3d 89 (2d Cir. 2007) ......................................................................................... 13

*Tooley v. Bush*,
    No. 06-cv-00306, 2006 WL 3783142 (D.D.C. Dec. 21, 2006) ................................. 17

*Tooley v. Napolitano*,
    556 F.3d 836 (D.C. Cir. 2009), *vacated on reh'g*, 586 F.3d 1006 (D.C. Cir. 2009) ............... 18

*United States v. Hawkins*,
    249 F.3d 867 (9th Cir. 2001) ...................................................................................... 15

*United States ex rel Milestone Tarant, LLC  v. Federal Ins. Co.*,
    672 F. Supp. 2d 92 (D.D.C. 2009) ............................................................................... 5

*US West Commc'ns v. MFS Intelenet, Inc.*,
    193 F.3d 1112 (9th Cir. 1999) ...................................................................................... 3

*Weinberger v. Salfi*,
    422 U.S. 749 (1975) ....................................................................................................... 6

*Williams v. Garza*,
    Case No. 06-cv-01569, 2009 WL 3081963 (E.D. Cal. Sept. 22, 2009) ..................... 24

## STATUTES

19 U.S.C. § 1433 ............................................................................................................ 7

19 U.S.C. § 1459 ............................................................................................................ 7

49 U.S.C. § 114(h)(3) .................................................................................................... 8

49 U.S.C. § 44903(j)(2)(A) ........................................................................................... 8

## RULES AND REGULATIONS

EO 13526 (Dec. 29, 2009) ........................................................................................... 16

8 C.F.R. § 235.1(a) ......................................................................................................... 7

19 C.F.R. §§ 4.7b, 4.64 ................................................................................................ 12

## MISCELLANEOUS

*Report on Effects on Privacy & Civil Liberties* (2006) ........................................... 11, 12

DHS TRIP, at http://www.dhs.gov/dhs-trip ............................................................. 22

TSC Redress Procedures, at http://www.fbi.gov/about-us/nsb/tsc/tsc_redress .................... 19, 20

## OFFICIAL-CAPACITY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

### INTRODUCTION

This Court should reject Plaintiff's effort to obtain wide-ranging injunctive relief relating to the administration of the TSDB and the redress process.[2] His complaint brings an array of claims regarding the No Fly List, and the process available to individuals who believe that they have been denied boarding on U.S. commercial aircraft to, from, or over the United States due to their alleged inclusion on the list.[3] Yet Plaintiff has not alleged that he was actually denied boarding on any plane, and, as he now concedes, he failed to submit a DHS TRIP inquiry prior to filing suit. Accordingly, Plaintiff's challenges are unripe and he did not exhaust available administrative remedies. His claims are also legally without merit, as he has not been prevented from returning to the United States, and the redress procedures available to individuals who believe that they are improperly included on the No Fly List fully comport with due process. Finally, the remaining count in Plaintiff's complaint (Count II) fails to satisfy basic standards of notice pleading and does not state an actionable claim. Plaintiff's claims against the official-

---

[2] As the Government noted in its opening brief, although each count of Plaintiff's First Amended Complaint raises claims concerning only Plaintiff, the relief requested includes broad injunctive relief prohibiting the government from taking various actions vis-à-vis "United States citizens" as a class. *See* Am. Compl. [Dkt. #10] at 19–20. This relief is beyond the Court's power. This is not a class action, and Plaintiff lacks standing to assert the rights of third parties. Mot. to Dismiss Mem. [Dkt. #22] at 5 n.6 (collecting cases). Plaintiff concedes as much by not addressing this issue in his opposition.

[3] Plaintiff alleges six counts based on (I) the Fourteenth Amendment's guarantee of a right to citizenship, (II) an unidentified cause of action concerning torture, (III) a right to counsel, (IV) the Fifth Amendment right against self-incrimination, (V) the Fifth Amendment guarantee of substantive due process, and (VI) the Fifth Amendment guarantee of procedural due process. Plaintiff appears to bring Counts I, II, V, and VI against some or all of the official-capacity defendants, and Counts I, II, III, and IV against two government "agents" in their individual capacities.

capacity defendants ("Defendants")[4] should therefore be dismissed.

## ARGUMENT

## I.    Plaintiff's Claims Concerning The No Fly List Are Not Ripe For Review.

Plaintiff's first, fifth, and six claims concern his purported inability to fly to the United States based on Defendants' implementation of the No Fly List and the process available for challenging alleged inclusion on that list. But Plaintiff does not allege that he has ever been denied boarding on any specific flight. Instead, Plaintiff only vaguely alleges that he once was effectively denied boarding because UAE officials "were unable to obtain a ticket and boarding pass for [him] to travel to the United States" in September 2011. Pl.s' Opp'n [Dkt. #27] at 7; *see also id.* at 5 (alleging without any explanation that the United States somehow "prevented plaintiff from even acquiring a ticket and boarding pass"). There are numerous problems with this contention.

First, it is embellishment unsupported by the facts alleged in the Amended Complaint. In that filing, Plaintiff alleges that, over two years ago, some unidentified foreign "authorities" were told by some other unidentified individual(s) that he would not be permitted to fly to the United States. Am. Compl. ¶ 49. Plaintiff does not allege that he himself ever attempted to purchase or was ever denied the ability to purchase an airline ticket to the United States or print a boarding pass.

Second, Plaintiff has not alleged any attempt to fly to the United States since September 2011, and he does not allege that he has any plans to make an attempt in the imminent future.

---

[4] The individual defendants have not been served, and thus they are not properly before the Court at this time. *See Omni Capital Int'l, Inc. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Accordingly, neither Defendants' motion to dismiss nor this memorandum addresses Counts III or IV, or any of the other counts as they relate to the individual defendants.

Instead, Plaintiff relies on the declaration of his counsel suggesting that he has engaged in discussions with Government counsel about the possibility of Plaintiff traveling to the United States under terms, conditions, and guarantees demanded by Plaintiff. *See* Nelson Decl. [Dkt. #27-3]. But a refusal to attempt to purchase an airline ticket and board a flight to the United States until the Government agrees to mandated terms is plainly not the same as a denial of boarding due to inclusion on the No Fly List. Accordingly, the mere allegation, outside of the pleadings, that the Government has not acceded to conditions on travel demanded by Plaintiff does nothing to fix the fatal flaw in Plaintiff's claim to ripeness: He has not attempted to return to the United States by commercial aircraft or any other means, and he has not alleged any imminent plans to do so.

