STUART F. DELERY
Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director

BRIGHAM J. BOWEN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C.  20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail: Brigham.Bowen@usdoj.gov

*Attorneys for Defendants Federal Bureau
of Investigation, Eric Holder, State
Department, John Kerry, James B.
Comey, and Christopher M. Piehota*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| YONAS FIKRE,<br><br>　　　*Plaintiff,* | Case 3:13-cv-00899-BR |
| v.<br><br>THE FEDERAL BUREAU OF<br>INVESTIGATION, et al.,<br><br>　　　*Defendants.* | **OFFICIAL-CAPACITY DEFENDANTS'<br>MEMORANDUM IN SUPPORT OF<br>MOTION TO DISMISS PLAINTIFF'S<br>SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

STATUTORY AND REGULATORY BACKGROUND...............................................2

    A.    The Terrorist Screening Center And The No Fly List ..............................3

    B.    Redress Procedures For Travelers Denied Boarding ...............................4

ARGUMENT ......................................................................................................5

    I.    Plaintiff's Claims Concerning The No Fly List Are Not Ripe For Review............5

    II.    Plaintiff's First Claim Fails To State An Actionable Claim Because He Has Not Been Prevented From Entering the United States. ...................................8

    III.    Plaintiff's International Travel Substantive Due Process Claim Should Be Dismissed For Failure To State A Claim. .............................................................12

    IV.    Plaintiff's "Vagueness And Overbreadth" Claim Fails To State A Viable Claim. ................................................................................................................15

        A.    The No Fly List Criteria Are Not Overbroad...........................................16

        B.    The No Fly List Criteria Are Appropriately Balanced To Provide Both Guidance And Discretion In Application And Are Not Impermissibly Vague. ...............................................................................18

    V.    Plaintiff's Right-To-Counsel Claim Is Moot, Unripe, And Meritless. .................23

        A.    Plaintiff's Claims Arising From The Alleged Interview In Khartoum Are Moot As To Past Events And Plaintiff Lacks Standing To Seek Prospective Relief.........................................................24

        B.    Plaintiff Fails To State A Fifth Amendment Claim. .................................24

    VI.    Plaintiff's Freedom-Of-Association Claim Is Meritless. ......................................29

    VII.    Plaintiff's Procedural Due Process Claim Should Be Dismissed. .........................32

CONCLUSION....................................................................................................33

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967) ................................................................. 6, 8

*ACLU v. Gonzales*,
  237 F.R.D. 120 (E.D. Pa. 2006) ................................................. 20

*Anderson v. Alameida*,
  397 F.3d 1175 (9th Cir. 2005) ................................................... 27

*Arriaga v. Mukasey*,
  521 F.3d 219 (2d Cir. 2008) ...................................................... 18

*Ashcroft v. Free Speech Coal.*,
  535 U.S. 234 (2002) ................................................................. 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................. 29

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................. 29

*Berkemer v. McCarty*,
  468 U.S. 420 (1984) ................................................................. 28

*Betancourt v. Bloomberg*,
  448 F.3d 547 (2d Cir. 2006) ...................................................... 18

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ................................................................. 29

*Broadrick v. Oklahoma*,
  413 U.S. 601 (1973) ................................................................. 17

*Califano v. Aznavorian*,
  439 U.S. 170 (1978) ................................................................. 12

*California v. Beheler*,
  463 U.S. 1121 (1983) ............................................................... 28

*Chapman v. United States*,
  500 U.S. 453 (1991) ................................................................. 21

*Chavez v. Martinez*,
538 U.S. 760 (2003) ............................................................................ 25, 26, 27

*Chula Vista Citizens for Jobs & Fair Competition v. Norris*
2014 WL 2695532 (9th Cir. June 16, 2014) .................................... 29

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................ 24

*Clancy v. Office of Foreign Asset Control*,
2007 WL 1051767 (W.D. Wis. Mar. 31, 2007) ............................ 15

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013) .................................................................... 6, 24

*Doe v. Mann*,
415 F.3d 1038 (9th Cir. 2005) ...................................................... 16, 26

*Doyon v. Home Depot U.S.A., Inc.*,
850 F. Supp. 125 (D. Conn. 1994) ................................................ 21

*Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*,
545 F.3d 4 (D.C. Cir. 2008) ............................................................ 15

*Eunique v. Powell*,
302 F.3d 971 (9th Cir. 2002) ........................................................ 13, 14

*Freedom to Travel Campaign v. Newcomb*,
82 F.3d 1431 (9th Cir. 1996) ........................................................ 12, 13

*Gilmore v. Gonzales*,
435 F.3d 1125 (9th Cir. 2006) ...................................................... 13

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........................................................................ 18, 19

*Haig v. Agee*,
453 U.S. 280 (1981) ........................................................................ 12, 14

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ............................................................................ 19, 21, 31

*Howes v. Fields*,
132 S. Ct. 1181 (2012) .................................................................... 27, 28

*Hudson v. City of Riviera Beach*,
   2014 WL 1877412 (S.D. Fla. May 9, 2014) ................................................. 21

*Humanitarian Law Project v. U.S. Treasury Dep't*,
   578 F.3d 1133 (9th Cir. 2009) ........................................................... 19

*Ibrahim v. DHS*,
   538 F.3d 1250 (9th Cir. 2008) ............................................................. 9

*Intri-Plex Techs., Inc. v. Crest Grp.*,
   499 F.3d 1048 (9th Cir. 2007) ..................................................... 16, 26

*James v. United States*,
   550 U.S. 192 (2007) ..................................................................... 19

*Jifry v. FAA*,
   370 F.3d 1174 (D.C. Cir. 2004) ......................................................... 14

*Juran v. Independence or Cent. School Dist. 13J*,
   898 F. Supp. 728 (D. Or. 1995) ......................................................... 27

*Khan v. Holder*,
   584 F.3d 773 (9th Cir. 2009) ........................................................... 19

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ..................................................................... 20

*Latif v. Holder*,
   2014 WL 2871346 (D. Or. June 24, 2014) ........................................ 20, 21, 32

*Loya v. INS*,
   583 F.2d 1110 (9th Cir. 1978) ........................................................... 24

*McAllister v. Attorney Gen'l of U.S.*,
   444 F.3d 178 (3d Cir. 2006) ............................................................. 19

*Members of City Council v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ..................................................................... 17

*Michigan v. Jackson*,
   475 U.S. 625 (1986) ................................................................ 25, 26, 27

*Michigan v. Tucker*,
   417 U.S. 433 (1974) ..................................................................... 27

*Mohamed v. Holder*,
   2014 WL 243115 (E.D. Va. Jan 22, 2014) ....................................................... 9

*N.Y. State Club Ass'n, Inc. v. City of New York*,
   487 U.S. 1 (1988) .......................................................................................... 17

*New York v. Quarles*,
   467 U.S. 649 (1984) ...................................................................................... 28

*Nguyen v. INS*,
   533 U.S. 53 (2001) .......................................................................................... 9

*Nunez by Nunez v. City of San Diego*,
   114 F.3d 935 (9th Cir. 1997) ......................................................................... 16

*Omni Capital Int'l, Inc. v. Rudolph Wolff & Co.*,
   484 U.S. 97 (1987) ........................................................................................... 1

*Ornelas v. United States*,
   517 U.S. 690 (1996) ...................................................................................... 20

*Outdoor Media Grp., Inc. v. City of Beaumont*,
   506 F.3d 895 (9th Cir. 2007) ......................................................................... 17

*Perez v. Nidek Co., Ltd.*,
   711 F.3d 1109 (9th Cir. 2013) ....................................................................... 13

*Rahman v. Chertoff*,
   530 F.3d 626 (7th Cir. 2008) ......................................................................... 31

*Regan v. Wald*,
   468 U.S. 222 (1984) ................................................................................. 13, 14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) .................................................................... 16, 26

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ................................................................................. 29, 31

*Skoog v. Cnty. of Clackamas*,
   469 F.3d 1221 (9th Cir. 2006) ....................................................................... 31

*Smith v. Goguen*,
   415 U.S. 566 (1974) ...................................................................................... 20

*Standard Alaska Prod. Co. v. Schaible,*
    874 F.2d 624 (9th Cir. 1989) ............................................. 6

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ......................................... 29

*Stoot v. City of Everett,*
    582 F.3d 910 (9th Cir. 2009) ........................................... 25

*Tabbaa v. Chertoff,*
    509 F.3d 89 (2d Cir. 2007).............................................. 31

*Tarhuni v. Holder,*
    2014 WL 1269655 (D. Or. March 26, 2014) ........................... passim

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 2000) ........................................... 6

*US W. Commc'ns v. MFS Intelenet, Inc.,*
    193 F.3d 1112 (9th Cir. 1999) ........................................ 6, 8

*United States v. Booth,*
    669 F.2d 1231 (9th Cir. 1981) ......................................... 27

*United States v. Chhun,*
    744 F.3d 1110 (9th Cir. 2014) ......................................... 19

*United States v. Crawford,*
    372 F.3d 1048 (9th Cir. 2004) ......................................... 28

*United States v. Gallagher,*
    99 F.3d 324 (9th Cir. 1996) ........................................ 19, 21

