IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YONAS FIKRE,                                    3:13-cv-00899-BR

               Plaintiff,                 OPINION AND ORDER

v.

FEDERAL BUREAU OF INVESTIGATION;
LORETTA E. LYNCH, in her official
capacity as Attorney General of
the United States;[1] DEPARTMENT OF
STATE; JOHN KERRY, in his official
capacity as Secretary of State;
UNITED STATES OF AMERICA; JAMES B.
COMEY, in his official capacity
as Director of the Federal Bureau
of Investigation; CHRISTOPHER M.
PIEHOTA, in his official capacity
as Director of the FBI Terrorist
Screening Center; JAMES CLAPPER,
in his official capacity as
Director of National Intelligence;
MICHAEL S. ROGERS, in his official
capacity as Director of the National
Security Agency; NATIONAL SECURITY
AGENCY; DAVID NOORDELOOS, an
employee of the Federal Bureau of
Investigation, in his official and
individual capacity; JOHN DOE I,
also known as JASON DUNDAS, an
employee of the Federal Bureau of
Investigation, in his official and
individual capacities; and JOHN/JANE
DOES II-XX, agents of the United
States,

               Defendants.

---

    [1] Pursuant to Federal Rule of Civil Procedure 25(d), Loretta
E. Lynch is automatically substituted for Eric Holder.

1 - OPINION AND ORDER

**GADEIR I. ABBAS**
**WILLIAM J. BURGESS**
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 2003
(720) 251-0425

**BRANDON B. MAYFIELD**
3950 S.W. 185th Avenue
Beaverton, Oregon 97007
(503) 941-5101

**THOMAS H. NELSON**
P.O. Box 1211
Welches, Oregon 97067-1211
(503) 622-3262

                    Attorneys for Plaintiff

**LORETTA E. LYNCH**
United States Attorney General
**BRIGHAM J. BOWEN**
**SAMUEL M. SINGER**
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514-6289

                    Attorneys for Defendants Federal Bureau of
                    Investigation, Loretta E. Lynch, Department of
                    State, John Kerry, James B. Comey, Christopher M.
                    Piehota, Michael S. Rogers, National Security
                    Agency, United States of America, and James
                    Clapper

**BROWN, Judge.**

        This matter comes before the Court on the Motion (#69) to

Dismiss for Failure to State a Claim and for Lack of Jurisdiction

filed by Defendants Federal Bureau of Investigation (FBI),

Loretta E. Lynch, Department of State, John Kerry, James B.

Comey, Christopher M. Piehota, Michael S. Rogers, National

2 - OPINION AND ORDER

Security Agency (NSA), United States of America, and James Clapper (collectively referred to as Official Capacity Defendants).[2]

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the Official Capacity Defendants' Motion (#69) to Dismiss as follows:

The Court **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES with prejudice** Claims One, Three, Four, and Seven; Claim Fifteen as to declaratory relief only; and Claim Sixteen only as to Plaintiff's claims under 50 U.S.C. §§ 1801(a),(b),(h), and 1809(a)(1), (a)(2).

The Court **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES without prejudice** Claim Sixteen only as to injunctive relief and Claim Seventeen and grants Plaintiff leave to amend these claims **no later than November 27, 2015**, to cure the pleading deficiencies identified by the Court, but in light of the age of this case and Plaintiff's numerous previous pleading attempts, the Court does not grant Plaintiff leave to amend his Complaint to add new claims or to materially alter any other existing claims.

_____

[2] Although the United States of America and James Clapper have appeared and are listed as among the Official Capacity Defendants who filed the Motion (#69) to Dismiss at issue here, the court docket does not reflect either of these parties has been served.

The Court also **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES without prejudice** Claim Nineteen to the extent that Plaintiff is able to seek a remedy under Federal Rule of Criminal Procedure 41(g) in the event that Plaintiff prevails on Claim Fifteen as to injunctive relief.

The Court **DENIES** the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claims Two, Six, and Eighteen.

## PROCEDURAL BACKGROUND

On May 22, 2015, the Official Capacity Defendants moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) the claims that Plaintiff Yonas Fikre brings against them in his Corrected Fourth Amended Complaint (Corrected) (FACC) (#62) as described below.[3]

On August 24, 2015, the Court heard oral argument on the Official Capacity Defendants' Motion. The Court took the Motion under advisement at the conclusion of oral argument.

---

[3] David Noordeloos and the John and Jane Doe Defendants, who Plaintiff sued in their individual capacities (collectively Individual Capacity Defendants), have not yet been served and, therefore, are not currently parties to this litigation. Thus, Claims Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, and Fourteen are not at issue in this Motion because those claims relate exclusively to the Individual Capacity Defendants.

4 - OPINION AND ORDER

**FACTUAL BACKGROUND**

The Court takes the following from Plaintiff's FACC as true:

I.  **The No-Fly List**

The FBI is responsible for development and maintenance of the No-Fly List, which identifies individuals who are "prohibited from flying into, out of, or over the United States" or into, out of, or over Canadian airspace by commercial airlines.

II.  **Interrogation of Plaintiff and Placement on the No-Fly List**

Plaintiff is a 33-year-old naturalized American citizen of Eritrean descent who was a resident of Portland, Oregon, beginning in 2006.  In late 2009 Plaintiff decided to use his experience working for a cellular telephone company in the United States to pursue the business of distributing and selling consumer electronic products in East Africa, and, accordingly, Plaintiff traveled to Sudan where some of his extended family lives.  In Sudan Plaintiff informed the United States Embassy in Khartoum of his presence in the country and his intention to pursue business opportunities there.  Based on encouragement from Embassy personnel, Plaintiff began the process of obtaining a Sudanese business license.

On April 21, 2010, Plaintiff received a telephone call from the Embassy requesting Plaintiff to contact Defendant Noordeloos. When Plaintiff returned the call, Noordeloos represented himself as an Embassy official working for the State Department.

5 - OPINION AND ORDER

Noordeloos invited Plaintiff to a luncheon at the Embassy the following day to discuss safety during a period of political turmoil in Sudan.

The next morning Plaintiff arrived at the Embassy and was met by Noordeloos and Defendant John Doe I, who introduced himself as Jason Dundas.  Noordeloos and Dundas escorted Plaintiff to a small meeting room, shut the door, positioned themselves between Plaintiff and the door, and informed Plaintiff that they worked for the FBI Field Office in Portland, Oregon.

When he was told Noordeloos and Dundas were FBI agents from Portland, Plaintiff requested to be represented by his legal counsel during any interrogation.  Noordeloos, however, informed Plaintiff that he could not return to the United States to confer with his Oregon-based legal counsel because Plaintiff had been placed on the No-Fly List.

