BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

BRIGHAM J. BOWEN
SAMUEL M. SINGER
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail:      Brigham.Bowen@usdoj.gov
             Samuel.M.Singer@usdoj.gov

*Attorneys for Defendants Federal Bureau
of Investigation, Loretta E. Lynch, State
Department, John Kerry, James B.
Comey, United States, James
Clapper, Michael S. Rogers, National
Security Agency, and Christopher M. Piehota*[1]

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| YONAS FIKRE,<br><br>    *Plaintiff,* | Case 3:13-cv-00899-BR |
| v.<br><br>THE FEDERAL BUREAU OF<br>INVESTIGATION, et al.,<br><br>    *Defendants*. | **OFFICIAL-CAPACITY DEFENDANTS'**<br>**MOTION TO DISMISS PLAINTIFF'S**<br>**FIFTH AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

    Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Federal Bureau of

Investigation, Loretta E. Lynch, State Department, John Kerry, James B. Comey, United States,

James Clapper, Michael S. Rogers, National Security Agency, and Christopher M. Piehota

submit this motion to dismiss all claims asserted against them in Plaintiff's Second Amended

---

[1] Loretta E. Lynch, Attorney General of the United States, is substituted for her predecessor by operation of law. Fed. R. Civ. P. 25(d).

Complaint. As grounds for this motion, the above defendants submit their concurrently filed

memorandum in support. Pursuant to Local Rule 7-1, the undersigned conferred with counsel

for Plaintiff, and counsel indicated that Plaintiff opposes the motion.


Dated: January 21, 2016                    Respectfully submitted,


BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

*s/ Brigham J. Bowen*
BRIGHAM J. BOWEN
SAMUEL M. SINGER
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail:       Brigham.Bowen@usdoj.gov
                Samuel.M.Singer@usdoj.gov


*Attorneys for Defendants Federal Bureau
of Investigation, Eric Holder, State
Department, John Kerry, James B.
Comey, United States, James
Clapper, Michael S. Rogers, National
Security Agency, and Christopher M.
Piehota*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing motion was delivered to all counsel of record

via the Court's ECF notification system.

*s/ Brigham J. Bowen*
BRIGHAM J. BOWEN

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Branch Director

BRIGHAM J. BOWEN
SAMUEL M. SINGER
Civil Division, Federal Programs Branch
U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
Tel.: (202) 514-6289
Fax: (202) 616-8470
E-mail:     Brigham.Bowen@usdoj.gov
            Samuel.M.Singer@usdoj.gov

*Attorneys for Defendants Federal Bureau
of Investigation, Loretta E. Lynch(\*), State
Department, John Kerry, James B.
Comey, United States, James
Clapper, Michael S. Rogers, National
Security Agency, and Christopher M. Piehota*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| YONAS FIKRE, <br><br>     *Plaintiff,* | Case 3:13-cv-00899-BR |
| v. <br><br> THE FEDERAL BUREAU OF INVESTIGATION, et al., <br><br>     *Defendants*. | **OFFICIAL-CAPACITY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT** |

\* Loretta E. Lynch, Attorney General of the United States, is substituted for her predecessor by operation of law. Fed. R. Civ. P. 25(d).

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................2

    I.    The Court Should Dismiss Plaintiff's Due Process Claims Concerning The No Fly List For Lack Of Jurisdiction.......................................................2

    II.    Plaintiff's Surveillance Claims Should Be Dismissed With Prejudice.................10

        A.    Plaintiff's FISA Claim Should Be Dismissed With Prejudice..................11

        B.    Plaintiff's Stored Communications Act Claim Should Be Dismissed With Prejudice. ........................................................................16

        C.    Plaintiff's Wiretap Act Claim Should Be Dismissed With Prejudice........21

        D.    Plaintiff's Fourth Amendment Claim Should Be Dismissed With Prejudice And In Its Entirety. ...................................................22

        E.    Plaintiff's Fourth Amendment Claim Fails As A Matter Of Law. ............23

        F.    There Is No Basis To Reconsider The Court's Conclusion That It Lacks Jurisdiction Over Plaintiff's Fourth Amendment Claim For Declaratory Relief.........................................................................25

    III.    The Department Of State And The Director Of National Intelligence Should Be Dismissed As Defendants..............................................................27

CONCLUSION....................................................................................................28

# TABLE OF AUTHORITIES

CASES

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986) .......................................................................... 6

*Al Haramain Islamic Found. Inc. v. Dep't of Treasury (AHIF)*,
    686 F.3d 965 (9th Cir. 2012) .................................................................. 6, 7, 8, 9

*Al-Haramain Islamic Found., Inc. v. Obama*,
    705 F.3d 845 (9th Cir. 2012) ............................................................................ 17

*Am. Arab Anti-Discrimination Comm. v. Reno*,
    70 F.3d 1045 (9th Cir. 1995) .............................................................................. 6

*Americopters, LLC v. FAA*,
    441 F.3d 726 (9th Cir. 2006) .............................................................................. 3

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ............................................................................. 15

*Arjmand v. DHS*,
    745 F.3d 1300 (9th Cir. 2014) ............................................................................ 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................... 12, 23

*Camp v. Pitts*,
    411 U.S. 138 (1973) ........................................................................................... 9

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................... 26

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013) ............................................................................... 24, 26

*La Voz Radio de la Communidad v. FCC*,
    223 F.3d 313 (6th Cir. 2000) .............................................................................. 8

*DeGrassi v. City of Glendora*,
    207 F.3d 636 (9th Cir. 2000) ............................................................................ 12

*Ege v. DHS*,
    784 F.3d 791 (D.C. Cir. 2015) ........................................................................... 5

*Gen. Dynamics Corp. v. United States*,
    131 S. Ct. 1900 (2011) ....................................................................................... 7

*Gilmore v. Gonzales*,
435 F.3d 1125 (9th Cir. 2006) ................................................................. 3, 7, 8

*Hepting v. AT&T Corp.*,
439 F. Supp. 2d 974 (N.D. Cal. 2006) ........................................................... 18

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
333 F.3d 156 (D.C. Cir. 2003) ...................................................................... 6, 9

*Ibrahim v. DHS*,
538 F.3d 1250 (9th Cir. 2008) ...................................................................... 4, 5

*In re Sealed Case*,
310 F.3d 717 (FISA Ct. Rev. 2002) ................................................... 13, 23, 24

*Intri–Plex Techs., Inc. v. Crest Grp.*,
499 F.3d 1048 (9th Cir. 2007) ........................................................................... 3

*Jifry v. FAA*,
370 F.3d 1174 (D.C. Cir. 2004) ...................................................................... 5, 7

*Kwai Fun Wong v. United States*,
373 F.3d 952 (9th Cir. 2004) ............................................................................ 15

*Lacey v. Maricopa Cnty.*,
693 F.3d 896 (9th Cir. 2012) ............................................................................ 15

*Latif v. Holder*,
686 F.3d 1122 (9th Cir. 2012) ....................................................................... 4, 5

*Latif v. Lynch*,
No. 10-750 (D. Or. filed 2010) .......................................................................... 1

*Mayfield v. United States*,
599 F. 3d 964 (9th Cir. 2010) ........................................................................... 26

*Meridian Int'l Logistics, Inc. v. United States*,
939 F.2d 740 (9th Cir. 1991) .............................................................................. 6

*Mohamed v. Holder*,
No. 11-1924 (4th Cir. 2013) ................................................................................ 5

*Mohamed v. Holder*,
No. 1:11-CV-50, 2015 WL 4394958 (E.D. Va. July 16, 2015) ....................... 5, 8

*Mohamed v. Jeppesen Dataplan, Inc.*,
614 F.3d 1070 (9th Cir. 2010) ............................................................................ 7

*Mokdad v. Lynch*,
804 F.3d 807 (6th Cir. 2015) ............................................................................... 5

*Omni Capital Int'l, Inc. v. Rudolph Wolff & Co.*,
484 U.S. 97 (1987) ............................................................................................. 1

*Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*,
  507 U.S. 380 (1993) ................................................................................ 25

*Ratzlaf v. United States*,
  510 U.S. 135 (1994) ................................................................................ 18

*Reagan v. Abourezk*,
  484 U.S. 1 (1987) ...................................................................................... 6

*Reno v. Am. Arab Anti-Discrimination Comm.*,
  119 S. Ct. 936 (1999) ................................................................................ 6

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ...................................................................... 3

*Safe Extensions, Inc. v. FAA*,
  509 F.3d 593 (D.C. Cir. 2007) .................................................................... 3

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .................................................................. 24

*Tarhuni v. Holder*,
  8 F. Supp. 3d 1253 (D. Or. 2014) ............................................................ 26

*United States v. Abu-Jihaad*,
  630 F.3d 102 (2d Cir. 2010) ................................................................ 23, 24

*United States v. Bin Laden*,
  126 F. Supp. 2d 264 (S.D.N.Y. 2000) ...................................................... 13

*United States v. Cavanagh*,
  807 F.2d 787 (9th Cir. 1987) ............................................................... 23, 24

*United States v. Damrah*,
  412 F.3d 618 (6th Cir. 2005) .................................................................... 23

*United States v. El-Mezain*,
  664 F.3d 467 (5th Cir. 2011) .................................................................... 24

*United States v. Pelton*,
  835 F.2d 1067 (4th Cir. 1987) .............................................................. 23, 24

*United States v. Woldehawariat*,
  No. 12-CR-1689 (S.D. Cal. Sept. 26, 2013) .......................................... 23, 24

## STATUTES

8 U.S.C. § 1189 ............................................................................................ 6

8 U.S.C. § 1534 ............................................................................................ 6

18 U.S.C. § 2511 ................................................................................. *passim*

18 U.S.C. § 2520 ........................................................................................ 19

18 U.S.C. § 2702 ................................................................................................ 19

18 U.S.C. § 2703 ........................................................................................... 15, 20

18 U.S.C. § 2712 ....................................................................................... 11, 16, 21

49 U.S.C. § 44903 ............................................................................................... 4

49 U.S.C. § 44926 ............................................................................................... 4

49 U.S.C. § 46110 .......................................................................................... *passim*

50 U.S.C. § 1702 ................................................................................................ 6

50 U.S.C. § 1806 ........................................................................................... 10, 11

50 U.S.C. §§ 1801–12 and 1821-29 ................................................................. 10

50 U.S.C. § 1810 ........................................................................................... 17, 21

50 U.S.C. § 1881a ............................................................................................. 24

## FEDERAL RULES

Fed. R. Civ. P. 25(d) ............................................................................................ i

Fed. R. Civ. P. 60(b)(6) ..................................................................................... 25

Fed. R. Crim. P. 41(g) ....................................................................................... 10

## OTHER AUTHORITIES

*Legal Authorities Supporting the Activities of the National Security Agency
Described by the President,*
  81 Ind. L.J. 1374 (2006) ............................................................................ 18

*National Security Investigations and Prosecutions (2d)* § 9:1,
  David S. Kris & J. Douglas Wilson ......................................................... 13, 14

FISA Amendments Act (FAA) of 2008
  Pub. L. No. 110-261, 122 Stat. 2436 ............................................................ 24

# INTRODUCTION

Plaintiff's Fifth Amended Complaint (5AC) raises three broad categories of claims. One set of claims is not currently before the court;[1] the other two should be dismissed. As to the claims now before the Court, Claims 1 and 3 continue to challenge Plaintiff's status on the No Fly List, the original focus of this litigation. Pursuant to the revised procedures available through DHS TRIP, Plaintiff has now received a TSA decision and order. Under 49 U.S.C. § 46110, challenges to that order are subject to review in the Court of Appeals, and not this Court. And to the extent there is jurisdiction in this Court to review these claims, the Government respectfully submits that litigation of these claims should be stayed pending the outcome of related proceedings in *Latif v. Lynch*, No. 3:10-750 (D. Or.).

Beyond his No Fly List claims, Plaintiff's fifth amended complaint again raises various claims challenging alleged unlawful government surveillance, none of which sets forth any plausible basis for proceeding. All of Plaintiff's surveillance claims revolve around a single acknowledgement by the Government in a prior criminal case of surveillance undertaken pursuant to the Foreign Intelligence Surveillance Act (FISA). *See* 5AC ¶¶ 77–78. Based on this incident alone, Plaintiff alleges that his communications were captured without lawful authorization. But as the Government stressed in its prior motion, the mere allegation that

---

[1] The first category of claims consists of individual-capacity claims (Claims 2, 5–11) concerning past overseas events, such as alleged FBI interviews. It appears that the individual defendants either have not been served or have been dismissed as defendants (*see* Order, Dkt. #83 (dismissing claims against Mr. Noordeloos)), and thus they are not properly before the Court at this time. *See Omni Capital Int'l, LTD. v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Until such time as Plaintiff serves the remaining unserved individual defendants, and counsel is authorized to represent them, the Department of Justice is not appearing on their behalf. As such, this motion to dismiss does not address Claims 2, 5, 6, 7, 8, 9, 10, or 11, or any of the other counts as they relate to the individual defendants.

Plaintiff's communications were captured under FISA authority does not support a plausible inference that any such FISA surveillance was unlawful. To the contrary, these renewed allegations are even more clearly without any plausible foundation.

In its November 4, 2015 Order (Dkt. #81) ("Mem. Op."), this Court reserved judgment on the Government's position that an authorization of surveillance pursuant to FISA forecloses any liability for the alleged violations of the SCA, the Wiretap Act, and the Fourth Amendment. While recognizing that FISA authority is integral to the Government's defense against the surveillance claims, the Court found it premature to consider the legal consequences of the Government's use of FISA because Plaintiff had not expressly alleged that the surveillance in question was carried out under FISA. Plaintiff has now alleged in no uncertain terms that the electronic surveillance he challenges "was done under purported FISA authority." 5AC ¶ 144. And this allegation now plainly forecloses his claims under the Stored Communications Act (SCA), the Wiretap Act, and the Fourth Amendment. In addition, Plaintiff's renewed challenged to FISA surveillance fails in any way to establish that that government agents used or disclosed his communications in willful violation of the law. The Government's FISA-based defenses are therefore unquestionably ripe for adjudication and Plaintiff's surveillance claims should now be dismissed with prejudice.

## ARGUMENT

### I.     The Court Should Dismiss Plaintiff's Due Process Claims Concerning The No Fly List For Lack Of Jurisdiction.

With respect to Plaintiff's long-standing challenge to his alleged inclusion on No Fly List, the recently reopened DHS TRIP process resulted in a decision and order of TSA confirming that Plaintiff is on the No Fly List. 5AC ¶ 75. Because Plaintiff's substantive claim directly challenges this order, it should be dismissed for lack of jurisdiction.

Section 46110 provides for "exclusive" jurisdiction in the courts of appeal to review orders issued "in whole or in part" by TSA, including claims "inescapably intertwined" with TSA orders. *See* 49 U.S.C. § 46110(a),(c); *Americopters, LLC* v. *FAA*, 441 F.3d 726, 736 (9th Cir. 2006); *Gilmore* v. *Gonzales*, 435 F.3d 1125, 1132 (9th Cir. 2006). An "order" includes any agency decision that "provides a definitive statement of the agency's position, has a direct and immediate effect on the day-to-day business of the party asserting wrongdoing, and envisions immediate compliance with its terms," because such an order "has sufficient finality to warrant the appeal offered by section 46110." *Gilmore*, 435 F.3d at 1132 (internal citation omitted); *accord Safe Extensions, Inc.* v. *FAA*, 509 F.3d 593, 598 (D.C. Cir. 2007).