Instead of presenting a recent denial of boarding, and alleging imminent plans to fly with reason to believe that the denial would be repeated, Plaintiff relies only on vague, outdated, word-of-mouth allegations about the actions of foreign "authorities." These allegations clearly do not set out a serious attempt by Plaintiff himself to travel to the United States. Indeed, Plaintiff does not even allege having contacted the U.S. Embassy in Sweden for assistance regarding his desire to return, despite his clear awareness that the Embassy may be able to provide assistance. *See* Am. Compl. ¶ 27; Pl.'s Opp'n at 7. His claims are therefore not ripe: The issues presented thereby are not fit for judicial resolution, and Plaintiff cannot complain of hardship resulting from his own decision not even to attempt to return to the United States, much less by air.[5]

---

[5] Importantly, the hardship that Plaintiff would have to demonstrate to excuse the unripeness of his claims is hardship directly related to his ability to obtain future relief, whether judicial or nonjudicial, on those claims if the court declines to address them now. Hardship in the ripeness analysis is therefore distinct from other purported hardships alleged by Plaintiff, such as his alleged past experiences with foreign authorities, his status in Sweden, and the Scandinavian winter. *See US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)

3 – OFFICIAL-CAPACITY DEFS.' REPLY MEM. IN SUPP. OF MOT. TO DISMISS
*Fikre v. FBI, et al.*, No. 3:13-cv-00899-BR

II.     **Plaintiff's Claims Concerning The No Fly List Should Be Dismissed Because He Failed To Exhaust His Administrative Remedies Prior To Filing Suit.**

In addition to the lack of ripeness, Plaintiff's first, fifth, and sixth claims should be dismissed as a prudential matter because he failed to avail himself, prior to filing suit, of the established administrative procedure for seeking redress for claims of denied boarding based on alleged placement on the No Fly List. Plaintiff alleges that he is wrongfully on the No Fly List, yet he rushed to court before submitting an inquiry through the DHS TRIP process, which might have resolved his claim. Plaintiff contends that he submitted a request through DHS TRIP in November 2013 (after Defendants moved to dismiss) and that the exhaustion issue should therefore be treated as "moot."

The exhaustion doctrine is not amenable to "mootness" in this sense. The very purpose of the exhaustion doctrine advances "the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers <u>before</u> it is haled into federal court." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992) (superseded by statute on other grounds) (emphasis added). To permit post-filing exhaustion turns the doctrine on its head and sanctions the very rush to court that the doctrine is designed to prevent. As the Ninth Circuit has observed, federal agencies have an interest "in having an opportunity to make a factual record and exercise [their] discretion without the threat of litigious interruption, in discouraging frequent flouting of the administrative process, and in correcting [any] mistakes to obviate unnecessary judicial proceedings." *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 500 (9th Cir. 1980). Moreover, the post-filing attempt at exhaustion here places the Government in the position of responding to Plaintiff in two parallel, but distinct,

---

(stating that, to satisfy the requirement of hardship, Plaintiff must show "that withholding review would result in direct and immediate hardship").

proceedings: his administrative request and this case. Such separate proceedings "have long been recognized as a judicial inconvenience." *Handy v. Shaw, Bransford, Veilleux & Roth*, 325 F.3d 346, 349 (D.C. Cir. 2003). "[P]arallel litigation of factually related cases in separate fora is inefficient," *id.*, and it "would be an inefficient use of both the Court's and the parties' resources to simultaneously debate the same issues in two distinct forums," *United States ex rel Milestone Tarant, LLC  v. Federal Ins. Co.*, 672 F. Supp. 2d 92, 102 (D.D.C. 2009). Thus, the adverse effects of Plaintiff's failure to exhaust have been compounded by his decision to litigate the validity of the same matter simultaneously in separate judicial and administrative proceedings.

To the extent Plaintiff deems the Government's response to his late-filed administrative request inadequate, he should file his lawsuit after the completion of that process, not, as he has done here, before even engaging it.[6] *See Shearson v. Holder*, 725 F.3d 588, 594 (6th Cir. 2013) (requiring plaintiff to exhaust her administrative remedies through DHS TRIP before bringing a procedural due process challenge); *Doe v. Rumsfeld*, No. 1:08-cv-1902-JSG, Dkt. No. 78 at 3 (D.D.C. Sept. 7, 2012) (unreported decision) (instructing plaintiff who claimed that he was wrongfully included "on a terrorist watch list" to apply to DHS TRIP to obtain final agency action).

Requiring exhaustion will generate additional benefits. For example, "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided." *McCarthy*, 503 U.S. at 145. And even where a "controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or

---

[6] In this respect, Plaintiff is unlike the plaintiffs in the *Latif* and *Tarhuni* matters pending before this Court. In both those cases, the plaintiffs amended their pleadings after submitting requests to DHS TRIP. *See Tarhuni v. Holder*, No. 13:1, Dkt. #13 at ¶ 36; *Latif v. Holder*, No. 10-750, Dkt. #83 at ¶ 40.

technical factual context." *Id.*; *see also Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). If

exhaustion were not required here, the courts could be flooded by claims from any number of

individuals alleging some perceived delay or slight associated with government security

screening efforts. *See Shearson*, 725 F.3d at 594 (requiring exhaustion through DHS TRIP "will

promote judicial efficiency" because "[m]aking it easier for plaintiffs to bypass the Redress

Program will burden the courts when many cases can be easily resolved"); *Doe*, Dkt. #78 at 3.

There is no reason this Court should involve itself in Plaintiff's alleged difficulties when he has

not taken the steps towards resolution that are within his power and the agencies have not had a

sufficient opportunity to determine whether any administrative steps should be taken in response

to his DHS TRIP redress application.

### III.    Plaintiff's First And Fifth Claims Fail To State An Actionable Claim Because He Has Not Been Prevented From Entering The United States.