*United States v. Harrison,*
    34 F.3d 886 (9th Cir. 1994) ........................................ 22, 30

*United States v. Johnson,*
    130 F.3d 1352 (9th Cir. 1997) ...................................... 19, 21

*United States v. Patane,*
    542 U.S. 630 (2004).................................................... 25

*United States v. Salerno,*
    481 U.S. 739 (1987).................................................... 16

*United States v. Ul Islam,*
   2006 WL 1168015 (D. Conn. Apr. 28, 2006) ................................................... 28

*United States v. Verdugo-Urquidez,*
   494 U.S. 259 (1990) ........................................................................................ 25

*United States v. Wunsch,*
   84 F.3d 1110 (9th Cir. 1996) .......................................................................... 18

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
   455 U.S. 489 (1982) .................................................................................. 18, 19

*Wayte v. United States,*
   470 U.S. 598 (1985) ........................................................................................ 14

*Williams v. Wisconsin,*
   336 F.3d 576 (7th Cir. 2003) .......................................................................... 15

*Worthy v. Herter,*
   270 F.2d 905 (D.C. Cir. 1959) ........................................................................ 15

*Yarborough v. Alvarado,*
   541 U.S. 652 (2004) ........................................................................................ 28

*Zemel v. Rusk,*
   381 U.S. 1 (1965) ............................................................................................ 15

## STATUTES & REGULATIONS

6 U.S.C. § 111 ...................................................................................................... 3

19 U.S.C. § 1433 ................................................................................................. 10

28 U.S.C. § 533 .................................................................................................... 3

49 U.S.C. § 114 ............................................................................................ passim

49 U.S.C. § 44903 ............................................................................................ 4, 9

49 U.S.C. § 44926 ............................................................................................ 4, 5

50 U.S.C. § 404o .................................................................................................. 3

8 C.F.R. § 235.1(b) ............................................................................................... 9

28 C.F.R. § 0.85(l) ................................................................................................. 3

49 C.F.R. § 1540 ................................................................................................... 4

49 C.F.R. § 1544 ................................................................................................... 4

49 C.F.R. § 1560 ............................................................................................... 4, 5

Fed. R. Civ. P. 8(a) ............................................................................................. 29

## OTHER SOURCES

9/11 Comm'n Report, Exec. Summary, www.9-11commission.gov/report/911Report_
      Exec.pdf .................................................................................................... 3

9/11 Commission Report, Recommendation, http://www.9-11commission.gov/report/ .............. 4

DHS TRIP Program, http://www.tsa.gov/traveler-information/dhs-traveler-redress-inquiry-
      program-dhs-trip ......................................................................................... 4

DHS, Step 3: After Your Inquiry, http://www.dhs.gov/step-3-after-your-inquiry ........................ 5

FBI, Newly Signed Government-wide Watchlisting Redress MOU,
      http://www.fbi.gov/news/pressrel/press-releases/newly-signed-government-wide-
      watchlisting-redress-mou/ ................................................................................ 5

## OFFICIAL-CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

## INTRODUCTION

When the Court dismissed Plaintiff's First Amended Complaint, Plaintiff was given an opportunity to provide further factual allegations in support of his then-insufficient claims. *See* May 29, 2014 Mem. Op. & Order [Dkt. #36]. Plaintiff's Second Amended Complaint fails, in nearly all respects, to cure the numerous deficiencies of his prior pleading. As was its predecessor, this pleading should be dismissed in its entirety[1] as against the official-capacity defendants ("Defendants").[2]

\*\*\*

In the aftermath of the September 11 attacks, Congress and the Executive Branch have devoted extensive resources to enhancing aviation security. One significant security measure is the use of a consolidated terrorist watchlist, the Terrorist Screening Database ("TSDB"), and its subset lists, the No Fly and Selectee Lists. The TSDB, which is maintained by the Terrorist Screening Center ("TSC"), enables United States authorities to identify those individuals known

---

[1] As the Court is aware, the Government has proposed a six-month voluntary remand of the individual due process claims concerning the No Fly List in *Latif v. Holder*, No. 10-750 (D. Or.). During that time, the Government would (1) re-assess its redress procedures for individuals who experience delays or denials of boarding on aircraft, and (2) re-apply those new procedures to the *Latif* plaintiffs' claims. *See Latif*, Joint Status Rpt. [Dkt. #144] (Aug. 4, 2014). Here, Plaintiff likewise challenges the No Fly List and the Government's redress processes. The Government will promptly notify the Court if it determines that developments relating to these issues alter the Government's posture in this action.

[2] It appears that the individual defendants have not been served, and thus they are not properly before the Court at this time. *See Omni Capital Int'l, Inc. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Until such time as Plaintiff serves the individual defendants, and counsel is authorized to represent them, the Department of Justice is not appearing on their behalf. As such, this motion to dismiss does not address any of the claims for relief against the individual defendants, or any of the other claims as they relate to the individual defendants.

or suspected of engaging in terrorist activity.  The No Fly List, a subset of the TSDB, enables the federal government to identify and deny boarding to individuals who pose a threat to national and aviation security as they attempt to fly on U.S. commercial aircraft or any commercial aircraft flying into, out of, or over the United States.  The No Fly List is a crucial tool in our nation's security efforts, and it is paired with a robust redress process to ensure its accuracy. Pursuant to statutory authority and Executive Branch action, individuals may file inquiries related to delayed or denied boarding on commercial aircraft with the Department of Homeland Security's Traveler Redress Inquiry Program ("DHS TRIP").

Plaintiff Yonas Fikre alleges that he is on the No Fly List and that his alleged placement on the No Fly List violates his constitutional rights.  He further alleges various constitutional violations arising from an interview conducted of him in Sudan, and he seeks wide-ranging injunctive and declaratory relief.  Specifically, Plaintiff brings six official-capacity claims against the U.S. Government defendants based on (I) an alleged Fifth Amendment substantive due process "Fundamental Right to Return to Homeland"; (II) a Fifth Amendment substantive due process right to international travel; (III) a Fifth Amendment substantive due process claim of "Vagueness and Overbreadth"; (IV) a Fifth Amendment right to counsel; (V) a First Amendment right to freedom of association; and (VI) the Fifth Amendment guarantee of procedural due process.  With respect to his claims against the Official-Capacity Defendants, Plaintiff's claims are, variously, not ripe, moot, and fail to state any actionable violation of the law.

## STATUTORY AND REGULATORY BACKGROUND

Several different components of the federal government work together to secure the nation and its airways from terrorist threats.  The Federal Bureau of Investigation ("FBI") has

responsibility for investigating and analyzing intelligence relating to both international and domestic terrorist activities, and the National Counterterrorism Center ("NCTC") serves as the primary organization for analyzing and integrating intelligence relating to international terrorism and counterterrorism. *See* 28 U.S.C. § 533; 28 C.F.R. § 0.85(l); 50 U.S.C. §§ 404o(a) & (d)(1). The Department of Homeland Security ("DHS") is primarily charged with "prevent[ing] terrorist attacks within the United States" and "reduc[ing] the vulnerability of the United States to terrorism." 6 U.S.C. § 111. Within DHS, the primary responsibility of the Transportation Security Administration ("TSA") is transportation — including aviation — security. *See* 49 U.S.C. § 114.

## A.    The Terrorist Screening Center And The No Fly List

In 2003, the President ordered the establishment of a multi-agency governmental organization that would "consolidate the Government's approach to terrorism screening and provide for the appropriate and lawful use of Terrorist Information in screening processes." *See* Homeland Security Presidential Directive 6 (Sept. 16, 2003). In response, the Attorney General established the TSC, which maintains the TSDB, a consolidated database of identifying information about persons known or reasonably suspected of being involved in terrorist activity. The creation of the TSC was driven by the 9/11 Commission's conclusion that the lack of intelligence-sharing across federal agencies had created significant vulnerabilities in the nation's security.[3]

---

[3] *See* 9/11 Comm'n Report, Exec. Summary, at http://www.9-11commission.gov/report/ 911Report_Exec.pdf ("The missed opportunities to thwart the 9/11 plot were also symptoms of a broader inability to adapt the way government manages problems to the new challenges of the twenty-first century. Action officers should have been able to draw on all available knowledge about al Qaeda in the government. Management should have ensured that information was shared and duties were clearly assigned across agencies, and across the foreign-domestic divide.").

The TSC also maintains the No Fly List as a subset of the TSDB.  TSA uses this list to screen passengers.[4]  TSA implements the No Fly List by issuing orders to aircraft operators through the Secure Flight program.  *See* 49 C.F.R. Parts 1540, 1544, and 1560; 49 U.S.C. § 44903(j)(2)(C)(ii) (TSA is required to perform "the passenger prescreening function of comparing passenger information to the automatic selectee and no fly lists").  An aircraft operator may not issue a boarding pass to an individual "until TSA informs [it] of the results of watch list matching for that passenger," and, if TSA so directs, the aircraft operator "must not issue a boarding pass … and must not allow that individual to board an aircraft[.]"  49 C.F.R. § 1560.105(b)(1).  If a person is denied boarding and wishes to file an inquiry about that denial, he or she may do so with DHS TRIP, as explained below.  *See* DHS TRIP, available at http://www.tsa.gov/traveler-information/dhs-traveler-redress-inquiry-program-dhs-trip ("DHS TRIP Website").