The ensuing interrogation lasted several hours until the end of the business day.  Throughout the course of the interrogation Noordeloos and Dundas questioned Plaintiff about the As-Saber Mosque in Portland where Plaintiff had attended prayer services. In addition, Noordeloos and Dundas questioned Plaintiff about the source of financial support for his business endeavors and told him that sanctions made his business activities in Sudan illegal. Finally, Noordeloos asked Plaintiff to be an informant for the FBI in exchange for "substantial compensation" and removal from

the No-Fly List.  Plaintiff responded he did not wish to become
an informant.  At the end of the business day Noordeloos
suggested they resume the discussion the following day.
Plaintiff agreed.

The following morning Plaintiff called Noordeloos on the
telephone and informed him that he did not wish to meet further
with Dundas and Noordeloos.  Noordeloos became agitated when
Plaintiff again stated he did not want to be an informant.
Noordeloos concluded the conversation by telling Plaintiff:
"Whenever you want to go home you come to the embassy."  On May
4, 2010, a little more than a week after their final
conversation, Noordeloos emailed Plaintiff as follows:

> Yonas,
>
> Thanks for meeting with us last week in Sudan.  While
> we hope to get your side of issues we keep hearing
> about, the choice is yours to make.  The time to help
> yourself is now.
>
> Be safe in Sudan,
> Dave Noordeloos

FACC ¶ 38.  Plaintiff remained in Khartoum for approximately two
months during which time he noticed he was being followed by
persons he assumed to be associated with the Sudanese secret
police.  He learned from acquaintances that similar individuals
had been inquiring about him and his activities.  Plaintiff left
Sudan on approximately June 15, 2010.

7 - OPINION AND ORDER

On approximately September 15, 2010, Plaintiff traveled to the United Arab Emirates (UAE) to pursue similar business interests. Plaintiff obtained a residency permit in the UAE in order to conduct business, and he invested substantial financial resources provided by his family for that purpose.

On the evening of June 1, 2011, Plaintiff was forcibly taken from his home by persons who he later learned were Emirati secret police. The police seized some of Plaintiff's personal property, blindfolded him, and placed him in a heavily air-conditioned car. Plaintiff's captors drove him for approximately two hours to a building where he was housed in a heavily air-conditioned, windowless cell with only a bed.

The next morning Plaintiff was led to a room in which he would undergo the first of repeated interrogations during 106 days of imprisonment. During these interrogations Plaintiff was blindfolded while he was questioned in English for extended periods of time. Periodically Plaintiff was able to peek beneath his blindfold and to view the shoes and lower torsos of his interrogators, some of whom wore Western clothes.

The substance of the interrogations focused on the activities, fundraising, and leadership of the As-Saber Mosque. In addition, the interrogators questioned Plaintiff about "circumstances and events that [P]laintiff had disclosed" to Noordeloos and Dundas in Khartoum, and the interrogators urged

8 - OPINION AND ORDER

Plaintiff "numerous times" to cooperate with the FBI by becoming an informant.

Plaintiff was subjected to multiple threats and beatings throughout the course of his confinement.  In response to his resistance to answering questions, Plaintiff was struck on the head.  Besides being hit on the head, Plaintiff was repeatedly beaten on his back, legs, and the soles of his feet with batons and plastic pipes.  When Plaintiff returned to his cell at the end of the first day of interrogation, his bed had been removed and Plaintiff slept on the floor of his cold cell.  When Plaintiff asked his interrogators on several occasions whether his confinement and interrogation were at the request of the FBI, the interrogators severely beat him.

On June 14, 2011, Plaintiff took a "lie-detector test" during which he was questioned about whether his "financial arrangements involved soliciting funds for al-Qaeda," but he was not asked about the As-Saber Mosque.  That evening the bed was returned to his cell.

On June 20, 2011, Plaintiff's family learned from Plaintiff's neighbors in the UAE that he was missing. Plaintiff's counsel notified the United States Consulate in Abu Dhabi that Plaintiff had disappeared after being placed in an SUV of the type commonly used by the Emirati secret police.

The interrogations and beatings continued until July 28, 2011, when Plaintiff met with a United States Department of State employee named Marwa.  Before the meeting Plaintiff's captors instructed him not to disclose his mistreatment.  During the interview guards told Marwa that Plaintiff was being held without charge as part of an ongoing investigation.  Despite Plaintiff losing approximately 30 pounds since his kidnapping, Marwa found Plaintiff was in good health.  Plaintiff "attempted by facial contortions and winks to indicate that he was under duress," but Marwa either did not notice or disregarded the signals.

The interrogations and beatings resumed after Marwa's visit. Following the meeting interrogators repeatedly told Plaintiff that he would be released "soon" or "tomorrow," but he was not released.  Plaintiff considered refusing food in an attempt at suicide, but he was told he would be force-fed.

Near the end of his detention Plaintiff again asked an interrogator whether the FBI had requested his detention and interrogation.  This time the interrogator confirmed the FBI had made such a request and that American and Emirati authorities work closely on a number of such matters.

On September 14, 2011, Plaintiff was told he would be released that day.  Interrogators took money from Plaintiff's wallet to purchase an airline ticket back to the United States, but they were told Plaintiff would not be allowed to return to

the United States by air because he was on the No-Fly List. Thus, Plaintiff chose to fly to Sweden where, in the belief that he might still be in danger of abuse in countries that condone torture, Plaintiff submitted an application for asylum.

Based on his experience with State Department officials in Khartoum and the UAE, Plaintiff does not believe he can rely on the State Department to protect or to assist him while overseas.

On April 18, 2012, Plaintiff and his Swedish attorney held a press conference to detail his experiences in Sudan and the UAE and to announce that he would seek asylum in Sweden.  Less than two weeks later Plaintiff and two other individuals were indicted in the United States District Court for the Southern District of California for "conspiracy to structure monetary transfers" from his family to him between April 14, 2010, and April 19, 2010. The charges against Plaintiff were ultimately dismissed.

In the fall of 2013 Defendants' counsel suggested Plaintiff should visit the U.S. Embassy in Stockholm to make the necessary arrangements to return to the United States.  Because the government would not assure Plaintiff (1) that his safety from "extra-judicial actions" was guaranteed and (2) that he would be permitted to leave the United States after he returned, Plaintiff declined to return to the United States.

In November 2013 Plaintiff filed a DHS TRIP inquiry.  On January 23, 2014, DHS informed Plaintiff that changes to his

11 - OPINION AND ORDER

status were not warranted at that time.  DHS, however, did not verify Plaintiff's status on the No-Fly List.

Plaintiff's wife sought and received a divorce from Plaintiff because of the separation resulting from Plaintiff's inability to return to the United States and because of the stigma attached to Plaintiff's placement on the No-Fly List.