At the conclusion of the revised DHS TRIP process here, the TSA Administrator issued an order based on review of the DHS TRIP file. 5AC ¶ 75; Dkt. #72-2 (Decision and Order). The Order is captioned "Decision and Order" and is signed by the Acting Administrator. Dkt. #72-2.[2] This Order constitutes a "definitive statement" concerning Plaintiff's No Fly status and has a "direct and immediate effect" on the individual's ability to board a commercial aircraft. *See Gilmore*, 435 F.3d at 1132. The Order reflects the Acting Administrator's consideration of the basis for the listing and Plaintiff's DHS TRIP submission.[3]

Plaintiff's challenge to the decision to retain him on the No Fly List is therefore a challenge to a TSA order — an order issued pursuant to TSA's plain statutory authority

---

[2] The Court may take judicial notice of the contents of this document (which is referenced in the complaint, has been filed by Plaintiff, and the contents of which are not in dispute) without converting the motion to dismiss into one for summary judgment. *See Intri-Plex Techs., Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (judicial notice of "matters of public record" insofar as these are not "subject to reasonable dispute" appropriate) (citation omitted); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (noting that the court "may take judicial notice of court filings and other matters of public record").

[3] Additionally, the Order reflects a considered decision that more information could not be made available to the Plaintiff because additional disclosure would risk harm to national security or jeopardize law enforcement activities. Dkt. #72-2.

governing redress. *See* 49 U.S.C. § 44903(j)(2)(C)(iii)(I) (directing TSA to "establish a procedure to enable airline passengers, who are delayed or prohibited from boarding a flight because the advanced passenger prescreening system determined that they might pose a security threat, to appeal such determination and correct information contained in the system"); *id.* § 44903(j)(2)(G)(i) (directing TSA to "establish a timely and fair process for individuals identified [under TSA's passenger prescreening function] to appeal to the [TSA] the determination and correct any erroneous information"); 49 U.S.C. § 44926(b)(1) ("implement, coordinate, and execute the process" for correcting erroneous information related to the No Fly List). Thus, there is no longer any doubt that Plaintiff's substantive claim is directed at a final TSA order under Section 46110.

The Ninth Circuit previously held that challenges to No Fly determinations could proceed in district court because "TSC actually compiles the list of names ultimately placed" on the List. *Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012); *see also Arjmand v. DHS*, 745 F.3d 1300 (9th Cir. 2014); *Ibrahim v. DHS*, 538 F.3d 1250, 1255 (9th Cir. 2008). With respect to the prior DHS TRIP process, the Ninth Circuit reasoned that "TSA simply passes grievances along to TSC and informs travelers when TSC has made a final determination" and that any "relief must come from TSC—the sole entity with both the classified intelligence information Plaintiffs want and the authority to remove them from the List." *Latif*, 686 F.3d at 1128-29. The Court therefore held that the exclusive jurisdiction provisions of Section 46110 did not apply and that jurisdiction was appropriate in district court.[4] While the Government respectfully continues to

---

[4] This is the same basis for the holding in *Arjmand*, where the petitioner had completed the prior version of DHS TRIP. The court in *Arjmand* held that, like the *Latif* plaintiffs, the petitioner there was seeking "confirmation of his watchlist status and, if present on the TSDB, removal from the list or a meaningful opportunity to contest his inclusion on the list," and that Section 46110 did not provide remedies against TSC. 745 F.3d at 1302. In *Ibrahim*, the Ninth Circuit

disagree with the Ninth Circuit's conclusions regarding the prior DHS TRIP orders, those conclusions are, in any event, not applicable to the TSA orders generated by the revised redress process. TSA now explicitly makes the final determination and does in fact have the information and the authority to effectuate the relief Plaintiff seeks. Under the new process, it is clear that TSA is the final decisionmaker, empowered with "the authority to remove them from the List," *id.* at 1129, and not a mere pass-through for the decisions of TSC.[5]

For all these reasons, Plaintiff's claim should be heard *via* a petition for review in an appropriate court of appeals. *See* 49 U.S.C. § 46110; *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004). The Court of Appeals would have jurisdiction "to affirm, amend, modify, or set aside any part of the order and may order the … Administrator to conduct further proceedings." 49 U.S.C. § 46110(c). Review under Section 46110 is based on review of an administrative record; the Government anticipates that, consistent with past practice, classified and privileged portions of the records may be submitted *ex parte* and *in camera* for judicial review in the court of appeals. *See, e.g., Jifry*, 370 F.3d at 1182. This could include review of any appropriate

---

held that original placement on the No Fly List was not reviewable in the Court of Appeals because it did not involve an order of TSA. 538 F.3d at 1255.

[5] The revised redress process also addresses similar concerns raised by other courts of appeals. *See Ege v. DHS*, 784 F.3d 791, 795 (D.C. Cir. 2015) (challenge to alleged placement on the No Fly List was not proper in the Court of Appeals because TSC, not TSA, determines whether to remove a person from the List); *Mohamed v. Holder*, No. 11-1924, Dkt. #86 (4th Cir. May 28, 2013) (same); *Mokdad v. Lynch*, 804 F.3d 807 (6th Cir. 2015) (same); *but see also id.* (challenge to the adequacy of the TSA redress process requires joinder of TSA, and TSA orders are reviewable under 46110 in the Court of Appeals). The district court in *Mohamed* recently noted the existence of "substantial issues" regarding judicial review of the revised TRIP redress process and suggested that upon completion of the revised process, the Court of Appeals could consider its jurisdiction to hear a petition for review. *See Mohamed v. Holder*, No. 1:11-CV-50 (AJT/MSN), 2015 WL 4394958, at *13 & n.16 (E.D. Va. July 16, 2015); *see also Mohamed v. Holder*, No. 1:11-CV-50 (AJT/MSN), Order at 7–8 (E.D. Va. Dec. 18, 2015), Dkt. #204 (denying Plaintiff's motion for reconsideration on this point).

aspect of the final Order, including the substantive findings that Plaintiff was properly retained on the No Fly List or the procedural findings that information was properly withheld.

Review of Plaintiff's claim in the Court of Appeals pursuant to Section 46110 is especially appropriate where the law governing such review in district court is not clearly established. Some courts have expressed reluctance to "dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions," except in limited circumstances, including where Congress has authorized such review by statute. *See*, *e.g.*, *Abourezk v. Reagan*, 785 F.2d 1043, 1060–61 (D.C. Cir. 1986) (Ginsburg, C.J.), *aff'd by an equally divided Court*, 484 U.S. 1 (1987); *see also Am. Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1067–70 (9th Cir. 1995) ("*ADC*") (final judgment vacated on jurisdictional grounds by *Reno v. Am. Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)).[6] Congress provided for judicial review of certain determinations through procedures that permit the introduction of classified information *ex parte* and *in camera*. *See*, *e.g.*, 8 U.S.C. § 1189(b)(4) (classified information may be submitted *ex parte* and *in camera* in challenges to designations of foreign terrorist organizations); *accord* 50 U.S.C. § 1702(c) (challenges to designations under the International Emergency Economic Powers Act (IEEPA)); 8 U.S.C. § 1534(e)(3)(A) (challenges by alien terrorists to their removals); *see also Al Haramain Islamic Found. Inc. v. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) ("*AHIF*") (classified information may be submitted *ex parte* and *in camera* in

---

[6] *See also Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740, 745 (9th Cir. 1991) (reviewing FBI declarations *ex parte* to determine whether the defendant FBI agent acted within the scope of his employment but noting that such *ex parte* review should be rare and limiting its holding regarding the permissibility of such review to the facts of the case).

challenges to IEEPA designations); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (same).[7]

Courts have also found that Section 46110 provides a suitable method for cases to be litigated in the appellate courts based on review of an administrative record, including where the record may contain sensitive and classified information that the court can consider on an *ex parte* and *in camera* basis. *See*, *e.g.*, *Jifry*, 370 F.3d at1182. In *Jifry*, an appellate court, proceeding under Section 46110's statutory framework, reviewed a challenge to the revocation of airmen's certificates pursuant to a determination that the individuals posed a security risk based on inherent authority to review an administrative record that included classified information. *See also Gilmore*, 435 F.3d at 1131 (reviewing a TSA security directive containing sensitive security information *ex parte* in order to confirm that it was a final TSA order for purposes of 49 U.S.C. § 46110, and reviewing due process claims).