If the Court considers Plaintiff's claims against the official-capacity defendants, it should

determine that they lack merit. Plaintiff's complaint brings two counts — his first and fifth

claims — regarding his "Right to Return to Homeland." *See* Am. Compl. ¶¶ 55, 67. While the

first claim arises under a "right to citizenship" under the Fourteenth Amendment and the fifth

claim arises under Fifth Amendment substantive due process, both claims contend that the

alleged inclusion of Plaintiff's name on the No Fly List denies him the right to enter the United

States. *See id.* Under either theory, Plaintiff's claims fail. To the Government's knowledge, no

court has recognized a "right to return" to the United States, much less by any specific mode of

travel, arising under the Fourteenth or Fifth Amendments. At most, the Citizenship Clause[7] may

permit U.S. citizens to enter the United States at a port of entry. Mot. to Dismiss Mem. at 12–14;

---

[7] Plaintiff appears to concede — by not addressing the point — that the Privileges and
Immunities Clause, which applies to the states, has no application to the Federal Government.
Pl.'s Opp'n at 7–8; Mot. to Dismiss Mem. at 13 n.11.

*cf. Nguyen v. INS*, 533 U.S. 53, 67 (2001) (mentioning in *dicta* a citizen's right to enter the nation's "borders"). But, of course, a U.S. citizen does not actually attempt to enter the United States until he or she actually presents himself or herself at a U.S. port of entry. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section."); 19 U.S.C. §§ 1433 (entry requirements for vessels, vehicles, and aircraft, including place of entry), 1459 (mandating those not entering with a vessel, vehicle, or aircraft must "enter the United States only at a border crossing point designated by the Secretary"). Plaintiff's complaint does not allege that he has been denied such entry, or that he has even presented himself at a port of entry, and he thus fails to state a claim upon which relief can be granted.

In the face of these arguments, Plaintiff offers merely two paragraphs, neither citing any legal authority. First, Plaintiff argues that he is prevented from presenting himself at a port of entry by his alleged status on the No Fly List. But this argument conflates his interest in international travel — such as it may be, *see Haig v. Agee*, 453 U.S. 280, 306 (1981) (international travel interest is "no more than an aspect of the liberty" protected by due process); *cf. Latif v. Holder*, __ F. Supp. 2d __, 2013 WL 4592515, at *9 (D. Or. Aug. 28, 2013) (identifying protected liberty interest in international travel for purposes of procedural due process, rather than as a fundamental right)[8] — with whatever rights Plaintiff may have as a citizen once he is at a port of entry into the United States.

---

[8] To the extent Count V could possibly be read to allege a claim to international travel as a fundamental right, it is inadequately pled. In any event, Plaintiff's briefing appears to adopt the view that Count V is not an "international travel" claim akin to those brought by other plaintiffs who have filed similar lawsuits in this Court. And even if it were such a claim, it should be dismissed on the merits for the reasons advanced by the Government in those cases. There is no

Moreover, even if Plaintiff is on the No Fly List — something the Government neither confirms nor denies — such inclusion does not pose an insurmountable or unreasonable barrier to return to the United States. Defendants acknowledge that any person placed on the No Fly List may face additional complication in traveling to the United States. But Plaintiff is incorrect to suggest, particularly without any factual development, that a denial of the ability to fly to the United States constitutes a denial of the opportunity to enter the country. Indeed, Plaintiff admits he is aware that the U.S. Embassy may be able to facilitate his return to the United States, Am. Compl. ¶ 27; Pl.'s Opp'n at 7; but he has declined to pursue that possibility.

Second, Plaintiff contends that the Government has somehow misconstrued his allegations to be about security screening at airports. Not so. The Government's argument, now unrebutted by Plaintiff, is that Plaintiff's insistence that every U.S. citizen abroad must be allowed to travel by commercial flight to the U.S., regardless of any potential security risk he or she may pose, presents an intolerable risk to the national security. Mot. to Dismiss Mem. at 14. Congress has required that the potential security threat of all passengers be evaluated prior to boarding an aircraft. See 49 U.S.C. § 44903(j)(2)(A) (requiring the Government to use a sanctioned screening system to "evaluate all passengers before they board an aircraft" and to ensure that "individuals selected by the system and their carry-on and checked baggage are adequately screened."). In addition, Congress has required the Government to "to use information from government agencies" to identify travelers who may pose a threat to national security, and to "prevent [those] individuals from boarding an aircraft." 49 U.S.C. § 114(h)(3).

---

right to international travel, and such travel is "subordinate to national security and foreign policy considerations." *See Haig*, 453 U.S. at 306; *Califano v. Aznavorian*, 439 U.S. 170, 177 (1978) (restrictions on international travel permissible unless "wholly irrational."); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996) ("Given the lesser importance of ... freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for imposing the ban."); *Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002).

8 – OFFICIAL-CAPACITY DEFS.' REPLY MEM. IN SUPP. OF MOT. TO DISMISS
*Fikre v. FBI, et al.*, No. 3:13-cv-00899-BR

Plaintiff, like all other individuals flying to, from, or over the United States, whether U.S. citizens or not, must undergo all of the aviation security programs, not just the screening at airport checkpoints. The Government understands Plaintiff to argue that while he does not object to some aviation security programs, he believes that others should not be applied to him (or any U.S. citizen). But Congress has entrusted the Executive, not Plaintiff, to determine what aviation security measures are necessary. Plaintiff's suggestion that the Government should adopt his own alternative aviation security screening regime for himself and other U.S. citizens is misplaced and baseless.

Aside from these misplaced arguments, Plaintiff has no answer to the Government's contentions about the factual inadequacy of his "right to return" claim: He does not allege that he has ever been denied entry to the United States when arriving at a port of entry, and he cannot show that a future denial of entry is likely. He does not allege that he is completely unable to return to the United States by all modes of travel, or that he would be prevented from entering upon his arrival at the border once here. Indeed, Plaintiff himself — rather than unnamed authorities seeking to deport him from the UAE — has not even alleged that he ever attempted to purchase an airline ticket to the United States. Further, Plaintiff does not allege that he has ever attempted to board a flight to the United States or that he has ever attempted to reach the country by any other means (*e.g.*, by way of flights not entering U.S. airspace, travel through other nations, and/or travel by sea). All that he alleges is that someone once told him in 2011 that he cannot fly to the United States.