### B.    Redress Procedures For Travelers Denied Boarding

As part of the new procedures adopted following the attacks of September 11, 2001, the Government has developed redress programs to review inquiries of passengers who allege that they have been denied boarding or repeatedly subjected to additional security screening at airports.  *See* 49 U.S.C. §§ 44903, 44926.  The current redress program for such inquiries is DHS TRIP.  *See* DHS TRIP Website.  DHS TRIP is the central administrative redress process for individuals who have, for example, experienced denied or delayed airline boarding, denied or

---

[4] The need for TSA screening against a comprehensive terrorist watchlist was also the subject of a recommendation made by the 9/11 Commission in their 2004 report.  *See* 9/11 Commission Report, Recommendation, p. 393, at http://www.9-11commission.gov/report/ ("Improved use of 'no-fly' and 'automatic selectee' lists should not be delayed while the argument about successor CAPPS [Computer Assisted Passenger Prescreening System] continues. This screening function should be performed by the TSA, and it should utilize the larger set of watchlists maintained by the federal government.").

delayed entry into or exit from the United States at a port of entry, or have been subjected to repeated referrals to additional (secondary) screening. *See id.*

After a DHS TRIP inquiry is filed, DHS TRIP refers the inquiry to the appropriate agencies (including the TSC), for review, assessment, and adjudication. *See id.*; 49 C.F.R. § 1560.205(d). If an inquiry is referred to the TSC, TSC's independent Redress Unit provides the necessary research and review, allowing the screening agency to respond to the complaint directly. *See* http://www.fbi.gov/news/pressrel/press-releases/newly-signed-government-wide-watchlisting-redress-mou/. For inquiries about delayed or denied airline boarding due to TSA security screening, DHS TRIP provides a written response. *See* 49 U.S.C. § 44926; 49 C.F.R. § 1560.205(d); Step 3: After Your Inquiry, available at http://www.dhs.gov/step-3-after-your-inquiry.

## ARGUMENT

Plaintiff's renewed effort to obtain wide-ranging injunctive relief relating to the administration of the TSDB and the redress process should be turned aside. His prior claims for relief, which were dismissed by this Court, have not been rehabilitated, and his new claims, including First and Fifth Amendment claims of vagueness, overbreadth, right of association, and purported violations of his right to counsel, lack merit. Plaintiff's claims against the official-capacity defendants therefore should be dismissed.

**I.      Plaintiff's Claims Concerning The No Fly List Are Not Ripe For Review.**

Plaintiff's first, second, third, fifth, and sixth claims concern his purported inability to fly based on the implementation of the No Fly List and the process available for challenging his alleged inclusion on that list. But Plaintiff does not allege that he has been denied boarding on a plane since one event, three years ago, when he alleges officials from the United Arab Emirates

were unable to obtain a boarding pass for him. Plaintiff's complaint about his alleged placement on a watchlist thus presents a hypothetical, speculative scenario that is unripe for adjudication.

Ripeness is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). The ripeness inquiry is related to the requirement of an actual controversy, as the Court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). Precisely because the notion of ripeness is based on separation-of-powers principles, the ripeness inquiry, like its sister doctrine of standing, must be "especially rigorous" when, as here, reaching the merits of the plaintiff's claims would require the court to "decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional" and "review the actions of the political branches in the fields of intelligence gathering and foreign affairs." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (discussing standing principles).

Prudential ripeness looks to "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Standard Alaska Prod. Co. v. Schaible*, 874 F.2d 624, 627 (9th Cir. 1989). Furthermore, to satisfy the requirement of hardship, Plaintiff must show "that withholding review would result in direct and immediate hardship." *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999).

Plaintiff fails to satisfy the standards for ripeness.  First, his claims concerning his alleged placement on the No Fly List are not "fit for judicial resolution."  Plaintiff seeks review of an alleged decision to place his name on the No Fly List.  He does not allege ever attempting to board a plane, but alleges that, three years ago (in September 2011), UAE representatives were unable to obtain a boarding pass on his behalf.  2d Amended Compl. ("2AC") ¶ 56.  Absent any allegations of a recent denial of boarding and imminent plans to travel with reason to believe that the denial would be repeated, Plaintiff's allegations are not appropriate for judicial resolution.

Second, delaying adjudication of Plaintiff's claims until he has at least attempted to make arrangements to travel to the United States will not cause "direct and immediate hardship." *US W. Commc'ns*, 193 F.3d at 1118.  More than four years have passed since Plaintiff alleges that he was told in Sudan by an FBI agent that he was on the No Fly List, and nearly three years have passed since he alleges that he was told in the United Arab Emirates by UAE authorities that he could not fly to the United States.  *See* 2AC ¶¶ 31, 56–57.  Plaintiff alleges that he has been in Sweden for years, unable to return to the United States.  *Id.* ¶¶ 60–62, 64.  But Plaintiff makes no allegation that, in all that time, he has made <u>any</u> travel plans, attempted to board <u>any</u> flights, or taken <u>any</u> meaningful steps whatsoever to return to the United States.  Indeed, he does not even allege having contacted the U.S. Embassy in Sweden for assistance regarding his desire to return to the United States.  Plaintiff's own inaction undermines any showing of direct and immediate hardship.  For all these reasons, adjudicating Plaintiff's claims, absent a factual showing of a genuine controversy between the parties, would be premature and unwarranted.

Defendants recognize that in its prior order in this case, the Court deemed Plaintiff's claims ripe.  May 29, 2014 Order at 17–20.  Defendants respectfully disagree with that conclusion.  Concerning constitutional ripeness, whereas the Court identified the lack of an

"intervening event that would have changed Plaintiff's status on the List," *id.* at 19, Defendants submit that where, as here, the alleged facts are stale, some more immediate event or fact demonstrating that a continued dispute exists must be alleged. *Abbott Labs.*, 387 U.S. at 148 (observing that the "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements"). The question is not whether Plaintiff is or is not on the List, but whether there is a live dispute between the parties concerning that alleged status. *Id.* And Plaintiff's own inaction strongly suggests that the purported dispute here is abstract, rather than concrete.

Moreover, concerning prudential ripeness, Defendants respectfully submit that Plaintiff has not, in fact, demonstrated hardship arising from withholding judicial review, precisely because he has done nothing to test, alleviate, or otherwise resolve the purported hardship he faces, other than to bring his lawsuit. *See MFS Intelenet*, 193 F.3d at 1118 (relevant hardship is that resulting immediately from withholding review).[5] Plaintiff has not, despite his recognition that he could make arrangements to travel home on a commercial aircraft, made <u>any</u> attempt to do so. His inaction betrays the purported ripeness of his claims for injunctive relief.

## II.    Plaintiff's First Claim Fails To State An Actionable Claim Because He Has Not Been Prevented From Entering the United States.

If the Court considers Plaintiff's claims against the official-capacity defendants, it should dismiss them.[6] Plaintiff's first claim contends that the alleged placement of his name on the No

---

[5] Importantly, the hardship that Plaintiff would have to demonstrate to excuse the unripeness of his claims is hardship directly related to his ability to obtain future relief, whether judicial or nonjudicial, on those claims if the Court declines to address them now. Hardship in the ripeness analysis is therefore distinct from other purported hardships alleged by Plaintiff, such as his alleged past experiences with foreign authorities and his status in Sweden, and the Scandinavian winter. *See* 2AC ¶¶ 59–66; *MFS Intelenet*, 193 F.3d at 1118.

[6] In addition to the merits-based reasons set forth below, Claims One through Five should also be dismissed as to the Department of State and Secretary Kerry on the independent ground that

Fly List denied him the right to enter the United States in violation of a purported substantive

due process right "to return by air to, and to re-enter," the United States.  2AC ¶ 72.  In the first

instance, it is far from settled that the rights U.S. citizens enjoy concerning return to the United

States from abroad extend beyond lawful entry at "its borders."  *Nguyen v. INS*, 533 U.S. 53, 67

(2001) (noting in *dicta* that citizenship includes a right to enter the United States' "borders"); *but

see* Mem. Op. [Dkt. #36] at 25–26; *Mohamed v. Holder*, -- F. Supp. 2d --, 2014 WL 243115, at

*14 (E.D. Va. Jan 22, 2014).  The Government's position remains that, whatever right U.S.

citizens have relating to returning to the United States from abroad, it is limited to lawful entry at

a port of entry.  *See Nguyen*, 533 U.S. at 67; 8 C.F.R. § 235.1(a) ("Application to lawfully enter

the United States shall be made in person to an immigration officer at a U.S. port-of-entry when

the port is open for inspection, or as otherwise designated in this section."); 19 U.S.C. §§ 1433

(entry requirements for vessels, vehicles, and aircraft, including place of entry), 1459 (mandating