In early 2015 Plaintiff's asylum application in Sweden was denied.  On February 12, 2015, after the parties stipulated that DHS would reconsider Plaintiff's DHS TRIP application under the new procedures in light of the Court's June 24, 2014, Opinion and Order in *Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014), DHS informed Plaintiff that he remained on the No-Fly List because he had been "identified as an individual who may be a threat to civil aviation or national security."  DHS did not provide any additional factual reasons for Plaintiff's designation.

On February 14, 2015, the Swedish government transported Plaintiff to Portland, Oregon, by private jet.

**III. Defendants' Surveillance of Plaintiff**

In 2010 while Plaintiff was in the United States, he and his brother, Dawit Woldehawariat, worked together to set up a business venture abroad.  Plaintiff and Woldehawariat discussed this venture by telephone, email, and text message.

As a result of discovery and filings in the Southern District of California criminal case against Plaintiff that was

ultimately dismissed, Plaintiff discovered Defendants intercepted the contents of the communications between Plaintiff and Woldehawariat.  Plaintiff alleges Defendants did so without a warrant or probable cause.  These intercepted communications formed the basis for the meeting in the Khartoum Embassy and have been transmitted to several United States government agencies and foreign governments.

## STANDARDS

## I.  Federal Rule of Civil Procedure 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the plaintiff's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005).  The court may permit discovery to determine whether it has jurisdiction.  *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  *See also Mujica v. AirScan, Inc.*, 771 F.3d 580, 617 (9th Cir. 2014). The court has broad discretion in granting discovery and may narrowly define the limits of such discovery.  *Data Disc, Inc.*, 557 F.2d at 1285.  *See also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).  When the court "receives only written submissions, the plaintiff need only make a *prima facie* showing of jurisdiction."  *Rio Props., Inc. v. Rio Int'l Interlink,* 284

F.3d 1007, 1019 (9th Cir. 2002).  Plaintiff has the burden to establish that the court has subject-matter jurisdiction.  *Ass'n of American Med. Coll. v. United States*, 217 F.3d 770 (9th Cir. 2000).

## II.  <u>Federal Rule of Civil Procedure 12(b)(6)</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff's complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546).  When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

14 - OPINION AND ORDER

me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Fed. R. Civ. P. 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

## DISCUSSION

As noted, the Official Capacity Defendants move to dismiss each of the claims brought against them in Plaintiff's FACC.[4]

## I.    Claim One - Substantive Due Process:  Right to Return to the United States

In Claim One Plaintiff raises a substantive due-process claim based on his fundamental right as a citizen to return to the United States. Plaintiff seeks injunctive and declaratory relief in Claim One.

---

[4] The Official Capacity Defendants move to dismiss all claims against John Kerry and the Department of State (collectively the State Department Defendants) on the basis that Plaintiff does not plead sufficient facts to state a claim against the State Department Defendants. Although the Court agrees Plaintiff's allegations regarding the State Department Defendants are sparse, the allegations concerning the Khartoum Embassy, Mr. Noordeloos's representation that he was a State Department employee, and the visit by Marwa (a State Department employee) with Plaintiff in the Emirati prison are sufficient at this early stage of the proceedings to allege the State Department Defendants participated in the allegedly unlawful conduct.

The Official Capacity Defendants move to dismiss Claim One on two grounds:  (1) Under Rule 12(b)(6) on the basis that the right to return to the United States only applies at the border and does not extend to places beyond ports of entry to the United States and (2) under Rule 12(b)(1) for lack of subject-matter jurisdiction in light of the fact that Plaintiff no longer has standing to seek prospective relief on Claim One because he has returned to the United States.

This Court has already rejected the Official Capacity Defendants' contention that the substantive due-process right of a citizen to return to the United States is limited to a right of entry at the border.  *Fikre v. Fed. Bur. of Investigation*, 23 F. Supp. 3d 1268, 1282 (D. Or. 2014)(citing *Mohamed v. Holder*, 995 F. Supp. 2d 520, 536-37 (E. D. Va. 2014)).  To the contrary, this Court concluded "a substantive due-process claim based on a deprivation of the right to return to the United States" is cognizable when a plaintiff "allege[s] facts sufficient to demonstrate that Defendants have deprived him of every viable means of returning to the country."  *Fikre*, 23 F. Supp. 3d at 1282.

Defendants are correct, however, that Plaintiff's substantive due-process claim for prospective relief based on Plaintiff's right to return to the United States is not justiciable.  Although more properly addressed under the rubric

16 - OPINION AND ORDER

of mootness than standing,[5] Plaintiff's Claim One is moot because
Plaintiff has, in fact, returned to the United States.  "A case
is moot 'when it has lost its character as a present, live
controversy of the kind that must exist if [the court is] to
avoid advisory opinions on abstract propositions of law.'"
*Walker v. Beard*, 789 F.3d 1125, 1131-32 (9th Cir. 2015)(quoting
*Oregon v. FERC*, 636 F.3d 1203, 1206 (9th Cir. 2011)).  A claim
for prospective relief becomes moot when the plaintiff can no
longer benefit from such relief.  *Slayman v. FedEx Ground Package
Sys., Inc.*, 765 F.3d 1033, 1048 (9th Cir. 2014).

    Plaintiff's Claim One, therefore, is moot because Plaintiff
has returned to the United States and there is not any likelihood
that Plaintiff will be "deprived . . . of every viable means of
returning to the country" if he again travels abroad.  *See Fikre*,
23 F. Supp. 3d at 1282.  Thus, the declaratory and injunctive
relief Plaintiff seeks as to Claim One would be an "'advisory
opinion[] on [an] abstract proposition[] of law.'"  *See Walker*,
789 F.3d at 1131-32 (quoting *Oregon v. FERC*, 636 F.3d at 1206).

    On this record, therefore, the Court concludes Plaintiff's
Claim One is moot and, accordingly, the Court grants Defendant's

---

    [5] The doctrine of mootness rather than standing applies
when, as here, the events that rendered the plaintiff's claims
not justiciable took place during the pendency of the action.
*See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167, 189-92 (2000).  *See also Pit River Tribe v. U.S.
Forest Serv.*, 469 F.3d 768, 785 (9th Cir. 2006).

Motion to Dismiss as to Plaintiff's Claim One.  The Court
dismisses Claim One with prejudice because any future risk that
Plaintiff may be prevented from returning to the United States
should he travel abroad in the future would be a new claim for a
new action.

## II.  **Claim Two - Substantive Due Process:  Right to International Travel**

In Claim Two Plaintiff raises a substantive due-process
claim based on his fundamental right to international travel.
Plaintiff seeks injunctive and declaratory relief in Claim Two.

Defendants contend there is not any fundamental right to
international travel that is cognizable as a substantive due-
process claim and even if such a right existed, Plaintiff's
alleged placement on the No-Fly List would not deprive Plaintiff
of that right because it would only preclude a single means of
travel (*i.e.*, travel by commercial airline).