Finally, courts have uniformly recognized that they may review classified information *ex parte*, *in camera*, in deciding a claim of privilege, including the state secrets privilege. *See*, *e.g.*, *Gen. Dynamics Corp. v. United States*, 131 S. Ct. 1900, 1905 (2011); *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1077 (9th Cir. 2010) (*en banc*); *see also AHIF*, 686 F.3d at 982 (recognizing that *ex parte* review undertaken to review state secrets privilege assertions). Review of such privilege assertions does not entail a review of a claim on the merits, however. Rather, the state secrets doctrine provides that when adjudication of the merits of a claim in district court risks or requires the disclosure of state secrets, including to present a valid defense,

---

[7] The Ninth Circuit in *AHIF* expressed some hesitation about the continuing vitality of *ADC*'s premise that "a court may not dispose of the merits of a case on the basis of *ex parte*, *in camera* submissions[,]" but the Court ultimately distinguished *ADC* and joined other courts in holding that the Government may use classified information, without disclosure, when making terrorist designation determinations pursuant to IEEPA. *See AHIF*, 686 F.3d at 982 n.8 (internal citation omitted) (emphasis in original).

the effect of the privilege assertion is to exclude the privileged information from consideration

on the merits of the case, and the unavailability of that evidence may require dismissal.  *See*

*Jeppesen*, 614 F.3d at 1077.  The United States has asserted the state secrets privilege in

response to discovery demands for classified information in similar challenges to alleged

inclusion on the No Fly list.  *See, e.g.*, *Tarhuni v. Holder, et al.*, No. 3:13-CV-00001-BR (D. Or.

Sept. 16, 2014), Dkt. # 72; *Mohamed v. Holder*, *supra*, 2015 WL 4394958, at *10–*11

(discussing privilege assertion).

 In sum, to the extent the Court were to proceed to Plaintiff's substantive claims, there is

no express statutory authorization or framework under which judicial review of any classified

information would proceed in district court.  For this additional reason, the Government

maintains that the appropriate forum for judicial review of the TSA Order at issue here should be

in the Court of Appeals pursuant to Section 46110.

 In addition, because Plaintiff challenges a final order of TSA, his substantive and

procedural challenges, both of which are inescapably intertwined with a TSA order, should be

heard in a court of appeals, pursuant to Section 46110.  *See also Gilmore*, 435 F.3d at 1131;

*AHIF*, 686 F.3d at 979 (both reviewing procedural due process claims).[8]  Proceeding in this

manner would not only comport with the governing statute but would serve judicial economy by

avoiding bifurcated proceedings in the appellate and district courts.  *See, e.g.*, *La Voz Radio de la*

*Communidad v. FCC*, 223 F.3d 313, 318 (6th Cir. 2000) (statute vesting exclusive jurisdiction in

the court of appeals extends to all issues inhering in the controversy).  At a minimum, the Court

---

[8] This conclusion is underscored by the fact that Plaintiff, in an apparent attempt to evade the
reach of Section 46110, has not even named TSA, the agency that administers DHS TRIP — the
very procedures Plaintiff purportedly challenges — as a defendant.

should exercise its discretion to decline to review Plaintiff's procedural claim when such a claim could be heard, in tandem with the substantive claim, in the court of appeals.

In the alternative, and should the Court conclude that Plaintiff's substantive challenge can and should be heard in this Court, Defendants respectfully submit that this challenge should be stayed pending the outcome of the Court's determination concerning procedural due process in *Latif.* The Court's order in that case — in which the plaintiffs' substantive due process claims have not been litigated — may significantly inform the scope, resolution, and/or procedures that might follow in this case. Accordingly, if it is not dismissed, assessment of Plaintiff's substantive claim here should, at a minimum, await further developments in *Latif. Latif*, Order at 2 (D. Or. Feb. 13, 2015), Dkt. #168 (requiring litigation of procedural due process claims prior to consideration of substantive due process claims).[9]

If this Court determines that it can and should review Plaintiff's procedural claim,[10] that claim should be stayed pending the outcome of the summary judgment proceedings in *Latif.* The resolution of those claims will provide meaningful guidance concerning the adequacy of the DHS TRIP process provided both to the *Latif* plaintiffs and to Mr. Fikre, and concerning how

---

[9] Should Plaintiff's substantive claim go forward in this Court, the parties can, in the future, address how that claim should proceed. However, in no event would the Government agree to procedures that would entail providing classified information to Plaintiff or his counsel. In addition, if the Court were to decide that Section 46110 does not apply to permit review in the Court of Appeals and that it will undertake an *ex parte, in camera* review of classified information to decide the merits of the Government's No Fly List determinations concerning Plaintiff, any such review ordered by the Court must at least be limited to an administrative record. *See, e.g., AHIF*, 686 F.3d at 979 (reviewing administrative record); *Holy Land Found.*, 333 F.3d at 164 (same); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made … in the reviewing court.").

[10] Defendants continue to reserve their position that Plaintiff's procedural due process claims may also be dismissed for failure to state a claim and incorporate their prior arguments in this regard by reference. Defendants, of course, recognize that the Court has already heard and rejected these arguments in its prior orders in this matter.

those claims may be resolved going forward. Judicial economy will be well served by awaiting those developments before litigating Mr. Fikre's claim in earnest. *Cf.* Mot. in Alt. for Partial Stay (concurrently filed herewith).

## II. Plaintiff's Surveillance Claims Should Be Dismissed With Prejudice.

In his 4AC, Plaintiff brought a number of claims based on the allegation that he was the subject of unlawful surveillance by the Government. These included statutory claims challenging the legality of the alleged surveillance under FISA (now Claim 13), the Stored Communications Act (now Claim 14), and the Wiretap Act (now Claim 15); a Fourth Amendment challenge to FISA itself (now Claim 12); and a claim for the return of property under Fed. R. Crim. P. 41(g) (now Claim 16). Each of Plaintiff's surveillance claims stems from a single set of disclosures made in a criminal proceeding against Plaintiff's brother, Dawit Woldehawariat, and another individual. (Plaintiff was indicted in the same proceeding but the indictment was dismissed on the Government's motion. *United States v. Woldehawariat*, No. 12-CR-1689, Dkt. #85 (S.D. Cal. Sept. 26, 2013).) In that proceeding, the Government provided notice under Section 106 of the FISA, 50 U.S.C. § 1806, that it intended to offer into evidence or otherwise use or disclose information obtained or derived from electronic surveillance and physical searches conducted pursuant to FISA, 50 U.S.C. §§ 1801–12 and 1821–29. *Woldehawariat*, Dkt. #65 (S.D. Cal. June 3, 2013). The Government later produced in discovery, subject to a protective order, documents reflecting FISA-authorized surveillance of electronic and telephonic communications between Woldehawariat and Plaintiff. *See Woldehawariat*, Dkt. #61 (S.D. Cal. Apr. 22, 2013).

Following briefing on the Government's Motion to Dismiss the 4AC ("MTD 4AC"), this Court dismissed Plaintiff's Fourth Amendment claim for declaratory relief with prejudice, but left open Plaintiff's Fourth Amendment claim for injunctive relief (as well as his related claim

for the return of property under Rule 41(g), which was dismissed without prejudice).  *See* Mem.

Op. at 32, 47–48.  The Court also dismissed without prejudice Plaintiff's claims brought under

the FISA and SCA, and granted Plaintiff leave to amend his FISA claim (insofar as it concerns

alleged violations of 50 U.S.C. § 1806(a)) and his SCA claim.  *Id*. at 40–41.  The Court also

denied the Government's motion with respect to Plaintiff's claim for damages under the Wiretap

Act.  *Id*. at 40, 44, 46.  As noted, in previously addressing whether to dismiss Plaintiff's

surveillance claims, this Court declined to consider the Government's position that authorization

of surveillance under FISA forecloses liability under the SCA, Wiretap Act, and Fourth

Amendment because, in the Court's view, Plaintiff had not alleged that the surveillance was

authorized pursuant to FISA.  *Id*. at 32.