For all these reasons, Counts I and V should be dismissed.

**IV.    Plaintiff's Sixth Claim Should Be Dismissed Because The Government's Traveler Redress Inquiry Program Fully Complies With Due Process.**

Plaintiff's sixth count raises a procedural due process claim against Defendants FBI, TSC, Holder, and Piehota. This claim fails for several reasons. Most fundamentally, Plaintiff does not allege the deprivation of a protected interest. Regardless, the Government's redress process is appropriately tailored to honor due process in the unique context of transportation and national security, where the Government's interests are paramount.[9]

**A.    Plaintiff Fails To Allege The Invasion Of A Cognizable Protected Interest.**

A plaintiff must show that he has been deprived of a protected interest in order to trigger any due process entitlement to notice and a meaningful opportunity to challenge the alleged deprivation. As the Government has demonstrated, Plaintiff has not done so. He contends that his alleged placement on the No Fly List deprived him of the right to return to the United States, *see* Am. Compl. ¶ 51, but he has not even tried to travel to the United States by commercial flight or any other means, let alone to enter the country. His entire due process claim thus flows from his assumptions that he is on the No Fly List, and that he would be denied boarding if he attempted to fly to the United States, but such untested assumptions do not demonstrate the deprivation of any protected interests.

Plaintiff's assumptions aside, he has still failed to allege the deprivation of a constitutionally protected interest. To the extent Plaintiff relies on a liberty interest in air travel,

---

[9] Plaintiff's arguments to the contrary begin with the mistaken suggestion that this Court in *Latif* has already rejected <u>all</u> of Defendants' arguments concerning procedural due process. Pl.'s Opp'n at 8 n.7 ("This Court went through the three-factor balancing test discussed infra to determine whether under the circumstances (being placed on the no fly List under the current TRIP process) plaintiffs had been provided due process and concluded that they had not."). Of course, that was not the Court's holding. Rather, the Court recognized a protected liberty interest in international travel by air but withheld judgment on the second and third *Mathews* factors, and the ultimate question of due process, pending further briefing.

he overstates the nature of the interest because there is no protected liberty interest in traveling by particular means, whether domestically or internationally. Defendants are, of course, mindful of the decision in *Latif v. Holder*, __ F. Supp. 2d __, 2013 WL 4592515 (D. Or. Aug. 28, 2013), holding that there is a protected liberty interest in international travel. The Government respectfully disagrees for the reasons set forth in its opening brief.

Plaintiff's additional arguments in response should be rejected. <u>First</u>, many of Plaintiff's contentions are simply conjecture and overstatement. For example, Plaintiff suggests that his alleged status on the No Fly List deprives him of "virtually *all* of the constitutional protections plaintiff might enjoy as a United States citizen," simply because he resides in Sweden. Pl.'s Opp'n at 9. Not mentioned, of course, is the fact that Plaintiff has undertaken no serious efforts to rectify these supposedly comprehensive deprivations by attempting in any way to return home or even to visit the U.S. Embassy to learn more information. In any event, such hyperbole about unspecified <u>other</u> "constitutional protections" does nothing to demonstrate why the particular interest asserted here enjoys constitutional protection.

<u>Second</u>, Plaintiff offers the unproven contention that any alternative means of travel to the United States are "illusory," using the solitary suggestion (from an eight-year-old report) that U.S. Customs and Border Protection ("CBP") screens ship passengers against watchlists. *Id.* (citing Department of Homeland Security, *Report on Effects on Privacy & Civil Liberties* (2006), at <u>http://www.dhs.gov/xlibrary/assets/privacy/privacy_rpt_nofly.pdf</u>, at *i* ("DHS Privacy Report"). In making this suggestion, for which there is no factual support in the Amended Complaint, Plaintiff overstates the import of the report cited. There, mention is only made of

screening; there is no suggestion that travel by persons on watchlists on cruise ships is (or was, in 2006) forbidden. *See*, *e.g.*, DHS Privacy Report at *i*.[10]

**B.    The Government Provides Sufficient Process While Protecting Its Interest In Preventing The Disclosure Of Law Enforcement And National Security Information.**

Even if Plaintiff had alleged a deprivation of a protected liberty or property interest stemming from his purported placement on the No Fly List, the procedural protections afforded by the Government to prevent and redress erroneous placement on the list fully comply with due process requirements.[11] In light of the paramount governmental interests in the context of aviation and national security, and taking into consideration each of the *Mathews* factors, the redress process made available to Plaintiff, which culminates in impartial judicial review in a court of appeals, is appropriately balanced and should be upheld.

Plaintiff's challenge to this process is three-fold: he demands revelation of the basis for his alleged inclusion on the list; he demands disclosure of his status on the list; and he demands a greater (but unspecified) opportunity to be heard than what is presently afforded him. He is entitled to none of these things under the Constitution.

---

[10] CBP's regulations regarding requirements for the provision of passenger and crew member manifests from commercial vessel carriers to CBP are included in 19 C.F.R. §§ 4.7b and 4.64. Neither regulation includes a requirement for commercial vessel carriers to remove an individual from a vessel or prevent the individual from boarding at CBP's request.

[11] The Court may, as the D.C. Circuit did in *Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004), assume without deciding the existence of a protected interest and uphold the Government's redress process after considering the *Mathews* factors. 370 F.3d at 1183; *see also Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1081 (9th Cir. 2010) (assuming that plaintiff possessed property interest in grazing permit but upholding Forest Service requirements); *Gilbert v. Homar*, 520 U.S. 924 (1997) (assuming that police officer was deprived of property interest without pay, and considering process afforded).