---

Plaintiff's claims are improperly brought against them.  (Claim Six is not brought against either
the Department or the Secretary.) Each of these five claims is premised on the allegation that the
Defendants placed Plaintiff on the No Fly List unlawfully or for some unlawful purpose.  *See*
Claims I ("Official defendants violated this right by placing plaintiff on the No-Fly List…."); II
("By placing plaintiff's name on the No-Fly List official defendants violated this right…."); III
(stating that Plaintiff has "a substantive due process right not to be sanctioned [by TSC] based
upon vague, overbroad, or unknowable standards of conduct…."); IV ("It is a policy, custom,
and practice of defendants to place individuals on the No-Fly List once they have departed the
United States…."); V ("It is a policy, custom, and practice of defendants to place individuals on
the No-Fly List in order to coerce them into becoming informants….").  However, the
Department is not involved in making No Fly List determinations.  *See Ibrahim v. DHS*, 538
F.3d 1250, 1256 (9th Cir. 2008) ("The No-Fly List is maintained by the Terrorist Screening
Center.").  The Department also plays no role in determining whether a U.S. citizen who presents
him- or herself at a port of entry may enter the United States.  *See* 8 C.F.R. § 235.1(b).  It
likewise has no authority to determine whether airplane passengers should be denied boarding
onto a commercial aircraft based on security concerns.  *See* 49 U.S.C. § 114(h)(1)-(3); 49 U.S.C.
§ 44903(j)(2)(C) (vesting that authority in TSA).  The Department of State and Secretary Kerry,
therefore, have no legal authority to provide Plaintiff with the relief he seeks and should be
dismissed from this lawsuit.  *See Tarhuni v. Holder*, --- F.Supp.2d ----, 2014 WL 1269655, at
*10, *20 (D. Or. March 26, 2014) (dismissing same defendants from similar lawsuit with parallel
claims).

that those not entering with a vessel, vehicle, or aircraft must "enter the United States only at a border crossing point designated by the Secretary").

In any event, as this Court previously held, in order to bring such a claim, Plaintiff must at a minimum "allege facts sufficient to demonstrate that Defendants have deprived him of <u>every viable means</u> of returning to the country." Mem. Op. [Dkt. #36] at 26 (emphasis added). As before, Plaintiff has failed to do so. Plaintiff has attempted to elaborate on his prior insufficient claim by suggesting that, when his counsel attempted to attach numerous unilateral conditions before Plaintiff would even "consider" making arrangements to return home, the Government declined. 2AC ¶ 68.[7] But the mere allegation that the Government would not agree, in the abstract, to Plaintiff's demands for unilateral "assurances" (*e.g.*, that he would be guaranteed a right to depart again after arrival in the United States), *id.*,[8] does nothing to undermine the unavoidable fact that means of returning to the United States remain available to him, as before. Most crucially, Plaintiff has the ability to return through facilitation by the U.S. Embassy. *Id.* This fact undermined Plaintiff's prior claim and likewise undermines his attempted resurrection of it here.[9]

---

[7] Although Plaintiff's recitation of events must be credited in the context of this motion to dismiss, Defendants dispute Plaintiff's version of these events.

[8] This appears to be a concern that, in light of the prior (and withdrawn) indictment against Plaintiff, *see* 2AC ¶¶ 66–67, Plaintiff may be subject to arrest if he returns to the United States. Quite naturally, the Government is not in a position to make guarantees against future law enforcement activities. Moreover, it would be highly improper for the Government somehow to be required to make such guarantees in order to satisfy Plaintiff's purported constitutional interest in travel to the United States by air.

[9] Notably, the Court credited Plaintiff's contentions concerning a "lack of confidence in State Department personnel" when assessing this claim and still held that "Plaintiff's concerns do not establish the option of making arrangements to return to the United States through the embassy is actually unavailable to Plaintiff." Mem. Op. [Dkt. #36] at 27. Nothing has changed in this respect in Plaintiff's amended pleading.

Defendants acknowledge that any person placed on the No Fly List may face additional complication in traveling to the United States. But Plaintiff is incorrect to suggest that an alleged denial of the ability to fly to the United States by ordinary means (*i.e.*, without advance coordination) constitutes a denial of the opportunity to enter the country.[10] *See* Mem. Op. [Dkt. #36] at 26. And Plaintiff fails to allege both that he is unable to return to the United States by air and that he is unable to return to the United States by other means. Each of these failures subjects this claim to dismissal.

Plaintiff does not allege that he has ever been denied entry when arriving at a port of entry, and he cannot show that a future denial of entry is likely. He does not allege that he is unable to return to the United States at all, or that he would be prevented from entering once there. Plaintiff merely alleges that he was told three years ago that he was then unable to return by plane. Indeed, there is no allegation that Plaintiff has taken any steps to travel to the United States by plane or any other means since 2011. Nor does Plaintiff plausibly allege that he lacks alternative means of access to a U.S. port of entry via travel through other nations or via the United States Embassy. As a result, his claims regarding the denial of a "right to return to [his] homeland" are without merit, and his first claim should be dismissed.

---

[10] Plaintiff's demand appears to be that the Government be prevented from placing U.S. citizens on the No Fly List if they are outside the United States, regardless of the threat such persons may pose to national or aviation security. Indulging this demand, as Plaintiff requests, would do the Government's aviation security program serious harm and would pose grave danger to national security. Under Plaintiff's view of the law, no matter how great a risk they may pose to others, all U.S. citizens would be allowed to fly into U.S. airspace. For good reason, the relevant statutory authorities speak of *individuals* — not aliens — who pose risks to national security and civil aviation. *See* 49 U.S.C. § 114(h)(3). By asserting an absolute right to reenter by airplane, Plaintiff effectively seeks to eviscerate the profound national security concerns that animate the No Fly List solely on the basis of U.S. citizenship. The national security should not be so easily cast aside.

### III. Plaintiff's International Travel Substantive Due Process Claim Should Be Dismissed For Failure To State A Claim.

With his second claim, Plaintiff alleges a substantive due process violation arising from alleged infringement of a purported fundamental right to travel by air internationally. Defendants respectfully submit that such a right does not exist, and even if it did, the claim should be resolved in the Government's favor pursuant to Rule 12.

Defendants recognize  that this Court held in *Tarhuni* that a substantive due process claim grounded in international travel could be brought against the Government based on alleged placement on the No Fly List and could survive a motion to dismiss.  *Tarhuni v. Holder*, --- F.Supp.2d ----, 2014 WL 1269655, at *10–*11 (D. Or. March 26, 2014).  To the extent the Court does not revisit that holding, and to the extent the Court deems Plaintiff to have adequately pled such a claim here, Defendants recognize that this holding may permit Plaintiff's claim to proceed.  *See also* n.1, *supra*.

With this recognition, and for purposes of preservation, the Government restates its position that there is no fundamental right to international travel.  Instead, one's interest in international travel is "no more than an aspect of the liberty protected by the Due Process Clause of the Fifth Amendment," and such travel is "subordinate to national security and foreign policy considerations."  *See Haig v. Agee*, 453 U.S. 280, 306 (1981).  Thus, court review of governmental restrictions on the freedom to travel internationally is highly deferential.  *See Califano v. Aznavorian*, 439 U.S. 170, 177 (1978) (restrictions on international travel permissible unless "wholly irrational.");  *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996) ("Given the lesser importance of ... freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for imposing the ban.");  *Eunique v. Powell*, 302 F.3d 971 (9th Cir. 2002).

Yet Plaintiff does not even allege an infringement of his right to international travel, such as it is. Rather, his complaint alleges an infringement of his preference to travel by a particular means, *i.e.*, by air. Even in the more protected arena of interstate travel, there is no right to travel by particular means. *Gilmore v. Gonzales*, 435 F.3d 1125, 1136 (9th Cir. 2006). This limitation is all the more applicable in the international context. *See Regan v. Wald*, 468 U.S. 222, 240–43 (1984) (citing "the traditional deference to executive judgment in the realm of foreign policy" in upholding international travel restrictions). And Plaintiff does not plausibly allege anything more than an impediment to travel by air to the United States. Plaintiff's amended pleading is devoid of allegations that Plaintiff cannot travel internationally by other means, such as by ship or via air to or through other nations, and Plaintiff makes no allegation that he has attempted such travel (apart from the allegation that he <u>has</u> traveled by air between the UAE and Sweden). And Plaintiff does not plausibly allege any impediment to travel to destinations that are accessible from the United States by land. Indeed, Plaintiff's only substantive allegation in this respect is that "[a]ir travel is the only practical means of passenger transportation between the North American continent and Europe, Asia, Africa, the Middle East, and Australia." 2AC ¶ 18. But Plaintiff fails to make any allegation as to why (or how) this is so, or why this alleged fact results from U.S. Government action. Such bare-bones allegations do not support a factual inference that Plaintiff's purported interest in international travel has been infringed by the Government's alleged placement of Plaintiff on the No Fly List. *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (conclusory and "bare bones" allegations are insufficient to survive a motion to dismiss).