As Defendants acknowledge, this Court previously rejected
their contention that Plaintiff does not have any cognizable
right to international travel in the context of a substantive
due-process claim as to alleged placement on the No-Fly List.
*See Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1270-71 (D. Or. 2014).
*See also Eunique v. Powell*, 302 F.3d 971 (9th Cir.
2002)(recognizing the right to international travel as a
protected right under substantive due process).  Moreover, the

18 - OPINION AND ORDER

Court finds Plaintiff's factual allegations are sufficient to state such a claim.

Accordingly, on this record the Court concludes Plaintiff has adequately stated a substantive due-process claim based on Plaintiff's right to international travel, and, therefore, the Court denies Defendants' Motion to Dismiss as to Plaintiff's Claim Two.

## III. **Claim Three - Due Process:  Vagueness**

In Claim Three Plaintiff raises a due-process claim in which he contends the criteria for placement on the No-Fly List are unconstitutionally vague.

In his FACC Plaintiff alleges the standard for placement on the No-Fly List is "a reasonable suspicion to believe that a person is a known or suspected terrorist."  FACC ¶ 26. Defendants point out, however, that the standard Plaintiff cited is, in fact, the standard for placement in the larger Terrorist Screening Database (TSDB) and that the government filed on the public docket in *Latif v. Holder* a more specific statement of criteria necessary for placement on the No-Fly List that is a subset of the TSDB:

> Nominations to the No Fly List must meet additional substantive criteria, above what is required for inclusion in the larger TSDB.  More specifically, any individual, regardless of citizenship, may be placed on the No Fly List if the TSC determines that he or she represents:

    a.  A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) or an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to an aircraft (including a threat of air piracy, or threat to an airline, passenger, or civil aviation security); or

    b.  A threat of committing an act of domestic terrorism (as defined in 18 U.S.C. § 2331(5)) with respect to the homeland; or

    c.  A threat of committing an act of international terrorism (as defined in 18 U.S.C. § 2331(1)) against any U.S. Government facility abroad and associated or supporting personnel, including U.S. embassies, consulates and missions, military installations (as defined by 10 U.S.C. § 2801(c)(4)), U.S. ships, U.S. aircraft, or other auxiliary craft owned or leased by the U.S. Government; or

    d.  A threat of engaging in or conducting a violent act of terrorism and who is operationally capable of doing so.

*Latif*, No. 3:10-cv-00750, Joint Concise Statement of Agreed Facts Relevant to All Plaintiffs (#173) at 5 (D. Or. Mar. 13, 2015).[6]

"The test for vagueness is whether the provision fails to give a person of ordinary intelligence fair notice that it would apply to the conduct contemplated." *United States v. Johnson*, 130 F.3d 1352, 1354 (9th Cir. 1997). *See also McCormack v. Herzog*, 788 F.3d 1017, 1031 (9th Cir. 2015).  "'To avoid

---

[6] The Court may consider the No-Fly List criteria that the government published in *Latif* when resolving Defendants' Motion because those criteria are an undisputed matter of public record. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012)("We may take judicial notice of undisputed matters of public record.").  Plaintiff does not dispute the criteria published in *Latif* are genuine.

unconstitutional vagueness, an ordinance must (1) define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited; and (2) establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner.'" *McCormack*, 788 F.3d at 1031. "Statutes that are insufficiently clear are void for three reasons: '(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms.'" *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009)(quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)).

"'[A] party challenging the facial validity of [a law] on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications.'" *Hess v. Bd. of Parole and Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008)(quoting *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972 (9th Cir. 2003)). "It therefore follows that 'if the statute is constitutional as applied to the individual asserting the challenge, the statute is facially valid.'" *Hess*, 514 F.3d at

913 (quoting *United States v. Dang*, 488 F.3d 1135, 1141 (9th Cir. 2007)).

Ultimately, however, courts have "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). *See also Hess*, 514 F.3d at 914.

Plaintiff contends the No-Fly List criteria are unconstitutionally vague because the standard of proof that Defendants employ to determine whether an individual should be included in the TSDB and on the No-Fly List is impermissibly low and because the government has not sufficiently publicized the criteria to give appropriate notice to the public.

Plaintiff does not cite any authority to support his position that the due-process vagueness doctrine applies to the standard of proof that a regulation or statute mandates or to the sufficiency of the government's publication of the regulation or statute rather than only to the definition of conduct prohibited by the regulation or statute. Although Plaintiff's contentions concerning the standard of proof that applies to No-Fly List designations and publication of the substantive criteria may be relevant considerations in other contexts, the Court declines to extend the vagueness doctrine beyond the traditional inquiry as

to whether the conduct proscribed by the regulation is sufficiently defined to pass constitutional muster.  In this case the No-Fly List criteria are sufficiently clear to withstand Plaintiff's challenge of facial vagueness.

Accordingly, on this record the Court grants the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claim Three and dismisses Plaintiff's Claim Three with prejudice.

**IV.  Claim Four - Fifth Amendment Right to Counsel**

In Claim Four Plaintiff alleges Defendants violated Plaintiff's right to counsel as guaranteed by the Fifth Amendment to the United States Constitution when Defendant Noordeloos continued to question Plaintiff in the Khartoum Embassy after Plaintiff requested to consult with his United States-based counsel.  Plaintiff seeks declaratory and injunctive relief in Claim Four.

The Official Capacity Defendants move to dismiss Claim Four on two bases:  (1) Plaintiff does not have standing to seek prospective relief on this claim because there is not any evidence that Plaintiff's alleged injury is likely to recur and (2) Plaintiff's allegations do not state a claim for violation of the Fifth Amendment right to counsel.

"To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'"

*Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012)(quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))(bracketed text in original).  A threat of repetition of the violation can be shown in two ways:  (1) "'a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy'" and (2) "'the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014)(quoting *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2002))(omission and bracketed text in original).  Nonetheless, in all circumstances in which a plaintiff may "seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in Fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)(quoting *Laidlaw Envtl. Servs.*, 528 U.S. at 180-81).

    At the heart of Plaintiff's Claim Four is the allegation that Defendants place an individual on the No-Fly List while the individual is abroad in order to be able to subject such individuals to custodial interrogation without the assistance of

counsel.  Plaintiff, however, states he was actively represented

by both Swedish and American counsel while he was in Sweden, and

Defendants communicated with Plaintiff through counsel during

that time.  *See* FACC ¶¶ 69-71.  Thus, although Plaintiff alleges

Defendants maintain a policy, custom, and practice whereby

Defendants "place individuals on the No-Fly List once they have

departed the United States in order to arrange for interrogation

of such individuals at American embassies abroad without the

assistance of legal counsel" (FACC ¶ 95), Plaintiff's allegations

indicate at the time he filed this action Defendants' alleged

policy was no longer applicable to him, and, therefore, there was

not any realistic threat that such an injury could recur at the

time he filed this action.