Any doubt over the alleged authority for the surveillance in question has been dispelled

by the 5AC, wherein Plaintiff expressly identifies FISA as the source of authority for the

purportedly unlawful surveillance.  5AC ¶ 144.  The 5AC renews Plaintiff's statutory claims

under FISA, the SCA, and the Wiretap Act, as well as his Fourth Amendment claim for

injunctive relief.  Separately, Plaintiff has filed a motion under Rule 60(b) seeking

reconsideration of the Court's dismissal of his Fourth Amendment claim for declaratory relief.

*See* Dkt. #86.

## A.  Plaintiff's FISA Claim Should Be Dismissed With Prejudice.

In its November 2015 Order, this Court granted the Government's motion to dismiss

Plaintiff's FISA claim, finding that all but one of the alleged FISA violations in the 4AC were

plainly outside the applicable waiver of sovereign immunity.  *See* Mem. Op. at 35.  With respect

to the one alleged violation that was at least potentially actionable — Plaintiff's assertion that the

Government unlawfully used or disclosed his communications in violation of 50 U.S.C.

§ 1806(a) — the Court concluded that the allegations in the 4AC were insufficient to support a claim for relief and dismissed the claim without prejudice.  *See* Mem. Op. at 41.

Section 1806(a) provides that information acquired from FISA surveillance may be used and disclosed only in accordance with statutory minimization requirements.  Congress has authorized suit against the United States for alleged violations of Section 1806(a) only insofar as the violations are "willful."  18 U.S.C. § 2712(a).  In dismissing the FISA claim, this Court found that Plaintiff had "failed to plead a valid waiver of sovereign immunity for his FISA claim because his allegations are insufficient to establish that any Defendants knowingly or recklessly violated § 1806(a)."  Mem. Op. at 38.  More specifically, Plaintiff did "not make any nonconclusory allegations regarding minimization procedures or allege facts to support the proposition that the surveillance information was disclosed for an unlawful purpose."  *Id.*

The new allegations in the 5AC do not cure these defects.  Plaintiff alleges that "information derived from the electronic surveillance of plaintiff was willfully, knowingly, and recklessly disseminated for the unlawful purpose of interrogating plaintiff without counsel and coercing plaintiff to turn informant and then to cause his torture by proxy in the [United Arab Emirates]."[11]  5AC ¶ 145.  This allegation simply recites in conclusory fashion the elements of the claim and otherwise falls well short of plausibly stating a claim in a number of respects.

First, there is no plausible allegation that any surveillance information relating to Plaintiff was actually disclosed.  Plaintiff alleges that FISA information "was willfully, knowingly, and

---

[11] Plaintiff also alleges that the "electronic surveillance was not authorized or conducted pursuant to the strict FISA procedural requirements, certifications, and privacy protections for U.S. persons, and/or the minimization procedures that apply only to foreign intelligence and not open-ended domestic intelligence activities."  5AC ¶ 147.  This Court can make short work of this allegation, which is precisely the type of "formulaic recitation of the elements of a cause of action" the Supreme Court has rejected as insufficient.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

recklessly disseminated," but sets forth nothing to support this allegation, including about the agencies or officials who allegedly disseminated it, when any such dissemination took place, or what information was supposedly involved. *See DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (bare allegation to support nonmoving parties' claims will not overcome a motion to dismiss; the plaintiff must allege facts). Thus, while Plaintiff seeks to draw a connection between the challenged FISA surveillance and his alleged experiences in Sudan and the United Arab Emirates (UAE), there is not a single well-pleaded fact in the 5AC that supports such a link. Plaintiff does not allege, for example, that the FBI or UAE officials who allegedly questioned him referred to his electronic communications, or even that they knew information that could have been obtained only through surveillance of his communications. Plaintiff simply engages in conjecture, without any factual foundation, that the surveillance identified in the prior criminal case was somehow connected to his alleged interrogation in the UAE. The absence of such basic well-founded allegations is reason alone to dismiss the Section 1806(a) claim.

<u>Second</u>, even if the Court could plausibly infer that the Government disclosed FISA information relating to Plaintiff, there again are no well pleaded allegations that such an alleged disclosure violated Section 1806(a), nor does such a conclusion merely follow from any disclosure presumed to have occurred. As previously explained, *see* MTD 4AC at 40–41, each FISA application has its own set of minimization procedures, with the specific minimization requirements varying depending on the circumstances of a particular investigation and the nature of the foreign intelligence information sought. *See* David S. Kris & J. Douglas Wilson, *National Security Investigations and Prosecutions (2d)* § 9:1; *see also In re Sealed Case*, 310 F.3d 717, 741 (FISA Ct. Rev. 2002); *United States v. Bin Laden*, 126 F. Supp. 2d 264, 286 (S.D.N.Y. 2000) ("more extensive monitoring and 'greater leeway' in minimization efforts are permitted in

a case [involving] … [a] 'world-wide, covert and diffuse … international terrorist group.''), aff'd

sub nom. *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157 (2d Cir.

2008).

Plaintiff asks the Court to find that the Government failed to comply with the applicable

minimization procedures without setting forth any basis for that conclusion.  For one thing,

Plaintiff does not know what those minimization procedures required, and mere guesswork that

surveillance information was shared with other federal agencies and the UAE does not raise the

prospect of a statutory violation above the speculative level.  With respect to alleged disclosure

to the FBI, "[s]tandard minimization procedures generally permit dissemination of nonpublic

foreign intelligence information or evidence of a crime concerning a U.S. person to 'officials,

agencies, or components with responsibilities directly related to the information.'"  *National

Security Investigations and Prosecutions (2d)* § 9:6 (quoting FISA Five Year House Report at

19).  Thus, even if there were a plausible basis to find that FISA information relating to Plaintiff

was disseminated to the FBI (and, as explained, the allegations do not support even that

proposition), there would be no reason to believe that such information-sharing was inconsistent

with the governing minimization procedures.  Further, in speculating that FISA information was

disclosed "for the unlawful purpose of interrogating Plaintiff without counsel," 5AC ¶ 145,

Plaintiff overlooks the fact that this Court dismissed his constitutional claims stemming from his

alleged encounter with the FBI in Sudan.  *See* Mem. Op. at 25, 28.  Thus, even if it were

plausible, Plaintiff's allegation that the FISA information was given to the FBI in advance of the

alleged interview gets him no closer to a viable claim for relief.

As for the alleged disclosure to the UAE, Plaintiff says nothing to support an inference

that the Government disclosed surveillance information to a foreign government, let alone that it

failed to appropriately minimize the disclosure. Indeed, prior standard minimization procedures permitted the Attorney General to authorize dissemination of FISA information to foreign governments. *See National Security Investigations and Prosecutions (2d)* § 9:6.

Finally, even if Plaintiff has plausibly alleged a violation of Section 1806(a), his claim still should be dismissed on the independent ground that he has failed to allege the type of culpable conduct required by Section 2712(a). *See* Mem. Op. at 38 (dismissing FISA claim on the ground that Plaintiff made no allegations "to establish that any Defendants knowingly or recklessly violated § 1806(a)"). As with the 4AC, the 5AC is devoid of allegations from which the Court could infer the state of mind of the federal agents purportedly responsible for the alleged violations. And, as with the 4AC, the 5AC attributes the alleged violations generally to unspecified "defendants," making it impossible to draw inferences about a particular individual's mental state. *See*, *e.g.*, *Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004) (affirming dismissal of *Bivens* complaint that "fail[ed] to identify what role, if any, each individual defendant had" in the alleged constitutional deprivation); *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) (en banc) (affirming dismissal under *Iqbal* where plaintiff alleged that "undifferentiated" defendants violated his rights but failed "to specify any culpable action taken by a single defendant"). The only difference between the 4AC and 5AC insofar as "willfulness" is concerned is Plaintiff's conclusory statement that his communications were "willfully, knowingly, and recklessly disseminated for the unlawful purpose of interrogating plaintiff without counsel and coercing plaintiff turn informant and then to cause his torture by proxy in the UAE." 5AC ¶ 145. Again, however, this conclusory recitation of the elements of the claim coupled with an unfounded factual assertion is insufficient under Rule 12(b). *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) ("to survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). For this reason and those identified above, Plaintiff's FISA claim should be dismissed with prejudice.