### 1. *Due Process Does Not Require The Government To Reveal The Basis For An Individual's Placement On The No Fly List.*

The Government's opening brief amply demonstrated the risks to national security arising from disclosure of the basis for an individual's listing on the No Fly List. *See*, *e.g.*, *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727 (2010) ("[N]ational security and foreign policy concerns arise in connection with efforts to confront evolving threats in an area where information can be difficult to obtain and the impact of certain conduct difficult to assess."); *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 980 (9th Cir. 2012) ("[T]he Constitution certainly does not require that the government take actions that would endanger national security."); *see also Jifry v. FAA*, 370 F.3d 1174,  1181–84  (D.C. Cir. 2004) (in determining whether plaintiffs posed threats to civil aviation, "substitute procedural safeguards may be impracticable [in those cases] and in any event, are unnecessary" because of "the governmental interests at stake and the sensitive security information" involved; as a result, due process did not require that plaintiffs be given the "specific evidence" upon which the determinations are based); *Tabbaa v. Chertoff*, 509 F.3d 89, 93 n.1 (2d Cir. 2007); *Stehney v. Perry*, 101 F.3d 925, 931–32 (3d Cir. 1996) (finding that judicial review of the merits of an Executive Branch decision to grant or deny a security clearance would violate separation-of-powers principles); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 207 (D.C. Cir. 2001) ("*NCRI*") ("[T]hat strong interest of the government [in protecting against the disclosure of classified information] clearly affects the nature … of the due process which must be afforded petitioners."). As the D.C. Circuit explained in *NCRI*, disclosure of classified information "is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the security which that branch is charged to protect." *Id.* at 208–209.

Importantly, even assuming Plaintiff is correct to allege he is on the No Fly List — a fact the Government can neither confirm or deny — Plaintiff apparently seeks disclosure of such sensitive information to him (and/or his counsel), and not solely to an impartial adjudicator, such as the court of appeals. This demand is clearly misguided. Assuming such information exists, the Constitution does not require its disclosure to Plaintiff at his behest. *See Jifry*, 370 F.3d at 1181– 84 (rejecting due process claim arising from withdrawal of airman's certificates, in part because of the availability of *ex parte*, *in camera* judicial review); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (rejecting "claim that the use of classified information disclosed only to the court *ex parte* and *in camera*" in designation of a foreign terrorist organization violated due process); *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748, 754 (7th Cir. 2002) (statute not unconstitutional because it "authorizes the use of classified evidence that may be considered *ex parte* by the district court…. The Constitution would indeed be a suicide pact if the only way to curtail enemies' access to assets were to reveal information that might cost lives…." (internal citation omitted)); *Patterson by Patterson v. FBI*, 893 F.2d 595, 600 n.9, 604–605 (3d Cir. 1990) (unfairness remedied by "*in camera* examination by the trial court of the withheld documents and any supporting or explanatory affidavits"); *Islamic Am. Relief Agency v. Unidentified FBI Agents,* 394 F. Supp. 2d 34, 45 (D.D.C. 2005), *aff'd in part*, 477 F.3d 728 (D.C. Cir. 2007) (recognizing in IEEPA context plaintiff's review of the administrative record is "limited only to those portions of the administrative record that are not classified" while the Court "has before it both the classified and unclassified administrative record"). As these cases demonstrate, the availability of review by a neutral decisionmaker, even when that review is *ex parte* and *in camera*, is a significant factor in assessing due process and, because such review is provided by the process at issue here, warrants rejection of Plaintiff's

claim. *See, e.g., Jifry*, 370 F.3d at 1181–84; *see also Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (civil litigant's "interests as a litigant are satisfied by the ex parte/in camera decision of an impartial district judge"); *cf. Stehney*, 101 F.3d at 936 (finding that an agency may revoke a security clearance without affording the holder of the clearance "[t]he right to confront live witnesses, review information from prior investigations, or to present live testimony" because affording those rights would not "improve[] the fairness of the revocation process"); *Holy Land Found.*, 333 F.3d at 164.

Plaintiff's response to this authority is largely to ignore it. Instead, Plaintiff invokes longstanding case law, including *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), for the apparent (but largely irrelevant) proposition that the court has jurisdiction to determine questions of law. Pl.'s Opp'n at 16–17. The argument appears to be that the separation of powers requires judicial involvement in this dispute. But Plaintiff's argument fails to address the pertinent question of <u>how</u> the court should resolve the dispute, *i.e.*, whether the law requires the Government to disclose to a person allegedly on the No Fly List the basis for that listing, should the allegation be true. And for the reasons amply set forth in the case law, the answer to that question is no.

Indeed, the primary authority on which Plaintiff seems to rely — *Al Haramain* — speaks precisely to that point, and undermines Plaintiffs' contentions. As the Government previously noted, *Al Haramain* involved the designation of an organization as a supporter of Al-Qaeda based on a record that included classified information filed *ex parte* and *in camera*. 686 F.3d at 985. That decision resulted in the blocking of assets by the Office of Foreign Assets Control which "deprived AHIF-Oregon of its ability to use any funds whatsoever, for any purpose." *Id.* at 980, 985–86. By contrast, alleged restrictions on Plaintiff's ability to fly by commercial airplane

have limited effects on his alleged liberty interests. Moreover, IEEPA designations are public and corrective, to be distinguished from the preventative and inherently predictive determinations about who should and should not be placed on the No Fly List. The former involves a conclusion that an entity supports terrorism and should accordingly be blocked, entirely, from using assets. The latter involves a conclusion that an individual may pose a risk to aviation security sufficient to warrant the prophylactic prevention of boarding. These distinctions mean that, in the No Fly List context vis-à-vis IEEPA, the governmental interest in nondisclosure is stronger, and the individual's contrary interests are weaker. *Gilbert*, 520 U.S. at 930 (noting flexibility of due process analysis).

In any event, the *Al Haramain* court of appeals notably required only that the government consider steps to mitigate any burden from reviewing classified information *in camera* and *ex parte*, not to actually disclose the classified information to the other side. *Id.* at 988–89, 1001. Plaintiff appears to demand more than governmental consideration of other approaches; rather, he appears to insist that the Government be required to turn over the information, regardless of its classified status, at least to counsel. Pl.'s Opp'n at 14, 17.[12] The Constitution does not require such a result. *See NCRI*, 251 F.3d at 208–209 (disclosure of classified information "is within the privilege and prerogative of the executive, and we do not intend to compel a breach in the