Defendants recognize that international travel restrictions may be subject to scrutiny. *See Tarhuni*, 2014 WL 1269655, at *10–*11; *Eunique*, 302 F.3d 971 (debating level of scrutiny); *cf.*

*Newcomb*, 82 F.3d at 1439 ("Given the lesser importance of ... freedom to travel abroad, the Government need only advance a rational, or at most an important, reason for imposing the ban."). However, while the level of scrutiny applicable to international travel restrictions may be arguably unsettled in the abstract, *see Eunique*, 302 F.3d 971; *Newcomb*, 82 F.3d at 1439, there can be no debate that, at least in the context of national security, Plaintiff's interest in international air travel is "subordinate to national security and foreign policy considerations," *Haig*, 453 U.S. at 306, particularly so where the limitation extends only to one means of travel. And here, those national security interests are at their zenith. *Haig*, 453 U.S. at 307; *see also Wayte v. United States*, 470 U.S. 598, 612 (1985) ("Unless a society has the capability and will to defend itself from the aggression of others, constitutional protections of any sort have little meaning."). In the particular context of aviation security, the importance of protecting air travel to and from the United States cannot reasonably be debated. *Jifry v. FAA*, 370 F.3d 1174, 1183 (D.C. Cir. 2004) (pilot's interests in airman's certificates "pales in significance to the government's security interests" in preventing acts of aviation-related terrorism). Indeed, Congress has responded to this particular threat by authorizing the denial of boarding to individuals who may pose a threat to national or aviation security. 49 U.S.C. § 114(h).

Viewed through the appropriate lens of deference, the alleged partial restriction here on a single mode of transport for international travel satisfies the demands of the Constitution. *See Haig*, 453 U.S. at 306; *Regan*, 468 U.S. at 240–43. In light of the paramount governmental interests in the particularly sensitive context of national security, Plaintiff's subordinate interests must give way. *Cf. Zemel v. Rusk*, 381 U.S. 1, 15 (1965) ("[T]he Secretary has justifiably concluded that travel to Cuba by American citizens might involve the Nation in dangerous international incidents, and that the Constitution does not require him to validate passports for

such travel."); *Newcomb*, 82 F.3d at 1439 (travel ban to Cuba); *Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of Treasury*, 545 F.3d 4, 13–14 (D.C. Cir. 2008) (upholding travel restrictions to Cuba against right-to-international-travel claims); *Williams v. Wisconsin*, 336 F.3d 576 (7th Cir. 2003) (upholding state prohibition on international travel for parolees); *Worthy v. Herter*, 270 F.2d 905 (D.C. Cir. 1959) (rejecting challenge to restrictions against Communist countries); *Clancy v. Office of Foreign Asset Control*, No. 05-cv-580, 2007 WL 1051767, at *16 (W.D. Wis. Mar. 31, 2007) (upholding regulations curtailing travel to Iraq in the wake of Iraq's invasion of Kuwait).

## IV.   Plaintiff's "Vagueness And Overbreadth" Claim Fails To State A Viable Claim.

Plaintiff's third claim purports to be grounded in "a substantive due process right not to be sanctioned based upon vague, overbroad, or unknowable standards of conduct," and Plaintiff alleges that his purported placement on the No Fly List violates these purported constitutional principles.  2AC ¶¶ 76–77.  Of course, vagueness and overbreadth (as well as substantive due process) are distinct concepts, with distinct doctrines governing each.  And it is not clear whether Plaintiff seeks relief under each, some, or an amalgam of these concepts.[11]

Regardless of how it is styled, the claim should be dismissed.  It appears Plaintiff contends that the TSC's criteria for placing suspected terrorists on the No Fly List is both unconstitutionally vague and overbroad because the publicly disclosed criteria for nomination to the TSDB — the existence of "a reasonable suspicion to believe that a person is a known or suspected terrorist," *Latif v. Holder*, Joint Stipulations [Dkt. #41] at ¶¶ 17–18 — fails to provide government officials sufficient guidance, producing "discriminatory enforcement of the

---

[11] At a minimum, Plaintiff should be required to clarify the nature of this purported claim.

15 – OFFICIAL-CAPACITY DEFS.' MEM. IN SUPP. OF MOT. TO DISMISS
*Fikre v. FBI, et al.*, No. 3:13-cv-00899-BR

criterion," 2AC ¶¶ 76–77.  Plaintiff contends that such lack of guidance allows officials to misappropriate the list to induce potential informants to cooperate.  *Id.*

As an initial matter of clarification, Plaintiff's characterization of the nomination process is simply wrong as a matter of fact.  The reasonable suspicion standard governs nominations to the TSDB, not to the No Fly List.  *Latif*, Joint Stipulations [Dkt. #41] at ¶¶ 17–18.  The No Fly List nomination process involves different — and nonpublic — criteria.[12]

Regardless, Plaintiff's claim must be dismissed because overbreadth challenges are limited to laws implicating First Amendment freedoms, and Plaintiff does not allege infringement of an actual First Amendment right; because the terms "reasonable suspicion" and "known or suspected terrorist," are, as numerous courts have held in other contexts, not impermissibly vague; and because Plaintiff does not plausibly allege that the criteria for nomination was discriminatorily applied to him.

### A.    The No Fly List Criteria Are Not Overbroad.

The overbreadth doctrine is First Amendment — not Fifth Amendment — jurisprudence.  *United States v. Salerno*, 481 U.S. 739, 745 (1987) (the Supreme Court "[has] not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment"); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 949 n.11 (9th Cir. 1997) (same, rejecting substantive due process claims to free movement and interstate travel).  As Plaintiff's Third Claim does not

---

[12] The Court can take judicial notice of the existence of such criteria without converting this motion to dismiss to one for summary judgment.  *See Intri-Plex Techs., Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (stating that it is permissible to take judicial notice of "matters of public record" insofar as these are not "subject to reasonable dispute"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (the court "may take judicial notice of court filings and other matters of public record"); *Doe v. Mann*, 415 F.3d 1038, 1040 n. 3 (9th Cir. 2005) (taking judicial notice of records relating to proceedings in state court).

allege a conceivable First Amendment violation, Plaintiff's allegations that the No Fly List's standards are overbroad simply has no basis in the law.

"The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). The doctrine allows a party, in the very limited circumstance of First Amendment litigation, to argue that a statute should be struck down not because it is unconstitutional as applied to that party, but because it "is so broad that it may inhibit the constitutionally protected speech of third parties." *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 11 (1988) (internal citations and quotation marks omitted); *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) ("An overbreadth claim is essentially a claim that a statute may be constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress the speech of others not before the court."). As the Supreme Court has made clear, the overbreadth doctrine is "strong medicine" that should be applied "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Furthermore, the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615 (emphasis added). "[T]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, there must be a "realistic danger" that the statute will "significantly compromise recognized First Amendment protections of parties not before the Court." *Id.* at 801.

Plaintiff's claim does none of these things. Plaintiff does not allege that his claim is rooted in expressive activity in the first instance, much less how the No Fly List somehow infringes impermissibly on the expressive activities of other individuals. Plaintiff does not

contend that the No Fly List's (or the TSDB's) standards have criminalized or even chilled any form of speech or expression.  The Second Amended Complaint is devoid of facts that would substantiate — or even indicate — a proper overbreadth challenge.  *See* 2AC ¶¶ 76–77.

**B.    The No Fly List Criteria Are Appropriately Balanced To Provide Both Guidance And Discretion In Application And Are Not Impermissibly Vague.**

To the extent Plaintiff's Third Claim is a void-for-vagueness challenge to the No Fly List, it is equally meritless.  The vagueness doctrine protects against laws that "do[] not sufficiently identify the conduct that is prohibited." *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir. 1996).  Accordingly, the Fifth Amendment's due process clause "requires a statute to be sufficiently clear so as not to cause persons 'of common intelligence . . . [to] guess as its meaning and [to] differ as to its application.'" *Id.* (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  Of course, "the 'void for vagueness' doctrine is chiefly applied to criminal legislation." *Arriaga v. Mukasey*, 521 F.3d 219, 222 (2d Cir. 2008).  Outside of the criminal context, the courts apply less exacting scrutiny "because the consequences of imprecision" in civil affairs "are qualitatively less severe." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982).  In any event, no matter the type of regulation, "meticulous specificity" is not required, as specificity can entail sacrificing the necessary "flexibility and reasonable breadth" intended by a given phrase.  *See Betancourt v. Bloomberg*, 448 F.3d 547, 552–53 (2d Cir. 2006) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 110 (1972)) (internal quotation marks omitted).

Here, where no criminal penalty is at issue, and applying the lesser scrutiny applicable to civil regulation, the No Fly criteria clearly pass constitutional muster.  Plaintiff's vagueness challenge must fail for numerous reasons.

First, the ordinary person is likely to know what conduct triggers placement on the list. *See United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997); *Grayned*, 408 U.S. at 110. "The test for vagueness is whether the provision fails to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated." *Johnson*, 130 F.3d at 1354 (quoting *United States v. Gallagher*, 99 F.3d 324, 334 (9th Cir. 1996) (internal quotation marks omitted)). Like many constitutional statutes, penalties, and other standards of conduct, the conduct contemplated by the No Fly List is activity related to terrorism.  And numerous courts have already held that criminal prohibitions on conduct related to terrorism are not impermissibly vague.  *See, e.g.*, *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21–23 (2010) (material support statute not void for vagueness); *James v. United States*, 550 U.S. 192, 210 n.6 (2007) (rejecting argument that statutory prohibition against "terrorist act" in the Armed Career Criminal Act is vague, and noting "[s]imilar formulations … in other federal and state criminal statutes"); *United States v. Chhun*, 744 F.3d 1110, 1116–17 (murder prohibition in Antiterrorism and Effective Death Penalty Act not impermissibly vague); *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1144–45 (9th Cir. 2009) (authority to designate entities as terrorist organizations under Executive Orders issued pursuant to the International Emergency Economic Powers Act not impermissibly vague); *Khan v. Holder*, 584 F.3d 773, 785–86 (9th Cir. 2009) ("terrorist activity" as used in the Immigration and Nationality Act, not impermissibly vague); *McAllister v. Attorney Gen'l of U.S.*, 444 F.3d 178, 186 (3d Cir. 2006) (same). Certainly, then, a civil regulation restricting access to civilian air travel is clearly permissible. *See Hoffman Estates*, 455 U.S. at 498–99.