Moreover, even if Plaintiff had standing to bring a claim

for prospective relief at the time that he filed this action,

Plaintiff's subsequent return to the United States would render

such a claim moot.

Accordingly, on this record the Court grants the Official

Capacity Defendants' Motion to Dismiss Plaintiff's Claim Four and

dismisses Plaintiff's Claim Four with prejudice.

**V.    Claim Six - Procedural Due Process**

In Claim Six Plaintiff brings a procedural due-process claim

based on Defendants' alleged deprivation of Plaintiff's liberty

interests in international travel and freedom from false

government stigmatization without due process when Defendants placed Plaintiff on the No-Fly List without providing him a sufficient opportunity to challenge his placement on the List. Plaintiff seeks declaratory and injunctive relief on Claim Six.

The Official Capacity Defendants move to dismiss Plaintiff's Claim Six on the basis that it fails as a matter of law because the No-Fly List process involves significant national security interests and the DHS TRIP procedures provide Plaintiff with an adequate opportunity to contest placement on the List.  The Official Capacity Defendants summarize the DHS TRIP procedures as follows:

> The Government has revised DHS TRIP to permit U.S. persons who are on the No Fly List such as Plaintiff an opportunity to (1) know they are on the No Fly List; (2) be advised of the basis for their inclusion (including as much as can be provided without compromising the national security, including, at a minimum, the applicable criteria); (3) be heard by way of a written response before a final redress determination is made; and (4) seek judicial review of TSA's final determination.

This Court has previously held a plaintiff's liberty interest in international travel and freedom from false government stigmatization are, when properly pled, cognizable liberty interests in the context of a procedural due-process challenge to the DHS TRIP procedures.  *See Latif v. Holder*, 28 F. Supp. 3d 1134, 1148-51 (D. Or. 2014).  *See also Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1273-75 (D. Or. 2014).  Here

26 – OPINION AND ORDER

Plaintiff's allegations provide a sufficient Factual basis at this early stage of the proceedings to state a procedural due-process claim based on Plaintiff's right to international travel and freedom from false government stigmatization.  Although the Official Capacity Defendants' contentions implicate relevant issues that the Court must eventually consider as part of the balancing test under *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976), such balancing requires a fuller record than that which is before the Court at this time.

Accordingly, on this record the Court denies the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claim Six.

**VI.   Claim Seven - Freedom of Association**

In Claim Seven Plaintiff brings a claim under the First Amendment to the United States Constitution alleging Defendants infringed on Plaintiff's freedom of association when Defendants offered to help in getting Plaintiff removed from the No-Fly List if he agreed to become an informant.

Plaintiff does not cite any authority for the proposition that government agents infringe a person's freedom of association when those agents offer an individual legal inducements to agree to become a government informant.  To the extent that Plaintiff's Claim Seven can be characterized as a retaliation claim under the First Amendment (*i.e.*, if Plaintiff intends to allege Defendants

retaliated against him for declining to be an informant by placing him on the No-Fly List), Plaintiff does not cite any authority to support the proposition that the First Amendment provides such protections in the context of law-enforcement interviews. *See McFayden v. Duke University*, 786 F. Supp. 2d 887, 948-49 (M.D. N.C. 2011)(*rev'd in part on other grounds by Evans v. Chambers*, 703 F.3d 636 (4th Cir. 2012))(noting the plaintiffs do not cite any "authority to support the application of the First Amendment protection against government-compelled ideological or political speech into the context of police interviews, which are covered by the more specific protections of the Fourth, Fifth, and Sixth Amendments."). Moreover, to the extent that Plaintiff contends Defendants placed him on the No-Fly List solely because he declined to be a government informant, such a contention is subsumed within Plaintiff's substantive due-process claim.

Accordingly, on this record the Court grants the Official Capacity Defendants' Motion to Dismiss Plaintiff's Claim Seven and dismisses Plaintiff's Claim Seven with prejudice.

## VII. **Claim Fifteen - Fourth Amendment**

In Claim Fifteen Plaintiff brings his claim under the Fourth Amendment contending Defendants intercepted, searched, and seized his telephone calls, emails, and text messages without a "warrant

satisfying the Fourth Amendment," probable cause, or reasonable suspicion.  FACC ¶ 148.

Plaintiff seeks an injunction "requiring [D]efendants to return or destroy any of [P]laintiff's unconstitutionally seized telephone calls, emails, or text messages, or information derived therefrom, that [D]efendants continue to retain, and prohibiting any use or disclosure of those communications and information." FACC ¶ 150.  In addition, Plaintiff seeks a declaration that

> the provisions of the Patriot Act and [the Foreign Intelligence Surveillance Act (FISA)] which permit the federal government to secretly collect, disseminate, and retain information from a person and which allow one to perform electronic surveillance and wiretaps of a person without first demonstrating to a court the existence of probable cause that the person has committed a crime are unconstitutional.

FACC ¶ 151.

The Official Capacity Defendants move to dismiss Plaintiff's Claim Fifteen as to declaratory relief for lack of standing and all of Claim Fifteen for failure to state a claim.

**A.    Standing to Seek Declaratory Relief**

The Official Capacity Defendants contend Plaintiff lacks standing to seek declaratory relief on Claim Fifteen because such a declaration would not redress any injury that Plaintiff alleges he has suffered.

"To establish Article III standing, a plaintiff must show (1) an 'injury in Fact,' (2) a sufficient 'causal connection

between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Laidlaw Envtl. Servs.*, 528 U.S. at 185.  *See also Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).  "Thus, a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield*, 599 F.3d at 969.  "The requirements for seeking such relief . . . differ from the requirements for seeking a declaratory judgment." *Id.* at 972.

    In *Mayfield* the Ninth Circuit held a plaintiff who had communications and materials seized during searches pursuant to FISA lacked standing to seek a declaration that the challenged portions of FISA as amended by the PATRIOT Act are unconstitutional.  *Id.* at 966-69.  The Ninth Circuit reasoned such a declaration would not likely redress any of the plaintiff's injuries because the declaration itself "would not require the government to destroy the derivative materials in its possession, and therefore would not redress Mayfield's injury."

*Id.* at 971.  The Ninth Circuit made clear that "[i]f the statutes challenged by Mayfield were declared unconstitutional, there will be no direct consequence to him," and, therefore, the plaintiff lacked standing because "redressibility depends upon the actions of the government in response to the court's judgment."  *Id.*

Like the plaintiff in *Mayfield*, Plaintiff in this matter seeks a declaration that the challenged provisions of FISA and the PATRIOT Act are unconstitutional as a remedy for the allegedly unconstitutional seizure of Plaintiff's communications. As in *Mayfield*, however, such a declaration would not remedy Plaintiff's alleged injuries.  *Mayfield*, therefore, forecloses Plaintiff's Claim Fifteen for declaratory relief.