**B. Plaintiff's Stored Communications Act Claim Should Be Dismissed With Prejudice.**

The SCA prohibits law enforcement agents not acting pursuant to a warrant from compelling service providers to disclose the contents of stored communications if such communications are less than six months old. 18 U.S.C. § 2703. Plaintiff appears to claim that, in connection with its FISA surveillance, the Government unlawfully compelled service providers to disclose his communications in violation of the statutorily established process in section 2703. 5AC ¶¶ 149–52. Although this Court dismissed Plaintiff's SCA claim for failure to state a claim with leave to amend, *see* Mem. Op. at 44, it did so without considering the Government's argument that the relevant SCA prohibition does not apply when the Government acts under FISA authority, *id.* at 43 (declining to address the Government's FISA defense on the ground that Plaintiff had not "alleged Defendants obtained any information at issue in this case pursuant to FISA"). With Plaintiff's clarification that the surveillance he seeks to put at issue was conducted under authority of the FISA, that basis for dismissal is now squarely before the Court and unassailable.

The SCA's exception for FISA-authorized surveillance is clear-cut. The SCA expressly permits service providers to furnish stored communications to "persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance," as required by certain provisions of FISA. 18 U.S.C. § 2511(2)(a)(ii). Plaintiff has argued that this provision does not shield the Government from liability under Section 2712(a) where the FISA surveillance is not "authorized," by which he means that it is not supported by the requisite

showing of probable cause.  Pl.'s Opp'n to MTD 4AC, Dkt. #72 ("Pl.'s Opp'n) at 38–39.  There

is no authority for this interpretation of Section 2511(2)(a)(ii), and the Government has already

explained why such an interpretation is untenable, *see* Reply in Support of MTD 4AC, Dkt. #73

(MTD 4AC Reply) at 22–25, but several points bear repeating here.

First, Plaintiff's theory of liability would dramatically expand Section 2712(a)'s limited

waiver of sovereign immunity for alleged violations of FISA.  Not only did Congress limit the

Government's civil liability for alleged violations of FISA to three narrow statutory provisions

relating to the use and disclosure of intelligence information, *see* 18 U.S.C. § 2712(a), but it

expressly declined to authorize civil suits against the United States for alleged violations relating

to the acquisition or interception of communications, 50 U.S.C. § 1810; *see also Al-Haramain

Islamic Found., Inc. v. Obama*, 705 F.3d 845, 852 (9th Cir. 2012) (FISA Section 1810 does not

waive sovereign immunity of the United States).  Notwithstanding these limitations, Plaintiff has

argued that any violation of FISA can form the basis for liability under Section 2712(a), provided

that the underlying surveillance activity would not have otherwise been permitted by the SCA.

*See* Pl.'s Opp'n at 38–39.  But there would have been no need for Congress to carefully

enumerate the specific FISA provisions that can give rise to liability under Section 2712(a) if

litigants could simply use the SCA or the Wiretap Act to challenge the lawfulness of FISA

surveillance more generally.  *Cf. Al-Haramain*, 705 F.3d at 853 ("It would be anomalous to the

point of absurdity for Congress, on one hand, to carefully and explicitly waive sovereign

immunity with respect to certain FISA sections and then, on the other, cavalierly imply a

sovereign immunity waiver with respect to § 1810….").  Plaintiff's attempt to read such an open-

ended cause of action into Section 2712(a) contravenes not only Congress's intent to limit

liability under that provision to claims concerning the alleged misuse or disclosure of

surveillance information, but also its intent for Section 1810 to shield the United States from damages claims brought under FISA concerning alleged unlawful electronic surveillance.

Second, Plaintiff's theory of liability is inconsistent with the settled understanding of Section 2511(2)(e) as a "safe-harbor" provision that shields federal agents from liability for officially sanctioned surveillance activity. In Plaintiff's view, FISA surveillance can be certified by the Attorney General and approved by the Foreign Intelligence Surveillance Court and yet still "unauthorized" if for some reason the basis for the surveillance turns out to be insufficient. This theory is incompatible with Section 2511(2)(e), which "make[s] explicit what would already have been implicit — that those authorized by statute to engage in particular surveillance do not act unlawfully when they conduct such surveillance." *Legal Authorities Supporting the Activities of the National Security Agency Described by the President*, 81 Ind. L.J. 1374, 1394 (2006); *see also Hepting v. AT&T Corp.*, 439 F. Supp. 2d 974, 1002-05 (N.D. Cal. 2006) (recognizing that § 2511(2)(a)(ii)(B) protects a telecommunications company from suit for assisting government surveillance so long as it obtains a court order directing such assistance or a certification that no warrant or court order is required, regardless of whether the surveillance turns out to be lawful). Consistent with this understanding, the term "authorized" is used throughout Section 2511 to signify officially sanctioned conduct. *See*, *e.g.*, 18 U.S.C. § 2511(2)(a)(ii)(B) (describing a court order or certification "setting forth the period of time during which the provision of the information, facilities, or technical assistance is authorized"); *id* § 2511(2)(g)(ii) (providing that it shall not be unlawful "to intercept any radio communication which is transmitted ... by a station operating on an authorized frequency"); *see also Ratzlaf v. United States*, 510 U.S. 135, 143 (1994) ("A term appearing in several places in a statutory text is generally read the same way each time it appears.").

The natural consequence of Plaintiff's position would be to expose the Government and its agents to unforeseen and unreasonable channels of liability. A federal agent who engages in surveillance authorized by statute could face criminal liability merely because the basis for the authorization turns out to be invalid. *See* 18 U.S.C. § 2511(1)(a) (creating criminal liability for any person who "intentionally intercepts ... electronic communication[s]"); *id.* § 2511(2)(e) (providing an exception to § 2511(1)(a) for electronic surveillance "authorized" by FISA). The same would be true for service providers who in good faith divulge stored communications to the government in connection with a facially valid (but ultimately legally deficient) court order or government certification. *See* 18 U.S.C. §§ 2702(a)(3), 2520(a) (prohibiting service providers from divulging stored communications to the government); 18 U.S.C. § 2511(2)(a)(ii) (creating an exception for the provision of stored communications to "persons authorized by law to intercept wire, oral, or electronic communications or to conduct electronic surveillance, as defined in [FISA]" if the Government produces a court order directing such assistance or a certification that no warrant or court order is required). Congress could not have intended for such government agents or service providers to face liability based only on a post-hoc assessment of whether an authorization of FISA surveillance was proper.

Even if Section 2712(a) could support a claim under the SCA for alleged violations of FISA, this particular claim must still fail because Plaintiff has made no plausible allegation that the alleged FISA violation was willful. Plaintiff has failed to plead facts suggesting that Government agents carried out FISA surveillance knowingly or recklessly disregarding the fact that such surveillance was unlawful. *See* Mem. Op. at 37 (concluding that the willfulness requirement in Section 2712(a) waives sovereign immunity as to both knowing and reckless violations of statutory provisions references in Section 2712(a)). This Court has already found

that Plaintiff failed to plead a willful violation of FISA, *see* Mem. Op. at 38, and that finding is

no less true for Plaintiff's claim that the surveillance was carried out without the requisite

probable cause than it is for his claim that the Government failed to properly minimize the use

and disclosure of surveillance information.

Finally, Plaintiff still has not clearly identified any conduct that would be actionable

under the SCA. In dismissing this claim, this Court observed that Plaintiff's allegations did not

establish that "the emails or text messages allegedly accessed by the government were in

electronic storage at the time that the government allegedly obtained them or, if they were, how

long they had been there." Mem. Op. at 44. Apparently seeking to address this deficiency, the

5AC states as follows:

> Plaintiff did not decide to pursue commercial activities in East Africa until late
> December 2009. Plaintiff was first interrogated in Sudan in April 2010, during
> which interrogation defendants used illegally obtained electronic
> communications. At least some of these communications were clearly in
> electronic storage for fewer than 180 days.