---

[12] Plaintiff cites to the district court litigation in *Al Haramain* for the proposition that this Court could somehow order the Executive Branch to investigate and provide authorization for counsel to receive classified information. Pl.'s Opp'n at 14 & n.16. This reliance is misplaced. Most importantly, although the district court did require the Executive Branch to conduct an investigation of counsel to assess eligibility to receive classified information (an order the Government believes was inappropriate), the court expressly did <u>not</u> require the Executive Branch to actually grant access to any classified information, *i.e.*, to determine counsel had a "need to know" warranting disclosure. *See generally In re Nat'l Sec. Agency Telecommc'ns Records Litig.*, 700 F. Supp. 2d 1182, 1190–91 (N.D. Cal. 2010); *see also* EO 13526 (Dec. 29, 2009); *Al Haramain*, 686 F.3d at 988–89, 1001. And the Government did not make such a determination. *In re Nat'l Sec. Agency Telecommc'ns Records Litig.*, 700 F. Supp. 2d at 1191.

security which that branch is charged to protect"). Such matters "are rarely proper subjects for

judicial intervention." *Haig*, 453 U.S. at 292; *Humanitarian Law Project*, 130 S. Ct. at 2727

("But when it comes to collecting evidence and drawing factual inferences in [national security

and foreign relations], the lack of competence on the part of the courts is marked, and respect for

the Government's conclusions is appropriate.") (internal quotation marks and citation omitted);

*see also United States v. Hawkins*, 249 F.3d 867, 873 n.2 (9th Cir. 2001) (government interest in

"ensuring national security" is "important in [itself]… but courts have long recognized that the

Judicial Branch should defer to decisions of the Executive Branch that relate to national

security."); *Rahman v. Chertoff*, 530 F.3d 622, 628 (7th Cir. 2008) ("[M]odesty is the best

posture for the branch that knows the least about protecting the nation's security and that lacks

the full kit of tools possessed by the legislative and executive branches.").

### 2. *Due Process Does Not Require The Government To Reveal Whether An Individual Is On The No Fly List.*

Nor does due process require the revelation to Plaintiff of whether or not he is on the No

Fly List, even after DHS TRIP redress review. The Government cited to numerous cases

honoring the Government's significant interest in maintaining across-the-board confidentiality of

precisely this kind of information. *See*, *e.g.*, *Clapper*, 133 S. Ct. at 1149 n.4 (2013);[13] *Tooley v.*

*Bush*, No. 06-cv-00306, 2006 WL 3783142, at *20 (D.D.C. Dec. 21, 2006) (observing that "if

---

[13] Plaintiff's discussion of *Clapper* is misguided. Pl.'s Opp'n at 16 n.18. Plaintiff appears to surmise that, because he received a FISA notice from the U.S. Attorney's office during the pendency of his criminal case, he must be the subject of "surveillance" under FISA. (*Clapper* involved alleged, but unconfirmed, Government surveillance of the plaintiffs.) Even assuming that is the case, it is a meaningless fact in this context. It does nothing to undermine the Supreme Court's recognition that sensitive information concerning the Government's interest in a private individual may warrant protection and should not be inappropriately disclosed to a private party by way of litigation. 133 S. Ct. at 1149 n.4. In any event, the question at issue here is not whether Mr. Fikre is or may be the subject of surveillance in general, but whether the Constitution requires the Government to divulge to him the particular fact of whether he is or is not (and if he is, the basis for his inclusion) on the No Fly List.

[the Government] were to confirm in one case that a particular individual was not on a watch list, but was constrained in another case merely to refuse to confirm or deny whether a second individual was on a watch list, the accumulation of these answers over time would tend to reveal [sensitive security information]"), *rev'd & remanded in part on other grounds*, *Tooley v. Napolitano*, 556 F.3d 836 (D.C. Cir. 2009), *vacated on reh'g*, 586 F.3d 1006 (D.C. Cir. 2009) (affirming original district court opinion); *cf. Bassiouni v. CIA*, 392 F.3d 244, 245–46 (7th Cir. 2004) (explaining that if the "CIA opens its files most of the time and asserts the state-secrets privilege only when the information concerns a subject under investigation or one of its agents, then the very fact of asserting the exemption reveals that the request has identified a classified subject or source"); *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005); *Al-Kidd v. Gonzales*, No. CV 05-093, 2007 WL 4391029, at *8 (D. Idaho Dec. 10, 2007); *Raz v. Mueller*, 389 F. Supp. 2d 1057, 1062–63 (W.D. Ark. 2005); *Barnard v. DHS*, 531 F. Supp. 2d 131, 134 (D.D.C. 2008) (upholding withholding of records in response to plaintiff's FOIA request to "obtain records related to him that could explain why he has been detained, questioned, and/or searched in airports during and after his international trips beginning in January 2003").

Plaintiff's response is primarily to attempt to distinguish these cases on their facts. But these are distinctions without material difference. The broad point is that there are significant governmental interests in preventing disclosure of an individual's status, and courts have honored those and similar interests in many contexts. And to that point, Plaintiff has no answer but to contend that Plaintiff has <u>other</u> interests — that is, interests other than a purported interest in whether or not he is on a list (such as "being able to travel to and from, and reside in" the United States, Pl.'s Opp'n at 16) — that somehow countervail the government's demonstrated

interest in keeping watchlist status information confidential. The only pertinent interest here is Plaintiff's interest in confirmation of his watchlist status. Here, in light of the Government's paramount interests in confidentiality across the board, that interest should give way.

Plaintiff also notes that he alleges that he was at one point told he was on the No Fly List, Pl.'s Opp'n at 15, but that allegation does not significantly help his cause. In the first instance, it raises the question of why Plaintiff even needs further notice in light of the alleged revelation of his status. Why does Plaintiff demand something more? The answers to this question prove the point: For both the Government and the individual who may be on the No Fly List, there is a marked qualitative difference between old status information and present status information. Likewise, there is a difference for both sides between suspected, but unconfirmed, government information, and official government confirmation of that information. *See ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 625 (D.C. Cir. 2011) (stating that "even if information exists in some form in the public domain that does not mean that official disclosure will not cause harm"); *see also Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1090 (9th Cir. 2010) (citing *Bareford v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1144 (5th Cir. 1992) (in some circumstances, "disclosure of information by government officials can be prejudicial to government interests, even if the information has already been divulged by non-government sources")).