Second, the guidelines "provide explicit standards for those who apply them."  *Grayned*, 408 U.S. at 108.  The watchlisting criteria satisfy this "more important aspect of vagueness

doctrine" by protecting against "arbitrary enforcement" of the law through "minimal guidelines to govern" its use. *See Kolender v. Lawson*, 461 U.S. 352, 357–78 (1983) (quoting *Smith v. Goguen,* 415 U.S. 566, 574 (1974) (internal quotation marks omitted)). Both linguistic interpretation and precedent are relevant to this inquiry, and courts are averse to finding a term unduly vague when it is easily definable and has a long history of precedential interpretation. *See ACLU v. Gonzales,* 237 F.R.D. 120, 130 (E.D. Pa. 2006).

As noted, Plaintiff misidentifies the criteria for nomination to the No Fly List, instead citing to the criteria for nomination to the broader TSDB. *See Latif*, Joint Stipulations [Dkt. #41] at ¶¶ 17–18. The nonpublic criteria for nomination to the No Fly List are different. Nonetheless, the "reasonable suspicion" standard serves as a useful proxy, because, even if the TSC used that lesser standard for No Fly List nominations, it would easily survive scrutiny. "Reasonable suspicion," which is widely recognized, widely used, generally understood, and deeply rooted in constitutional jurisprudence, is a quintessential example of an appropriate use of a definable concept with a long precedential history. *See*, *e.g.*, *Ornelas v. United States,* 517 U.S. 690, 695–96 (1996). Indeed, this Court has recognized the settled, understood, and proper use of the "reasonable suspicion" standard, identifying it as "the same as the traditional reasonable suspicion standard commonly applied by the courts." *Latif v. Holder*, --- F.Supp.2d ----, 2014 WL 2871346, at *13 (D. Or. June 24, 2014).[13]

"Reasonable suspicion" is thus an appropriate standard whose meaning has been reinforced by years of precedent. The TSC's criteria use well-defined, settled terms that appropriately guide Government officials in making assessments of risks to aviation security.

---

[13] Such an approach makes perfect sense in light of the predictive nature of the threat assessments that inform the TSDB and the No Fly List. Unlike criminal sanctions for terrorism, which are largely punitive, the No Fly List is expressly designed to prevent harm by denying individuals who may pose a threat to national or aviation security access to airplanes.

*See Hudson v. City of Riviera Beach*, 2014 WL 1877412 at *5 (S.D. Fla. May 9, 2014) (rejecting

due process challenge to reasonable-suspicion standard); *Doyon v. Home Depot U.S.A., Inc.,* 850

F. Supp. 125, 131 (D. Conn. 1994) (same, and collecting cases); *see also Holder v.*

*Humanitarian Law Project*, 561 U.S. 1 (rejecting vagueness challenge to provisions penalizing

material support to terrorists, in part because of the settled legal meaning of the terms used).

Moreover, as stated above, although this public, reasonable-suspicion-of-terrorism

criterion for nomination to the broader TSDB offers enough guidance to defeat a vagueness

challenge on its own, the TSC requires even more than reasonable suspicion for placement on the

No Fly List.  As the Court is aware from proceedings in *Latif*, additional nonpublic criteria guide

that nomination process.  *See Latif*, 2014 WL 2871346, at *2; *Latif* Joint Stipulations [Dkt #41]

at ¶¶ 17–18.  These criteria provide additional safeguards to ensure each individual on the list

meets the threshold level of suspicion of terrorist activity and more than satisfy the demands of

the vagueness doctrine.  *Id.*

Finally, Plaintiff fails to plausibly allege that the watchlisting criteria have been

unconstitutionally applied to him for purposes of the void-for-vagueness doctrine.  When a

plaintiff does not allege that a challenged law infringes on First Amendment freedoms, he must

show that the law is "vague as applied to the facts of the case at hand," not merely "in its

hypothetical applications."  *Johnson*, 130 F.3d at 1354; *Chapman v. United States,* 500 U.S. 453,

467 (1991); *Gallagher,* 99 F.3d at 334.  As Plaintiff does not suggest his alleged placement on

the No Fly List infringed on his First Amendment freedoms under the vagueness doctrine, *see*

Part IV.A, *supra*, Plaintiff must demonstrate that the reason he allegedly was placed on the No

Fly List was not because of suspected terror activity, but rather that, because of the vagueness of

the criteria, such alleged placement was based on other considerations.

Such allegations are not present here.  While Plaintiff does allege that he felt pressured to "become [an] agent[], agent provocateur[], or informant" for the FBI, 2AC ¶ 77, Plaintiff fails to allege that he was nominated <u>because of</u> such alleged coercion or somehow placed on the No Fly List in response to his alleged decision not to become an informant.  Indeed, according to Plaintiff's own allegations, Plaintiff was on the No Fly List prior to the 2010 interview in Khartoum.  *Id.* ¶ 29.  To the extent that Plaintiff's theory of liability is that Plaintiff's alleged No Fly status was maintained in retaliation for his decision not to become an informant, his factual pleadings fall far short of demonstrating the requisite factual plausibility.  The only allegation on this score is Plaintiff's subjective interpretation of an invitation to "come to the embassy" should he "want to go home."  *Id.* ¶ 32.  In Plaintiff's view, such an invitation meant that "plaintiff's name would not be removed from the No-Fly List unless he became an informant and/or agent provocateur for the FBI."  *Id.*  This is not a plausible interpretation, much less one substantiated by fact.  The clear import of the alleged invitation was only that if Plaintiff wished to return to the U.S., he could do so through coordination with the Embassy.  According to Plaintiff, the Agent merely directed Plaintiff to the Embassy should he wish to return home, irrespective of any alleged No Fly status.  *Id.* ¶ 32.  At most, Plaintiff separately appears to allege that the agent suggested that cooperation might lead to his removal from the No Fly List.  *Id.* ¶ 31.[14]  But Plaintiff does not plausibly allege that the reason either for his alleged original or for his alleged

---

[14] Even if this allegation of inducement were true, it would not invalidate the No Fly List criteria on vagueness grounds.  By analogy, courts addressing claims of coerced confessions by law enforcement have repeatedly held that "in most circumstances, speculation that cooperation will benefit the defendant or even promises to recommend leniency are not sufficiently compelling to overbear a defendant's will."  *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994).  Given that such tactics are constitutionally permissible when used to induce confessions that are later used to convict, it strains credulity to suggest that similar actions inherently cause the watchlisting criteria to run afoul of the vagueness doctrine when such actions allegedly are used in this context to encourage cooperation.

continued placement on the list was because of his decision not to become an informant — only that if he did cooperate, it might benefit him. Plaintiff's speculative reading of the interactions with the FBI agent is further undermined by the fact that, as a general proposition, the TSC, not any nominating agency, determines placement on the No Fly List.

In any event, and critically, Plaintiff makes no credible allegation that, whatever he alleges was said to him, he was improperly nominated (assuming he was nominated at all) because the criteria are impermissibly vague. At best, Plaintiff's allegation speculates that the Government wrongly placed him on the No Fly List, not because the criteria themselves are invalid, but because the criteria were underlined. Of course, the Government resists the notion that it disregards its own criteria and, as discussed immediately above, there are no plausible allegations to support such an inference. But either way, the vagueness claim fails.

For all of these reasons, Plaintiff's "vagueness and overbreadth" claim must be dismissed. Plaintiff appears to invoke overbreadth, but fails to demonstrate any infirmity relating to speech, and his vagueness claim is foreclosed, regardless of whether he attempts to bring it facially or as applied to him.

**V.    Plaintiff's Right-To-Counsel Claim Is Moot, Unripe, And Meritless.**

Plaintiff's Fifth Amendment claim (Claim Four) must fail, for multiple reasons. Plaintiff alleges that he was interviewed by the FBI at the U.S. Embassy in Khartoum, Sudan, in 2010. 2AC ¶¶ 28–31. He further alleges that he volunteered to participate in the interview, and that he left the interview and the Embassy at the end of the day. *Id*. Based on these allegations, Plaintiff seeks, *inter alia*, injunctive relief against the FBI, TSC, and the Department of State, prohibiting these agencies from interrogating Plaintiff in the future in the absence of counsel. For a litany of reasons, there is no basis for the entry of such broad relief.