Accordingly, the Court concludes Plaintiff lacks standing to seek declaratory relief on Claim Fifteen.

**B.    Failure to State a Claim**

Even though the Court concludes Plaintiff does not have standing to seek declaratory relief on Claim Fifteen, Plaintiff, as noted, also seeks injunctive relief in Claim Fifteen.  Thus, the Court addresses the Official Capacity Defendants' contention that all of Claim Fifteen must be dismissed for failure to state a claim because the challenged provisions of FISA and the PATRIOT Act under which the Official Capacity Defendants contend the alleged surveillance took place are constitutional.

Although Plaintiff assumes in his memoranda that the surveillance took place pursuant to FISA and the PATRIOT Act, the Court notes there is not any such allegation in his FACC.  To the contrary, in his FACC Plaintiff simply alleges the surveillance took place without a "warrant satisfying the Fourth Amendment," probable cause, or reasonable suspicion.  FACC ¶ 148.  Thus, the Official Capacity Defendants' contentions regarding the constitutionality of FISA and the PATRIOT Act are premature because Plaintiff has not alleged the surveillance took place pursuant to those statutes.  Although Plaintiff's allegations may be sparse and somewhat incomplete based on the parties' assumptions regarding FISA and the PATRIOT Act, they are sufficient to state a claim for injunctive relief under the Fourth Amendment at this early stage of the proceedings.

In summary, on this record the Court grants the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's requested declaratory relief on Claim Fifteen and dismisses that portion of Claim Fifteen with prejudice.  The Court also denies the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claim Fifteen for injunctive relief as noted in the Conclusion.

## VIII. <u>Claims Sixteen, Seventeen, and Eighteen - Statutory Surveillance Claims</u>

In Claims Sixteen, Seventeen, and Eighteen Plaintiff seeks damages from Defendant United States of America and some of the Individual Capacity Defendants[7] based on alleged violations of FISA, 50 U.S.C. §§ 1801(a), (b), (h), and (I), 1804(a), 1806(a), 1809(a)(1), and 1809(a)(2) (Claim Sixteen); the Stored Communications Act (SCA), 18 U.S.C. § 2703 (Claim Seventeen); and the Wiretap Act, 18 U.S.C. § 2511 (Claim Eighteen).  Plaintiff seeks damages from the United States in each of these Claims pursuant to 18 U.S.C. § 2712.

### A.   Claim Sixteen - FISA

In Claim Sixteen Plaintiff states a cause of action for alleged FISA violations pursuant to § 2712 and brings claims against the United States for violation of various sections of FISA.  The Official Capacity Defendants move to dismiss Claim Sixteen on the bases that (1) Plaintiff has not identified any valid waiver of the United States' sovereign immunity and (2) Plaintiff fails to state a claim under FISA.

---

[7] As noted, the Individual Capacity Defendants have not been served as of this date and have not appeared in this case.  The Court, therefore, will not address those portions of Plaintiff's claims.

1.  **Waiver of Sovereign Immunity**

The Official Capacity Defendants first contend
Plaintiff has failed to identify a valid waiver of the United
States' sovereign immunity as to Plaintiff's FISA claims because
(1) § 2712 only waives sovereign immunity as to FISA claims that
allege a violation of 50 U.S.C. § 1806(a) and (2) § 2712 only
waives sovereign immunity as to "willful" violations of FISA, and
Plaintiff has not alleged in Claim Sixteen that any employees or
officers of the United States willfully violated FISA.

a.    Applicability of § 2712 Cause of Action

Section 2712 provides:

> Any person who is aggrieved by any willful
> violation of this chapter or of chapter 119
> of this title or of sections 106(a), 305(a),
> or 405(a) of the Foreign Intelligence
> Surveillance Act of 1978 (50 U.S.C. 1801 et
> seq.) may commence an action in United States
> District Court against the United States to
> recover money damages.  In any such action,
> if a person who is aggrieved successfully
> establishes such a violation of this chapter
> or of chapter 119 of this title or of the
> above specific provisions of title 50, the
> Court may assess as damages--
>
> > (1) actual damages, but not less than
> > $10,000, whichever amount is greater;
> > and
>
> > (2) litigation costs, reasonably
> > incurred.

18 U.S.C. § 2712(a).

34 - OPINION AND ORDER

Of the various sections of FISA that the United States allegedly violated, § 2712(a) only authorizes a cause of action for damages for violations of 50 U.S.C. § 1806(a), which is also known as section 106(a) of FISA.  *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 850-55 (9th Cir. 2012) (noting § 2712(a) does not provide for a waiver of sovereign immunity as to a lawsuit for damages against the United States for some of the FISA violations alleged by Plaintiff, but § 2712(a) does provide a waiver of sovereign immunity for, among other provisions not relevant here, violations of § 1806(a)). Accordingly, Plaintiff has failed to identify any valid waiver of sovereign immunity as to his allegations that the United States violated 50 U.S.C. §§ 1801(a), (b), (h), and (I); 1804(a); 1809(a)(1); and 1809(a)(2).  The Court, therefore, dismisses Claim Sixteen with prejudice as to those alleged violations.

b.    Willfulness Requirement of § 2712

The Official Capacity Defendants contend Plaintiff has not identified any valid waiver of sovereign immunity for his claim under § 1806(a) because § 2712(a) only provides a waiver of sovereign immunity for *willful* violations of the § 1806(a) and Plaintiff has not sufficiently pled the United States' employees willfully violated § 1806(a).

35 - OPINION AND ORDER

Section 2712(a) only provides a cause of action for damages for "any willful violation" of § 1806(a), and § 1806(a), in turn, provides:

> Information acquired from an electronic surveillance conducted pursuant to this subchapter concerning any United States person may be used and disclosed by Federal officers and employees without the consent of the United States person only in accordance with the minimization procedures required by this subchapter.  No otherwise privileged communication obtained in accordance with, or in violation of, the provisions of this subchapter shall lose its privileged character.  No information acquired from an electronic surveillance pursuant to this subchapter may be used or disclosed by Federal officers or employees except for lawful purposes.

Under § 2712(a), therefore, the elements of an actionable claim under § 1806(a) are:  (1) A willful (2) disclosure or use (3) of information acquired from an electronic surveillance conducted pursuant to FISA (4) without the consent of the person who was the subject of the surveillance and (5) without the required minimization procedures or without any lawful purpose.

Relying on *Ratzlaf v. United States*, the Official Capacity Defendants contend the willfulness element of § 2712(a) requires Plaintiff to allege plausibly that the government agents engaged in conduct with the conscious objective of committing a violation.  510 U.S. 135 (1994).  Plaintiff, on the other hand,

contends Defendants do not cite the correct standard for the "willfulness" mental state.  Instead Plaintiff contends when "willfulness is a statutory condition of civil liability, [the Supreme Court has] generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  *See Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 57 (2007).  *See also Robins v. Spokeo, Inc.*, 742 F.3d 409, 411 n.1 (9th Cir. 2014).