5AC ¶ 151. This statement presupposes that stored communications allegedly were collected by

the Government and disseminated to the FBI in advance of an interview in Sudan. But, as

explained, *see*, *infra* Section II. A., there are no facts that even hint at the possibility that FBI

agents used his electronic communications during the alleged interview in Sudan — no facts

suggesting they referred to electronic communications, or that they knew information that could

have been obtained only from electronic communications. Moreover, even if the Court were to

credit Plaintiff's conclusory allegation that "these communications were clearly in electronic

storage for fewer than 180 days," 5AC ¶ 151, there are still no facts to establish that the

communications were "stored" for the purposes of the SCA — that is, that they were kept in an

electronic communications system and unlawfully compelled by the Government from an

electronic communications provider.  *See* 18 U.S.C. § 2703.  Again, Plaintiff presents only

speculation concerning whether or how the Government obtained the electronic communications

in question and purportedly used them.  The sole fact he presents is that any communications

collected were obtained pursuant to FISA, and that allegation itself is fatal to the SCA claim.

### C.  Plaintiff's Wiretap Act Claim Should Be Dismissed With Prejudice.

Plaintiff's claim under the Wiretap Act is untenable for similar reasons.  As with the SCA

claim, this Court reserved judgment on the Government's FISA-related defenses because

Plaintiff had not explicitly identified FISA as the source of the surveillance at issue in his claims.

Mem. Op. at 45-46.  And also as with the SCA claim, the Wiretap Act claim rests on the sole

allegation that the Government intercepted his communications pursuant to FISA.  And, again as

with the SCA claim, Plaintiff's claim under the Wiretap Act is a transparent and legally baseless

end-run around the clear limitations of liability for alleged violations of FISA in Section 2712(a).

By its own terms, the Wiretap Act does not apply to surveillance conducted under FISA.

The Wiretap Act prohibits the interception, use, or disclosure of wire, oral, or electronic

communications unless a statutory exception is met.  18 U.S.C. § 2511.  As this Court

recognized, one such exception is for electronic surveillance under FISA.  *See* Mem. Op. at 46

(citing 18 U.S.C. § 2511(2)(e)).  Accordingly, the mere fact that Plaintiff was party to

communications that were captured under FISA does not support an inference that the

Government violated the Wiretap Act.  To the contrary, it means that liability under the Wiretap

Act is out of the question.  *See* 18 U.S.C. § 2511(2)(e).

Plaintiff has again argued that the statutory exception for FISA surveillance does not

shield the Government from liability under the Wiretap Act where the surveillance authorized

under the terms of FISA is later found to be out of compliance with FISA.  But this argument is

untenable for all the reasons explained above.  This theory, if accepted, would sanction an end-

run around 18 U.S.C. § 2712(a) and 50 U.S.C. § 1810, which authorize certain claims for violations of FISA only insofar as they involve the willful use or disclosure of surveillance information or unlawful electronic surveillance. It would also run contrary to the plain reading of Section 2511(2)(e), which provides that "it shall not be unlawful for a [federal agent] … to conduct electronic surveillance, as defined in [FISA].")  Only under a convoluted reading of this provision can the Government and its agents face civil and criminal penalties for engaging in officially authorized FISA surveillance, even if and when it is later found to have entailed some legal defect.

In addition, and apart from the foregoing concerns, as the Government has already explained, any alleged violation of the Wiretap Act would be actionable only if Plaintiff could demonstrate that the purportedly unlawful activity was carried out willfully. But again, there are no facts to support any inference that the sole instance of acknowledged FISA surveillance underlying this claim was carried out in willful violation of the law.

### D.  Plaintiff's Fourth Amendment Claim Should Be Dismissed With Prejudice And In Its Entirety.

Plaintiff's Fourth Amendment claim rests on his assertion that FISA is unconstitutional to the extent it permits the Government to engage in surveillance without satisfying the traditional requirements of the Fourth Amendment.  Further, Plaintiff alleges that because the Government captured his communications pursuant to FISA, the continued retention of such communications and derivative material is unlawful.  Plaintiff seeks an order declaring unconstitutional any provisions of FISA that permit the Government to conduct electronic surveillance "without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime, or alternatively that the primary purpose is to gather foreign intelligence."  5AC at 41.  He also seeks an injunction requiring the Government to "retrieve,

purge, and destroy" any of Plaintiff's "illegally intercepted" communications or derivative materials, and restraining distribution of such information. *Id*. at 45.

Defendants' motion to dismiss the 4AC raised two primary arguments. First, the Government urged the Court to dismiss the declaratory relief claim for lack of standing, because Plaintiff could not identify an immediate and non-speculative injury in fact. *See* MTD 4AC at 51. Second, the Government urged the Court to dismiss both the declaratory and injunctive claims on the merits, because similar constitutional challenges to FISA have been repeatedly considered and rejected by the federal courts. *See Id*. at 53-54. In its Order, this Court dismissed the declaratory relief claim for lack of jurisdiction but allowed the injunctive claim to proceed, observing that Defendants' "contentions regarding the constitutionality of FISA and the PATRIOT Act are premature because Plaintiff has not alleged the surveillance took place pursuant to those statutes." Mem. Op. at 32. Plaintiff has since clarified that the surveillance he challenges was authorized under FISA, and it is now clear that his Fourth Amendment claim is premised on the assertion that <u>any</u> surveillance carried out under FISA is unlawful where the Government was not required to satisfy the traditional Fourth Amendment requirements. In light of these clarifications, the Court now has occasion to consider whether surveillance carried out pursuant to FISA satisfies the Fourth Amendment.[12]

### E. Plaintiff's Fourth Amendment Claim Fails As A Matter Of Law.

As the Government has explained at length, Plaintiff's challenge ignores a virtual consensus among federal courts that FISA (both before and after the 2001 amendments to the statute by the PATRIOT Act) is consistent with the Fourth Amendment. *See*, *e.g.*, *United States*

---

[12] Plaintiff's new allegation (*see* 5AC ¶ 141) that the Government makes a policy of surveilling the communications of Muslim Americans without probable cause is conclusory, devoid of factual support, and entirely unfounded. *See, e.g.*, *Twombly*, 550 U.S. at 555.

*v. Abu-Jihaad*, 630 F.3d 102, 120 (2d Cir. 2010) (collecting cases); *United States v. Damrah*, 412 F.3d 618, 625 (6th Cir. 2005) ("FISA has uniformly been held to be consistent with the Fourth Amendment"); *In re Sealed Case,* 310 F.3d 717, 742–47 (FISA Ct. Rev. 2002); *United States v. Pelton,* 835 F.2d 1067, 1075 (4th Cir. 1987); *United States v. Cavanagh,* 807 F.2d 787, 790–92 (9th Cir. 1987). In brief, although FISA allows surveillance on "less than the traditional" probable cause standard, the courts have consistently found the law to be compatible with the Fourth Amendment because its "numerous safeguards provide sufficient protection from the rights guaranteed" by the Constitution. *Pelton*, 835 F.2d at 1075; *see also Cavanagh,* 807 F.2d at 790–92 (holding that the "probable cause showing required by FISA is reasonable" under the Fourth Amendment).