Because of these differences, the Government has substantial interests in maintaining the confidentiality of an individual's status vis-à-vis the No Fly List, and in preventing an individual from obtaining information about his status in an official, confirmed way. *Id*. And in order to serve those interests, the policy should be uniformly applied. Withholding No Fly List status information from individuals has important strategic value for the Government that is not overcome by Plaintiff's interest in that information. *See Clapper*, 133 S. Ct. at 1149 n.4; TSC

Redress Procedures, at http://www.fbi.gov/about-us/nsb/tsc/tsc_redress ("The watchlist remains an effective tool in the government's counterterrorism efforts because its contents are not disclosed. The nondisclosure of the watchlist information protects the government's operational counterterrorism and intelligence collection objectives, as well as the personal safety of those involved in counterterrorism investigations.").

### 3. *Due Process Does Not Require A More Open Redress Process.*

Plaintiff's remaining arguments target the Government's redress process, which he contends is "no process at all." Pl.'s Opp'n at 17. The Government respectfully disagrees and points to, among others, the *Jifry* case for a highly analogous circumstance in which the Court of Appeals for the D.C. Circuit held squarely that *ex parte*, *in camera* review by a neutral arbiter, *i.e.*, a court of appeals, satisfied the requirements of the Due Process Clause. There, the Government revoked airman certificates held by pilots and required for their employment. Assuming *arguendo* that this revocation implicated a protected property interest, the Court concluded that the pilots' interests, even though their livelihood was implicated, "pales in significance to the government's security interests in preventing pilots from using civil aircraft as instruments of terror." 370 F.3d at 1183.[14] Moreover, "[w]hatever the risk of erroneous deprivation," that risk was countered by the pilots' ability to file an administrative challenge, obtain *de novo* administrative review, and seek *ex parte*, *in camera* judicial review of the record. *Id.* Thus, the Court concluded, "[i]n light of the governmental interests at stake and the sensitive security information, substitute procedural safeguards may be impracticable, and in any event, are unnecessary under our precedent." *Id.* As in *Jifry*, Plaintiff's interest in further process also pales in comparison to the Government's interest in protecting the nation's airways.

---

[14] Notably, this holding did not depend on the merits of the revocation, *i.e.*, whether the pilots were appropriately deemed a security risk. 370 F.3d at 1183.

Plaintiff ignores *Jifry*. Instead, much of Plaintiff's argument consists of various alternative processes that he appears to believe are required by the Constitution. These proposals are not required, not feasible, and otherwise misplaced. For example, one suggestion is that the Government could be required to disclose the "basis" for listing or "disclos[e] the outlines of the basis for the suspicion under a protective order." Pl.'s Opp'n at 14, 17. But Plaintiff is challenging an administrative process, not a judicial one, and there is no court of general jurisdiction that could appropriately issue such orders in every instance in which the Government places someone's name on the No Fly List. In any event, the "outlines of the basis for the suspicion" will almost certainly consist of sensitive national security information that is not appropriate for disclosure, even under a protective order. *See* Part IV.B.1, *supra* (collecting cases holding that the Government cannot be required to turn over classified information).[15] A related suggestion, that the Government should be required to investigate and clear a "recipient" of the sensitive information, Pl.'s Opp'n at 14, 17, is misplaced for nearly identical reasons. Requiring the Government to turn over classified information to a private party is not within this Court's power. *Dep't of the Navy v. Egan*, 484 U.S. 518, 527 (1988); *cf.* Part IV.B.1, *supra*. So, too, with Plaintiff's suggestion that "redactions might be employed to protect the source of [sensitive information]," Pl's Opp'n at 17. This suggestion ignores the reality that both sources of information and the information itself can be, and in this context, is almost certain to be,

---

[15] Plaintiff also contends, without citation, that "informing persons denied boarding the reason for such denial would impose no additional fiscal or administrative burden on the government, and additional special screening and searches can assure that individuals are carrying no contraband, and such screening and searches and would cause only negligible additional fiscal and administrative burdens, if any." Pl.'s Opp'n at 14. There is no basis in fact for this broad assertion. Quite to the contrary, one need not speculate to recognize that the fiscal and administrative burdens associated with conducting "additional special screening" of persons otherwise eligible for listing on the No Fly List, each time such persons attempted to board planes, would be enormous.

classified and not amenable to disclosure.

Of course, simply because the Government is not required to reveal the basis for placing an individual on the No Fly List does not mean that the individual is powerless to submit information. During the redress review process, an individual can submit evidence of his choosing through DHS TRIP. *See* DHS TRIP, at http://www.dhs.gov/dhs-trip. Such information will both be considered administratively and included in the record reviewed by the court of appeals. *See Arjmand v. DHS*, Dkt. No. 49, No. 12-71748 (9th Cir.); *Ege v. DHS*, No. 13-1110, Docket Nos. 1455976 (order granting motion to file declaration *ex parte* and under seal) (D.C. Cir. Sept. 11, 2013), 1470788 (Dec. 16, 2013) (motion to file the administrative record). Second, while the process is not wholly open, Plaintiff is wrong to characterize it as "no process at all." In addition to the opportunity to present evidence, the process culminates in independent judicial review by the court of appeals, a factor courts have considered significant when assessing the adequacy of the process afforded, even when that review occurs *ex parte* and *in camera*. *See* Part IV.B.1, *supra* (collecting cases).[16]

At bottom, Plaintiff's claim is wrapped up in his demand for more information, *i.e.*, his status with respect to the No Fly List and, if he is on the list, the basis for his inclusion. As amply demonstrated, the Government's profound interests in aviation security require that such information not be disclosed. The Government does, however, provide Plaintiff the requisite

---

[16] Plaintiff's contention that the Ninth Circuit's decision in *Latif* somehow "recognized that issues of this type are appropriately lodged in the District Court for initial resolution," Pl.'s Opp'n at 18, is incorrect and misses the point entirely. The question relating to appellate review here is whether the process currently afforded is adequate under the Due Process Clause. That process includes judicial review in the courts of appeals. The question addressed in *Latif* was whether a plaintiff's challenge to that process could be heard appropriately in district court.

Plaintiff elsewhere suggests that the availability through DHS TRIP of judicial review in the court of appeals was somehow assessed and "found inadequate" by the Ninth Circuit in *Latif*. Pl.'s Opp'n at 6. That is not the case. The Ninth Circuit's decision went to jurisdiction and did not address the constitutional sufficiency of DHS TRIP on the merits. *Latif*, 686 F.3d 1122.

opportunity to be heard, through a process that culminates in independent judicial review in the court of appeals. When the interests are appropriately balanced, it is apparent that the DHS TRIP redress process is adequate.