**A.   Plaintiff's Claims Arising From The Alleged Interview In Khartoum Are Moot As To Past Events And Plaintiff Lacks Standing To Seek Prospective Relief.**

Most fundamentally, Plaintiff's claim is both moot and unripe.  Plaintiff challenges a single interview that took place over four years ago at the U.S. Embassy in Khartoum.  Because there is no allegation that even suggests the possibility that Plaintiff will be invited to participate in a similar interview at any time in the future, there is no basis for Plaintiff to entreat the Court to issue an advisory opinion regarding the interview's propriety in the abstract.  *Loya v. INS*, 583 F.2d 1110, 1114 (9th Cir. 1978) ("Injunctive relief is designed to deter future misdeeds, not to punish for past conduct.").  Moreover, even if there were such an allegation, it would fail as being speculative and hypothetical.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Particularly in the context of requests for injunctive relief against law enforcement, courts have required far more than speculation that an individual will be subjected to an allegedly improper law enforcement practice in order to find standing.  *Id.* at 112; *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).  Here, the Second Amended Complaint lacks <u>any</u> allegation establishing a plausible claim that he will be asked to participate in an overseas interview by the U.S. Government.  *Clapper*, 133 S. Ct. at 1147.  In this respect, Plaintiff's claim must fail for the same reasons the plaintiff's right-to-counsel claim failed in *Tarhuni v. Holder*, No. 13-cv-1, Dkt. #49 at 24–25 (D. Or. March 26, 2014) (dismissing claims based on past interrogation for lack of standing and for failure to state a claim).  The claim is moot and Plaintiff lacks standing as to his speculation of hypothetical future injury.

**B.   Plaintiff Fails To State A Fifth Amendment Claim.**

Plaintiff's claim is deficient on the merits, as well.  The Fifth Amendment rights against self-incrimination and to counsel, as applied to questioning by law enforcement, apply to custodial law enforcement interviews, *Michigan v. Jackson*, 475 U.S. 625, 629 (1986) ("The

Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations."), and work to prevent the use of incriminating statements unlawfully obtained in criminal proceedings, *Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009) (citing *Chavez v. Martinez*, 538 U.S. 760, 764–65 (2003)).  While Plaintiff does not bring a self-incrimination claim, the right to counsel in custodial interrogations exists for the purpose of preserving the right against self-incrimination.  *Michigan v. Jackson*, 475 U.S. at 629. Regardless of how the claim is styled, it is fatally deficient, for multiple reasons.

First, the rights to counsel and against self-incrimination do not obtain constitutional significance until the Government attempts to introduce evidence in a criminal proceeding.  *See Chavez*, 538 U.S. at 769 (plurality op.); *id.* at 789 (Kennedy, J., concurring in part and dissenting in part); *cf. also id.* at 778–79 (Souter, J. concurring in the judgment); *see also United States v. Patane*, 542 U.S. 630, 641 (2004) (plurality opinion) ("[V]iolations [of the Fifth Amendment right against self-incrimination] occur, if at all, only upon the admission of unwarned statements into evidence at trial."); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) ("[A] violation [of the Fifth Amendment right against self-incrimination] occurs only at trial.").  Thus, as the Ninth Circuit has recognized, "coercive police questioning does not violate the Fifth Amendment, absent use of the statements in a criminal case."  *Stoot*, 582 F.3d at 923 (citing *Chavez*, 538 U.S. at 764–65).

While an individual need not necessarily face a criminal trial, the Fifth Amendment right against self-incrimination will only be implicated in circumstances where "the declarant [is made] a witness against himself in a criminal proceeding."  *Id.* at 925.  This includes instances where "a coerced statement has … been relied upon to file formal charges against the declarant,

to determine judicially that the prosecution may proceed, and to determine pretrial custody status." *Id.*

None of these facts are present here. Plaintiff refers to a now-dismissed indictment brought against him in California, 2AC ¶ 79, but, importantly, he makes no credible allegation that any statement made in the Khartoum interview was used against him for purposes of the indictment. Instead, Plaintiff baldly alleges that "the information gathered from plaintiff during such interrogation" was used. *Id.* But Plaintiff fails to identify in any respect what information was used and how it was used. *Id.*[15] In any event, the indictment having been dismissed, there is no allegation that any information obtained in the Khartoum interview was actually used against Plaintiff in such a proceeding or, more importantly, that such use is currently threatened in any way so as to make injunctive relief proper.

Second, there is no allegation that Plaintiff gave incriminating statements in the interview. *Chavez*, 538 U.S. at 767–70. (As noted, Plaintiff does not bring a self-incrimination claim, but the right to counsel in custodial interrogations exists for the purpose of preserving the right against self-incrimination. *Michigan v. Jackson*, 475 U.S. at 629.) Nowhere does Plaintiff identify or describe what incriminating statement he made or incriminating information he provided during the interview or what crime that information could be used to show. *See* 2AC ¶¶ 30–33. Quite to the contrary, plaintiff describes his activities in Sudan as entirely innocent and legal. *Id.* ¶ 24. Nothing in the Second Amended Complaint plausibly alleges that

---

[15] The Court can take judicial notice of the fact that the indictment against Plaintiff was for "structuring" — a financial crime. *United States v. Fikre, et al.*, No. 12-cr-01689, Dkt. #1 (S.D. Cal. May 1, 2012); *see also Intri–Plex Techs.*, 499 F.3d at 1052 (stating that it is permissible to take judicial notice of "matters of public record" insofar as these are not "subject to reasonable dispute"); *Reyn's Pasta Bella*, 442 F.3d at 746 n. 6 (the court "may take judicial notice of court filings and other matters of public record"); *Doe v. Mann*, 415 F.3d at 1040 n. 3 (taking judicial notice of records relating to proceedings in state court).

Plaintiff made incriminating statements while being questioned.  The allegations do not even suggest that Plaintiff made statements that could be incriminating or that were even potentially incriminating. Certainly, Plaintiff does not allege that he confessed to having committed any crime.  For these reasons alone, his "right to counsel" claim must fail.  *Chavez*, 538 U.S. at 767–70.

Third, and relatedly, even if the incriminating evidence is both elicited and used, the remedy is not a civil injunction, but rather is exclusion of evidence obtained in violation of the right in subsequent criminal proceedings.  *See Michigan v. Tucker*, 417 U.S. 433, 451–52 (1974); *Anderson v. Alameida*, 397 F.3d 1175, 1179 (9th Cir. 2005) (remedy for violations of Sixth Amendment right to counsel is exclusionary rule); *see also Juran v. Independence or Cent. School Dist. 13J*, 898 F. Supp. 728, 733 (D. Or. 1995) ("Plaintiff's remedy for a violation of his Fifth Amendment right against self-incrimination is the exclusion from evidence of their self-incriminating statements.") (citing *Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989) ("[T]he remedy for a Miranda violation is the exclusion from evidence of any compelled self-incrimination, not a § 1983 action.")).  This precedent wholly forecloses Plaintiff's claim for injunctive relief.

Fourth, these rights only emerge in custodial interrogations.  *See*, *e.g.*, *Michigan v. Jackson*, 475 U.S. at 629; *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) (prior to noncustodial interrogation, "Miranda warnings need not be given").  In determining whether a person is in custody in this sense, the primary question is whether, "in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012)

(internal citations and quotations omitted).[16]  By Plaintiff's own admission, the interview here was noncustodial.  Plaintiff agreed to participate willingly and was not compelled to attend. 2AC ¶ 27.  The interview was conducted at an embassy, not in a detention facility. *See Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984); *see also United States v. Ul Islam*, No. 3:04CR305, 2006 WL 1168015, at *4 (D. Conn. Apr. 28, 2006) (interview at embassy, despite closed door, not custodial where interviewee was free to leave).  And, most importantly, Plaintiff voluntarily concluded the interview and was not impeded from so doing.  2AC ¶ 31; *United States v. Crawford*, 372 F.3d 1048 (9th Cir. 2004) (questioning does not amount to custodial interrogation, even in a "coercive environment" such as a closed room at the office of a law enforcement agency, where the suspect is told that he is not under arrest and is free to leave, and he does in fact leave without hindrance).  The interview not being custodial, there was no right to counsel, much less a right that was violated.

For the foregoing reasons, this claim is subject to dismissal as against each official-capacity defendant.  Plaintiff lacks standing, his claims regarding an interview occurring over four years ago are moot, and, for many reasons, Plaintiff's claim lacks merit.  *See Tarhuni*, 2014 WL 1269655, at *9–*10 (dismissing similar claims for lack of standing and on the merits).[17]

---

[16] In this inquiry, relevant factors may include the location of the questioning, *Berkemer v. McCarty*, 468 U.S. 420, 437–38 (1984); its duration, *id.*; statements made during the interview, *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); the presence or absence of physical restraints during the questioning, *New York v. Quarles*, 467 U.S. 649, 655 (1984); and the release of the interviewee at the end of the questioning, *see California v. Beheler*, 463 U.S. 1121, 1122–1123 (1983) (per curiam); *see generally Howes*, 132 S. Ct. at 1189.