The Court agrees with Plaintiff that the willfulness requirement of § 2712(a) waives the United States' sovereign immunity against lawsuits for damages as to both knowing and reckless violations of the statutory provisions referenced in § 2712(a).  Notably, the *Burr* Court specifically distinguished the understanding of "willfulness" in the context of criminal statutes and explained why such a formulation is inappropriate in the context of civil liability before noting "a common law term in a statute comes with a common law meaning, absent anything pointing another way."  *Burr*, 551 U.S. at 57 n.9, 58.  Because the Court does not find any persuasive evidence that Congress intended in § 2712(a) to give the term "willful" any meaning other than its common-law definition, the Court concludes the willfulness standard in *Burr* applies to claims brought under § 2712(a).

Plaintiff, nevertheless, has failed to plead a valid waiver of sovereign immunity for his FISA claim because his allegations are insufficient to establish that any Defendants knowingly or recklessly violated § 1806(a).  As noted, Plaintiff does not allege any surveillance took place pursuant to FISA. Moreover, Plaintiff does not make any nonconclusory allegations regarding minimization procedures or allege facts to support the proposition that the surveillance information was disclosed for an unlawful purpose.  Thus, even at this early stage of the proceedings, Plaintiff's allegations do not establish Defendants willfully violated the use and disclosure provisions for information gathered from surveillance conducted pursuant to FISA.

Accordingly, on this record the Court grants the Official Capacity Defendants' Motion to Dismiss Plaintiff's Claim Sixteen.  The Court must, nonetheless, consider whether Plaintiff should be granted leave to amend Claim Sixteen.

### 2.   Leave to Amend

Federal Rule of Civil Procedure 15(a) provides a party may amend a pleading after a response has been filed only by leave of court unless the opposing party consents to the amendment.  Rule 15(a), however, also provides leave to amend "shall be freely given when justice so requires."  This policy is

to be applied with "extreme liberality." *Moss v. United States Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).

The Supreme Court has recognized several Factors that a district court should consider when determining whether justice requires the court to grant leave to amend.  Those factors include

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment.

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Factor that carries the greatest weight is whether the amendment will prejudice the opposing party.  *Eminence Capital*, 316 F.3d at 1052.  "Absent prejudice or a strong showing of any of the remaining *Foman* Factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend."  *Id.*  "Delay alone is insufficient to justify denial of leave to amend; the party opposing amendment must also show that the amendment sought is futile, in bad faith or will cause undue prejudice to the opposing party."  *Jones v. Bates*, 127 F.3d 839, 847 n.8 (9th Cir.1997)(citing *United States v. Webb,* 655 F.2d 977, 980 (9th Cir. 1981)).  *See also Quantum Tech. Partners II, L.P. v. Altman Browning and Co.*, No. 08-CV-376-BR, 2009 WL 1795574, at *19 (D.

Or. June 23, 2009)(same).  The party who opposes amendment bears the burden to show prejudice.  *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

The Court notes this matter was filed on May 30, 2013, almost 29 months ago, and now what began as a Complaint (#1) with six claims has ballooned to a FACC with nineteen claims, many of which were first raised in Plaintiff's Third Amended Complaint (#55) filed approximately a year and a half after Plaintiff initiated this action.  In the Court's view, the unusually protracted Rule 12 litigation arises from the moving target that Plaintiff created in his pleadings and that has already significantly delayed this action[8] and potentially prejudiced the Official Capacity Defendants in light of their interest in a reasonably speedy resolution of this matter on the merits.  The Court concludes there is now an urgent need to move this matter beyond Rule 12 litigation and toward resolution on the merits.

Nonetheless, because of the "extreme liberality" with which leave to amend is to be given, the Court reluctantly grants Plaintiff one final opportunity to amend Claim Sixteen in order

---

[8] The Court notes the Rule 12 litigation in this case has already consumed more than the average time it takes to resolve a civil case on the merits in this District while two similar cases have proceeded to more advanced stages during this time.

to cure the pleading deficiencies identified by the Court.  *See Moss*, 572 F.3d at 972.

Accordingly, on this record the Court dismisses Plaintiff's Claim Sixteen without prejudice and with leave to amend no later than November 27, 2015, for the limited purpose of curing the pleading deficiencies identified herein.  The Court emphasizes it will dismiss Claim Sixteen with prejudice if Plaintiff does not cure these defects in his forthcoming Fifth Amended Complaint.

## B.   Claim Seventeen - Stored Communications Act (SCA)

In Claim Seventeen Plaintiff brings claims for violation of the SCA, 18 U.S.C. § 2703, and states a cause of action under § 2712.  The Official Capacity Defendants move to dismiss Claim Seventeen on the bases that (1) Plaintiff has not identified any valid waiver of sovereign immunity and (2) Plaintiff otherwise fails to state a claim under the SCA.

### 1.   Sovereign Immunity

The Official Capacity Defendants contend Plaintiff has failed to identify a valid waiver of sovereign immunity because § 2712 of the SCA only provides a waiver of sovereign immunity for unlawful use-and-disclosure claims and Plaintiff has not brought such claims under the SCA against the Official Capacity Defendants.

The SCA provides without notice the government may only compel disclosure of an individual's communications that have been stored for 180 days or less "pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction." 18 U.S.C. § 2703(a), (b)(1)(A).

After hearing an argument similar to the Official Capacity Defendants' argument set forth in this case, Judge Jeffrey S. White in the Northern District of California held:

> The plain language of Section 2712(a) does not limit the waiver of sovereign immunity for damage claims under the SCA and the Wiretap Act to claims for the use and disclosure of information.  In Section 2712(a), Congress specifically limited the waiver for damage claims to three specific sections of FISA and easily could have done the same with respect to the Wiretap Act and the SCA.  The Fact that Congress did not similarly limit the waiver to specific sections within the Wiretap Act and the SCA has significance. To ignore this distinction would be to ignore the plain language and structure of the statute.

*Jewel v. Nat'l Sec. Agency*, 965 F. Supp. 2d 1090, 1107 (N.D. Cal. 2013).  This Court finds persuasive Judge White's rationale in *Jewel*.  As noted, although § 2712(a) limits claims for damages under FISA to specific provisions of FISA, including unlawful use-and-disclosure claims under § 1806(a), the plain language of § 2712(a) does not limit a cause of action for damages against the United States under the SCA to unlawful use-and-disclosure

42 - OPINION AND ORDER

claims.  Accordingly, the Court finds lacking in merit the
Official Capacity Defendants' contention that claims brought
under the SCA pursuant to § 2712(a) are only actionable if they
allege unlawful use or disclosure of information obtained
pursuant to the SCA.

On this record, therefore, the Court concludes
§ 2712(a) provides a valid waiver of sovereign immunity for
Plaintiff's SCA claim.