These holdings were not disturbed by the 2001 amendments to FISA, which allow the Government to obtain a surveillance order even where its primary purpose in requesting the order is law enforcement (so long as foreign-intelligence gathering remains a significant purpose). Courts have consistently rejected a reading of FISA that mandates that the Government certify that foreign intelligence was the primary purpose of its surveillance. *See*, *e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 569 (5th Cir. 2011); *Abu-Jihaad*, 630 F.3d at 120; *Cavanagh,* 807 F.2d at 790–92 (9th Cir.1987). Such a requirement is not necessary to confine FISA surveillance to its constitutional limits. *In re Sealed Case*, 310 F.3d at 742 (stating that even if not a "warrant" contemplated by the Fourth Amendment, "to the extent a FISA order comes close … that certainly bears on its reasonableness under the Fourth Amendment.").[13]

---

[13] In his prayer for relief (but nowhere else in the amended complaint), Plaintiff refers to the FISA Amendments Act ("FAA") of 2008, Pub. L. No. 110-261, § 101(a)(2), 122 Stat. 2436, which, *inter alia*, "supplements pre-existing FISA authority by creating a new framework under which the government may seek the FISC's authorization of certain foreign intelligence surveillance targeting . . . non-U.S. persons located abroad," *Clapper v. Amnesty Int'l USA*, 133

**F.  There Is No Basis To Reconsider The Court's Conclusion That It Lacks Jurisdiction Over Plaintiff's Fourth Amendment Claim For Declaratory Relief.**

Plaintiff moves the Court to reconsider its conclusion that he lacks standing to seek declaratory relief under the Fourth Amendment.  Dkt. #86.  In light of the foregoing discussion, the Court need not dwell on Plaintiff's standing to pursue his claim for declaratory relief, or on the relationship between that claim and his claim for injunctive relief.  Regardless of the remedy sought, this claim must fail because Plaintiff cannot establish a substantive violation of the Fourth Amendment.

Nevertheless, Plaintiff's motion for reconsideration should be denied.  Plaintiff does not identify the specific subsection of Rule 60(b) that allows him to bring this motion.  And because none of the grounds for relief identified in Rule 60(b)(1) – (5) apply in this case, the only conceivable basis for relief is the catch-all provision in Rule 60(b)(6).  *See* Fed. R. Civ. P. 60(b)(6) ("[T]he court may relieve a party … from a final judgment, order, or proceeding for … any other reason that justifies relief.").  This provision should be applied only in "extraordinary circumstances."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993).  Plaintiff's motion, which does little more than reassert his original arguments, does not meet the exceptionally high bar for Rule 60(b)(6) relief.

---

S. Ct. 1138, 1144 (2013)  (describing Section 702 of the FAA (50 U.S.C. § 1881a)).  As the Government argued in its motion to dismiss the 4AC (addressing an identical reference to the FAA), *see* MTD 4AC at 53 n.26, to the extent this passing reference to the FAA constitutes an independent challenge to the surveillance program authorized under that Act, the challenge is without any foundation. Plaintiff has now had three opportunities to amend his surveillance claims and has yet to offer anything beyond a cursory reference to the FAA.  But apart from the absence "of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), there is no credible allegation that the FISA surveillance at issue here was undertaken under that program, and any allegation to that effect would be wholly speculative.  Moreover, the question whether Plaintiff's communications were captured under Section 702 of the FAA could not be answered without revealing classified information about the sources and methods used by the government in the course of its surveillance activities.

Even if Plaintiff could satisfy the Rule 60(b) standards, his argument is wrong on the merits. Plaintiff reiterates his claim that the alleged continued retention of his communications constitutes an ongoing injury sufficient to support his standing to seek prospective declaratory relief. But as this Court recognized, "a plaintiff must demonstrate standing separately for each form of relief sought." Mem. Op. at 30. While Plaintiff's allegation regarding the retention of his communications may suffice to support standing to seek the return of such records, it does not support standing to challenge the constitutionality of a statute that may never apply to Plaintiff in the future. That was the holding in *Mayfield v. United States*, where the Ninth Circuit was faced with a nearly identical question and found that standing was absent. *See* 599 F.3d 964, 969 (9th Cir. 2010); *see also Clapper*, 133 S. Ct. at 1144 (plaintiff must establish a concrete and particularized injury that is actual or imminent, not speculative or hypothetical).

Plaintiff argues that his inclusion on the No Fly List makes it likely that he will be the target of FISA surveillance in the future. He offers no authority for this proposition, but even if the Court were to credit it, an increased likelihood of being targeted in the future does not amount to the "real and immediate threat" necessary to confer Article III standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Without specific information indicating that such surveillance is imminent, Plaintiff's insistence that the Government is likely to target him in the future is precisely the type of conjectural future injury the standing doctrine is meant to exclude. *Id*. at 102.

For these reasons, Plaintiff's Fourth Amendment claim should be dismissed.[14]

---

[14] Because dismissal of Plaintiff's Fourth Amendment claim would be fatal to Plaintiff's claim for relief under Rule 41(g), *see* Mem. Op. at 47, the Court should also dismiss the Rule 41(g) claim with prejudice.

### III. The Department Of State And The Director Of National Intelligence Should Be Dismissed As Defendants.

As Defendants have demonstrated previously, and as this Court has recognized in another case, the Department of State does not make No Fly List determinations. *Tarhuni*, 8 F. Supp. 3d 1253, 1270 (D. Or. 2014). And Plaintiff does not allege in the Fifth Amended Complaint that the Department does so. Accordingly, the Department should be dismissed as a Defendant with respect to Claims 1 and 3. Moreover, Plaintiff raises no allegations that, apart from the provision of consular services, the Department participated meaningfully in any of the alleged surveillance of Plaintiff that informs Claims 12 through 16. To the extent the Court's prior order concludes otherwise, *see* Mem. Op. at 15 n.4, Defendants respectfully suggest that any inferences about alleged Department of State participation could properly apply only to Plaintiff's claims concerning the overseas events that inform his individual-capacity claims, such as the interview in Sudan and the consular visit. These factual allegations do not plausibly allege any participation by the Department of State in any alleged surveillance (claims 12–16) or in the determination to maintain Mr. Fikre on the No Fly List (the latter determination is made by TSC in the first instance and finally by the Administrator of TSA pursuant to DHS TRIP). Because there are no plausible allegations of <u>any</u> involvement by the Department of State in the relevant alleged activities informing these claims, there certainly can be no plausible allegation demonstrating that the Department violated Plaintiff's alleged constitutional or statutory rights. Accordingly, the Department should be dismissed as a defendant.

Likewise, the Director of National Intelligence (DNI) should be dismissed as a defendant. At no time has Plaintiff alleged any concrete or particularized injury involving the DNI. Plaintiff's surveillance claims do not rest on any allegations concerning the DNI, nor do his No Fly List claims.

# CONCLUSION

For the foregoing reasons, Plaintiff's Fifth Amended Complaint should be dismissed with prejudice.[15]


Dated: January 21, 2016                    Respectfully submitted,

                                           BENJAMIN C. MIZER
                                           Principal Deputy Assistant Attorney General

                                           ANTHONY J. COPPOLINO
                                           Deputy Branch Director

                                           _s/ Brigham J. Bowen_____
                                           BRIGHAM J. BOWEN
                                           SAMUEL M. SINGER
                                           Civil Division, Federal Programs Branch
                                           U.S. Department of Justice
                                           P.O. Box 883
                                           Washington, D.C. 20044
                                           Tel.: (202) 514-6289
                                           Fax: (202) 616-8470
                                           E-mail:     Brigham.Bowen@usdoj.gov
                                                       Samuel.M.Singer@usdoj.gov


                                           *Attorneys for Defendants Federal Bureau
                                           of Investigation, Eric Holder, State
                                           Department, John Kerry, James B.
                                           Comey, United States, James
                                           Clapper, Michael S. Rogers, National
                                           Security Agency, and Christopher M.
                                           Piehota*

---

[15] Defendants do not discuss Claim 4 (First Amendment – Freedom of Association) in the body of this memorandum because this claim has already been dismissed with prejudice. *See* Mem. Op. at 27–28. To the extent Plaintiff attempts to re-raise this claim, this effort is improper. Moreover, Plaintiff's allegations do nothing to cure the deficiencies the Court already identified with respect to this claim. *Id.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was delivered to all counsel of record

via the Court's ECF notification system.

*s/ Brigham J. Bowen*
BRIGHAM J. BOWEN

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains not more than 35 pages, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

_s/ Brigham J. Bowen_
BRIGHAM J. BOWEN