## V.    Plaintiff's Claims Should Be Dismissed As To The Department Of State.

In its opening brief, the Government made particular note of the lack of any plausible claim against the Department of State, given that agency's lack of decisionmaking authority over No Fly List determinations. Mot. to Dismiss Mem. at 12 n.10. By failing to address this issue at all in his opposition, Plaintiff concedes that Count I should be dismissed against State. Count V and Plaintiff's other claims do not appear to be brought against State at all, but even if they were, they should be dismissed for the same reason as Count I. *See Conservation Force v. Salazar*, 677 F. Supp. 2d 1203, 1211 (N.D. Cal. 2009) ("Where plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived.") (citing *Personal Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 Fed. Appx. 51, 52 (9th Cir. 2009) (affirming the district court's holding that a party waived an argument by failing to raise it in the party's opposition to the Trustee's motion to dismiss).

## VI.    Plaintiff's Second Claim Should Be Dismissed.

In its opening brief, the Government demonstrated that Count II ("Torture") is subject to dismissal for a variety of reasons. First, the complaint fails even to identify a cause of action. Instead, under the one-word heading of "torture," the claim alleges that "Defendants, including defendants Noordeloos and Dundas, enlisted foreign intermediaries to torture plaintiff at their behest. The foreign intermediaries were directed to torture plaintiff, and plaintiff was tortured in accordance with defendants' instructions." Am. Compl. ¶ 58. This form of pleading does not even include the "[t]hreadbare recitals of the elements of a cause of action" that the Supreme Court found insufficient in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); it gives Defendants no

notice of the cause of action or the basis for the claimed liability; and it fails to identify an applicable waiver of sovereign immunity. Plaintiff's defense of these deficiencies is to (1) cite the paucity of case law on the general topic of "torture," (2) restate some of his threadbare factual allegations; and (3) claim that additional evidence will come forward in discovery. In each case, Plaintiff's defense falls woefully short. The admission that there is no relevant case law only confirms the failure to identify a cause of action, and the speculation that additional evidence may come forward in discovery is precisely contrary to the requirement that plaintiff allege facts plausibly giving rise to an entitlement to relief. *See Iqbal*, 556 U.S. at 678–79 (stating that "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

As to Plaintiff's factual allegations, they clearly lack the specificity required to state a claim — particularly given that here, the claim is amorphous and unidentified. (Indeed, where there is no identified cause of action, it is impossible to assess whether the elements of that claim have been adequately pled.) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It is Plaintiff's responsibility to clearly describe for each individual defendant what that defendant did and how that defendant's actions violated Plaintiff's rights or otherwise provides for the basis of a legal claim." *Williams v. Garza*, Case No. 06-cv-01569, 2009 WL 3081963, at *3 (E.D. Cal. Sept. 22, 2009).

Plaintiff's complaint fails under this standard, as he says nothing in his complaint about how the defendants "enlisted foreign intermediaries to torture plaintiff at their behest." *See* Am.

Compl. ¶ 58. In his brief, he contends that his alleged treatment in the UAE was "part of a cooperative arrangement with the United States." Pl.'s Opp'n at 18. But neither the terms "cooperative" nor "arrangement" appear in the factual allegations concerning the UAE. The closest Plaintiff comes in his actual pleading to alleging anything about such an "arrangement" is the allegation that he was told at one point that the FBI had requested his detention and interrogation. *See* Am. Compl. ¶¶ 38, 48. But a request for detention and interrogation is a far cry from a "cooperative arrangement" in which torture is undertaken at the behest of the United States. Plaintiff's allegations are fanciful in this regard and fall well short of the requirements of Rule 8. These allegations do not provide a basis "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. He does not identify which defendants were responsible for the alleged torture, or what any particular defendant did; he fails to identify the "foreign intermediaries" allegedly enlisted to conduct torture; he does not indicate how or when they were "directed to torture" him; and he offers no allegation as to why that occurred.

The other allegations repeated in Plaintiff's brief confirm the chimerical nature of his claims: He restates that a State Department representative conducted a "cursory interview" and failed to pursue a follow-up interview, and that State failed to provide assistance satisfactory to Plaintiff after his release. Pl.'s Opp'n at 18–19. These threadbare allegations, to Plaintiff, are "indications of official complicity." *Id.* Of course, "complicity" — and even that conclusion is implausible based on the allegations Plaintiff cites — does not come close to establishing an unpleaded "cooperative arrangement," much less that the defendants sued here "enlisted" foreign intermediaries to conduct torture. At bottom, Plaintiff has no identified cause of action, no waiver of sovereign immunity, and no plausible facts even remotely suggesting his stated basis

for relief. At best, Plaintiff has conjecture and speculative conclusions. The law requires far

more. This claim, like the others, should be dismissed.

## CONCLUSION

For all of the reasons discussed above, this action should be dismissed in its entirety as

against the official-capacity defendants.


Dated: January 10, 2014                    Respectfully submitted,

                                           STUART F. DELERY
                                           Assistant Attorney General

                                           DIANE KELLEHER
                                           Assistant Branch Director

                                           */s/ Brigham J. Bowen*
                                           BRIGHAM J. BOWEN
                                           Trial Attorney
                                           Civil Division, Federal Programs Branch
                                           U.S. Department of Justice
                                           P.O. Box 883
                                           Washington, D.C.  20044
                                           Tel.: (202) 514-6289
                                           Fax: (202) 616-8470
                                           E-mail: Brigham.Bowen@usdoj.gov

                                           *Attorneys for Defendants Federal Bureau  of*
                                           *Investigation, Eric Holder, State*
                                           *Department, John Kerry, James B.*
                                           *Comey, and Christopher M. Piehota*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion was delivered to all counsel of record via the Court's ECF notification system.

*/s/ Brigham J. Bowen*
BRIGHAM J. BOWEN

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b),

54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and

quotations, but excluding the caption, table of contents, table of cases and authorities, signature

block, exhibits, and any certificates of counsel.

*/s/ Brigham J. Bowen*
BRIGHAM J. BOWEN