[17] Plaintiff's right-to-counsel claim therefore should be dismissed with respect to the Department of State, Secretary Kerry, TSC, and Director Piehota on the additional grounds that these defendants were not involved in the alleged interview in Khartoum.  Although Plaintiff attempts to allege that he believed that the officials who interviewed him held themselves out as employees of the Department of State, Plaintiff's complaint identifies these individuals as FBI agents.  *See* 2AC Caption, ¶¶ 11–12.  And there are no other meaningful allegations of actual

**VI.    Plaintiff's Freedom-Of-Association Claim Is Meritless.**

Plaintiff's newly added freedom-of-association claim is equally meritless.  This claim is particularly sparse and fails to give Defendants reasonable notice of its basis, grounds, and theory of liability.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (observing that Fed. R. Civ. P. 8(a) demands "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively").  Indeed, the Second Amended Complaint does not even recite the elements of the claim, much less provide factual allegations that would give rise to a plausible inference of liability, as the law requires.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  For this reason alone, the Court should reject the claim.  (Given that Plaintiff has now re-pleaded twice, such dismissal also should be with prejudice.)

"In the First Amendment context, the right to associate is not a free-standing right; rather, one has the right to associate for the purpose of engaging in activities protected by the First Amendment."  *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, --- F.3d ----, 2014 WL 2695532, at *4 (9th Cir. June 16, 2014) (citing *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984)).  Plaintiff identifies no protected activities that are allegedly infringed by his alleged No Fly List status, apart from the naked assertion of the "right" "to associate, or not to associate, with whom he pleases." 2AC ¶ 81.  Such a claim is insufficient and should be dismissed.

Although the Government must guess at Plaintiff's theory of liability, this appears to be an allegation that Plaintiff's right not to "associate" with the FBI is somehow being infringed by the coercive effects of Plaintiff's alleged No Fly status.  The Court should reject Plaintiff's

---

Department of State officials being involved in the alleged interview in Khartoum.  There are also no allegations of TSC involvement in the alleged interview.

attempt to create a First Amendment free-association claim on this basis.  First, the Government

resists any notion that No Fly List determinations are made for such coercive purposes, and

Plaintiff alleges no plausible facts suggesting that this is so.  Instead, Plaintiff makes the bare,

unsupported allegation that, rather than applying its own policies and criteria, the Government

maintains some kind of shadow "policy, custom and practice" to use the No Fly List for

unrelated and coercive purposes.  2AC ¶ 81.  No facts in Plaintiff's pleading support this

speculative allegation and it therefore should be rejected by the Court.  At most, Plaintiff's

pleading suggests that an FBI agent may have suggested the possibility of benefits that could

accrue from cooperation with FBI; there is no factual allegation supporting an inference that, in

the absence of such cooperation, the Government placed or kept Plaintiff on the No Fly List

because he declined to become an informant.  *Cf.* Part IV.B, *supra*; *Harrison*, 34 F.3d at 891

(stating that "in most circumstances, speculation that cooperation will benefit the defendant or

even promises to recommend leniency are not sufficiently compelling to overbear a defendant's

will").  Instead, Plaintiff presents only conclusory (and therefore insufficient) allegations on this

point.  *See* 2AC ¶ 81.  Second, Plaintiff is not "associating" with the FBI, so there is no

infringement of any purported right "not to associate" with the FBI, assuming such a "right"

exists.  Third, and in any event, Plaintiff still fails to identify some sort of expressive activity

whose purpose is being thwarted by the alleged infringement.

　　　　To the extent Plaintiff seeks to vindicate some other associational right and/or some

expressive activity, he likewise fails to identify it.  This does not appear to be a claim of intimate

association.  *But see* 2AC ¶ 70.  And to the extent Plaintiff is attempting to bring a retaliation

claim, it equally must fail.  Plaintiff identifies no expressive activities against which the

Government could have retaliated in the first instance, and Plaintiff fails to allege that the

Government was motivated by a desire to suppress Plaintiff's exercise of such freedoms. *Cf. Skoog v. Cnty. of Clackamas*, 469 F.3d 1221, 1231–32 (9th Cir. 2006) (in retaliatory-arrest context, requiring proof of discriminatory animus against the exercise of First Amendment activities).

Finally, even if Plaintiff could make out a *prima facie* right-of-association claim, the No Fly List is a proper exercise of governmental authority because it "serve[s] compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *U.S. Jaycees*, 468 U.S. at 623. Whatever impact his alleged No Fly List status has on Plaintiff, "[i]t is undisputed that the government's interest in protecting the nation from terrorism constitutes a compelling state interest unrelated to the suppression of ideas." *Tabbaa v. Chertoff*, 509 F.3d 89, 103 (2d Cir. 2007). Indeed, Congress itself has determined that the risks posed by air terrorism warrant the denial of boarding to individuals who may pose a threat to national and aviation security. 49 U.S.C. § 114(h). Moreover, in the context of national security, courts must give deference to the predictive judgment of the Executive Branch. *See Humanitarian Law Project*, 561 U.S. at 34 ("But when it comes to collecting evidence and drawing factual inferences in [national security and foreign relations], the lack of competence on the part of the courts is marked, and respect for the Government's conclusions is appropriate.") (internal quotation marks and citation omitted); *see also Rahman v. Chertoff*, 530 F.3d 626, 627–28 (7th Cir. 2008) (observing that "modesty is the best posture for the branch that knows the least about protecting the nation's security and that lacks the full kit of tools possessed by the legislative and executive branches."). In this context, whatever associational freedoms Plaintiff may attempt to vindicate — and Plaintiff identifies none — the incidental burdens on those associational freedoms that arise from the maintenance

of the List do not warrant an overhaul of the List as a prudent, tailored response to the

compelling threats posed by terrorism to aviation security.

## VII.    Plaintiff's Procedural Due Process Claim Should Be Dismissed.

Plaintiff's sixth count raises a procedural due process claim against Defendants FBI,

TSC, Holder, and Piehota.[18]  In its prior Opinion, the Court dismissed Plaintiff's claim on the

ground that Plaintiff failed to "identify any protected interest that he has been deprived of by

Defendants' official actions."  Mem. Op. [Dkt. #36] at 29.  Notwithstanding this clear directive

from the Court to identify a protected liberty and property interest, Plaintiff still fails to identify

one.  Plaintiff makes a passing reference to "stigma" associated with his purported status on the

No Fly List, but only in explaining why he was divorced.  In any event, Plaintiff fails to allege

facts that would support a so-called "stigma-plus" claim, such as disclosure of status and harm to

public reputation.  *See Tarhuni*, 2014 WL 1269655, at *13.  And Plaintiff utterly fails to identify

any other protected interest that would give rise to a viable procedural due process claim.  For

these reasons, the claim must be dismissed.

Should the Court consider a protected interest somehow adequately pled here, Defendants

submit that the claim should nonetheless be dismissed, on the numerous grounds the Government

has previously argued in this and other similar watchlisting cases.  Defendants recognize that this

Court has held, *inter alia*, that similar claims can survive a motion to dismiss and, indeed, may

warrant judgment for Plaintiffs.  *See Latif*, 2014 WL 2871346; *Tarhuni*, 2014 WL 1269655.

Defendants' position remains, however, that such claims may be dismissed as a matter of law,

and Defendants restate this position herein for the record and for purposes of preservation, and

---

[18] The caption of Plaintiff's amended pleading identifies the current FBI Director, James Comey, and the current TSC Director, Christopher Piehota.  The text of Plaintiff's sixth claim refers, apparently inadvertently, to their predecessors Robert Mueller and Timothy Healy.

we incorporate those arguments by reference here. *See Latif*, Defs.' Mem. in Supp. of Mot. For S.J. [Dkt. #85-1]; *Tarhuni*, Defs.' Mem. in Supp. of Mot. to Dismiss [Dkt. #20]; *Fikre*, Defs.' Mem. in Supp. of Mot. to Dismiss [Dkt. #22].  These contentions include, *inter alia*: (1) that there is no constitutionally protected liberty interest in travel by air, whether internationally or domestically; (2) that mere allegations of stigma cannot support a "stigma-plus" procedural due process claim; (3) that due process does not require the Government to reveal one's status on or off of the No Fly List; and (4) that due process does not require the Government to reveal the basis for an individual's listing on the No Fly List, given the national security concerns associated with the disclosure of such information, where applicable.  Should the Court not revisit these issues, and should the Court discern an adequately pled protected interest here, Defendants recognize that this claim would then survive the motion to dismiss. *See also* n.1, *supra*.

## CONCLUSION

For all of the reasons discussed above, this action should be dismissed in its entirety as against the Official-Capacity Defendants.


Dated: August 8, 2014                    Respectfully submitted,

                                         STUART F. DELERY
                                         Assistant Attorney General

                                         DIANE KELLEHER
                                         Assistant Branch Director

                                         *s/ Brigham J. Bowen*
                                         BRIGHAM J. BOWEN
                                         Trial Attorney
                                         Civil Division, Federal Programs Branch
                                         U.S. Department of Justice
                                         P.O. Box 883

Washington, D.C.  20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail: Brigham.Bowen@usdoj.gov

*Attorneys for Defendants Federal Bureau
of Investigation, Eric Holder, State
Department, John Kerry, James B.
Comey, and Christopher M. Piehota*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing memorandum was delivered to all counsel of

record via the Court's ECF notification system.

*s/ Brigham J. Bowen*
BRIGHAM J. BOWEN

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains fewer than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*s/ Brigham J. Bowen*
BRIGHAM J. BOWEN