**2.    Failure to State a Claim**

The Official Capacity Defendants contend Plaintiff
fails to state a claim under the SCA because "nothing in the
amended complaint plausibly alleges that stored communications
were collected by the Government," and, in any event, the SCA
does not prohibit the interception of communications or
surveillance pursuant to FISA.

At the outset the Court notes the Official Capacity
Defendants' argument concerning the permissibility of accessing
stored communications through FISA is premature because Plaintiff
has not alleged Defendants obtained any information at issue in
this case pursuant to FISA.

In his FACC Plaintiff alleges "[D]efendants were
intercepting and/or acquiring the content of [P]laintiff's
telephone calls, his text messages, and his emails" and that such

43 - OPINION AND ORDER

"interceptions and/or acquisitions . . . were not conducted
pursuant to a warrant and were not supported by probable cause or
reasonable suspicion." FACC ¶¶ 78-79. These allegations,
however, are not sufficient to state a claim under the SCA. As
noted, § 2703 only limits the government's ability to require the
disclosure of stored communications that are less than six months
old. Plaintiff's allegations do not establish the emails or text
messages allegedly accessed by the government were in electronic
storage at the time that the government allegedly obtained them
or, if they were, how long they had been there. Thus,
Plaintiff's FACC only contains allegations that are "merely
consistent with" the Official Capacity Defendants' liability,
and, therefore, "stop[] short of the line between possibility and
plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.

Accordingly, on this record the Court dismisses
Plaintiff's Claim Seventeen without prejudice for failure to
state a claim and with leave to amend for the limited purpose of
curing the pleading deficiencies identified herein. As with
Claim Sixteen, however, Plaintiff will not be granted any further
opportunities to amend Claim Seventeen to state a claim
sufficiently.

C.    **Claim Eighteen - Wiretap Act**

In Claim Eighteen Plaintiff brings a cause of action for damages pursuant to § 2712 in which Plaintiff alleges Defendants violated the Wiretap Act, 18 U.S.C. § 2511.  The Official Capacity Defendants move to dismiss Claim Eighteen on the basis that Plaintiff has failed to identify a valid waiver of sovereign immunity and, in any event, that Plaintiff has failed to state a claim under the Wiretap Act.

1.    **Sovereign Immunity**

The Official Capacity Defendants' sovereign-immunity argument tracks their contentions with regard to Claim Seventeen. Because § 2712(a) explicitly provides a cause of action for damages for violations of § 2511 that is not limited to unlawful use-and-disclosure claims, the Court concludes Plaintiff has identified a valid waiver of sovereign immunity.  *See Jewel*, 965 F. Supp. 2d at 1107.

2.    **Failure to State a Claim**

The Official Capacity Defendants also move to dismiss Plaintiff's Claim Eighteen for failure to state a claim on the basis that the Wiretap Act explicitly permits surveillance conducted pursuant to FISA.  *See* 18 U.S.C. § 2511(2)(e).

The Wiretap Act generally prohibits the intentional interception of any wire, oral, or electronic communication as

45 - OPINION AND ORDER

well as the disclosure of the contents of any intercepted communication.  18 U.S.C. § 2511(1)(a), (1)(c).  Although the Official Capacity Defendants are correct that § 2511(2)(e) permits surveillance that is conducted pursuant to FISA, the Official Capacity Defendants' contention that § 2511(2)(e) immunizes Defendants' conduct is, once again, premature on this record because Plaintiff has not alleged Defendants conducted the surveillance in this case pursuant to FISA.

The Court concludes at this stage of the proceedings that Plaintiff's pleadings are sufficient to state a claim under the Wiretap Act.  As pled, Plaintiff's Wiretap Act claim is simple:  Defendants intercepted Plaintiff's communications without a warrant, without probable cause, and/or without reasonable suspicion.  The Court concludes such allegations are sufficient to state a claim under § 2511(1)(a).

Accordingly, on this record the Court denies the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claim Eighteen.

## IX.  Claim Nineteen - Federal Rule of Criminal Procedure 41(g)

In Claim Nineteen Plaintiff raises a stand-alone claim under Federal Rule of Criminal Procedure 41(g) in which Plaintiff seeks the return of illegally searched and seized property.  Accordingly, Plaintiff seeks an order directing Defendants to

return or to destroy the records of telephone calls, emails, text messages, and derivative information that Plaintiff alleges Defendants seized unconstitutionally.

Plaintiff cites *United States v. Comprehensive Drug Testing, Inc.*, for the proposition that Rule 41(g) permits the Court to "invoke its civil equitable jurisdiction" to order Defendants to return or to destroy the allegedly unconstitutionally seized information. *See* 621 F.3d 1162, 1172 (9th Cir. 2010). Plaintiff does not cite any authority, however, for the proposition that Rule 41(g) provides Plaintiff with a stand-alone claim. To the contrary, the *Comprehensive Drug Testing* court discussed Rule 41(g) as a broader civil analog to the exclusionary remedy. The relief that Plaintiff seeks in Claim Nineteen, however, is functionally identical to the injunction that he seeks in Claim Fifteen to remedy Defendants' alleged Fourth Amendment violation. Thus, the Court concludes Rule 41(g) provides a remedy in civil cases in which Plaintiff establishes a Fourth Amendment violation.

Accordingly, on this record the Court grants the Official Capacity Defendants' Motion to Dismiss Plaintiff's Claim Nineteen and dismisses Plaintiff's Claim Nineteen without prejudice to Plaintiff seeking relief authorized by Rule 41(g) in the event that Plaintiff prevails on Claim Fifteen.

47 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** the Official Capacity Defendants' Motion (#69) to Dismiss as follows:

The Court **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES with prejudice** Claims One, Three, Four, and Seven; Claim Fifteen as to declaratory relief only; and Claim Sixteen only as to Plaintiff's claims under 50 U.S.C. §§ 1801(a),(b),(h), and 1809(a)(1), (a)(2).

The Court **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES without prejudice** Claim Sixteen as to injunctive relief only and Claim Seventeen and grants Plaintiff leave to amend these claims **no later than November 27, 2015**, to cure the pleading deficiencies identified by the Court, but in light of the age of this case and Plaintiff's numerous previous pleading attempts, the Court does not grant Plaintiff leave to amend his Complaint to add new claims or to materially alter any other existing claims.

The Court also **GRANTS** the Official Capacity Defendants' Motion and **DISMISSES without prejudice** Claim Nineteen to the extent that Plaintiff is able to seek a remedy under Federal Rule of Criminal Procedure 41(g) in the event that Plaintiff prevails on Claim Fifteen as to injunctive relief.

The Court **DENIES** the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's Claims Two, Six, and Eighteen.

IT IS SO ORDERED.

DATED this 4th day of November, 2015.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

49 - OPINION AND ORDER