IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

YONAS FIKRE,                                    3:13-cv-00899-BR

              Plaintiff,                        OPINION AND ORDER

v.

FEDERAL BUREAU OF
INVESTIGATION, et al.,

              Defendants.


**GADEIR I. ABBAS**
1155 F Street NW, Suite 1050
Washington, DC 20004
(720) 251-0425

**LENA F. MASRI**
**WILLIAM J. BURGESS**
Council on American-Islamic Relations
Legal Defense Fund
453 New Jersey Avenue SE
Washington, DC 20003
(202) 742-6420

**BRANDON B. MAYFIELD**
3950 S.W. 185th Avenue
Beaverton, OR 97007
(503) 941-5101

        Attorneys for Plaintiff

**JOSEPH H. HUNT**
Assistant Attorney General
**ANTHONY J. COPPOLINO**
Deputy Branch Director
**BRIGHAM J. BOWEN**
**DENA M. ROTH**
**SAMUEL M. SINGER**
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
(202) 514-6289

        Attorneys for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff Yonas Fikre's Motion (#125) to Amend his Complaint in which Plaintiff seeks leave to file a Sixth Amended Complaint. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.

## BACKGROUND

Plaintiff initiated this action on May 30, 2013. In his original Complaint (#1) Plaintiff brought six claims against various Defendants arising from his placement on the No-Fly List and alleged detention and torture while he was overseas.

In his original Complaint and First Amended Complaint (#10) Plaintiff brought four claims (Claims One, Two, Five, and Six) against various Defendants sued in their official capacities

(hereinafter referred to as the Official Capacity Defendants or
Defendants) and two claims against two Defendants in their
individual capacities (hereinafter referred to as the Individual
Capacity Defendants).[1]  In Claim One Plaintiff alleged his
placement on the No-Fly List while he was abroad prevented him
from returning to the United States and, in effect, stripped him
of his rights of citizenship protected by the Fourteenth
Amendment.  In Claim Two Plaintiff alleged the various
Defendants violated his substantive due-process rights under the
Fifth Amendment and his rights as a citizen under the Fourteenth
Amendment when the Defendants allegedly "enlisted foreign
intermediaries to torture [P]laintiff at their behest."  First
Am. Compl. ¶ 58.  In Claim Five Plaintiff alleged various
Defendants violated his substantive due-process right to return
to the United States by placing him on the No-Fly List.
Finally, in Claim Six Plaintiff alleged Defendants violated his

---

[1] On October 24, 2016, this Court dismissed Plaintiff's
claims (Claims Three and Four) brought pursuant to *Bivens v. Six
Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.
388 (1971), against the two Individual Capacity Defendants.  The
Court dismissed these claims pursuant to Federal Rule of Civil
Procedure 4(m) for failure of service.  *See* Order (#107) issued
Oct. 24, 2016.  Accordingly, only the Official Capacity
Defendants remain in this case.

procedural due-process rights when they placed him on the No-Fly
List without providing him with sufficient notice or opportunity
to challenge his placement on the List.

On May 29, 2014, this Court dismissed Plaintiff's Claim One
with prejudice pursuant to Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim. *Fikre v. Fed. Bur. of
Investigation*, 23 F. Supp. 3d 1268 (D. Or. 2014). The Court
also dismissed Plaintiff's Claims Two, Five, and Six without
prejudice and with leave to amend pursuant to Rule 12(b)(6).
*Id.*

On June 27, 2014, Plaintiff filed a Second Amended
Complaint (#37) in which he re-pleaded his substantive due-
process claim (Claim One) on the basis of his right to return to
the United States and his procedural due-process claim (Claim
Six) against the Official Capacity Defendants. Although
Plaintiff did not re-plead his torture claim against the
Official Capacity Defendants, Plaintiff did add several claims
against the Individual Capacity Defendants, including multiple
*Bivens* claims related to his alleged torture. Plaintiff also
added the following claims against the Official Capacity
Defendants: a substantive due-process claim on the basis of his
right to international travel (Claim Two), a substantive due-

process claim on the basis of vagueness and overbreadth (Claim Three), a claim for violation of his Fifth Amendment right to counsel (Claim Four), and a claim for violation of his Fifth Amendment right to freedom of association (Claim Five) on the basis that Defendants allegedly attempted to coerce Plaintiff into being an informant by offering to remove him from the No-Fly List if he did so.

The Official Capacity Defendants filed a Motion (#40) to Dismiss Plaintiff's Second Amended Complaint on August 8, 2014. Before briefing was completed on the Official Capacity Defendants' Motion, Plaintiff expressed an intention to file a Third Amended Complaint. After conferral the parties agreed Plaintiff should be permitted to file his Third Amended Complaint and that Defendants' Motion to Dismiss the Second Amended Complaint should be stricken as moot.

Accordingly, Plaintiff filed his Third Amended Complaint (#55) on November 13, 2014. In the Third Amended Complaint Plaintiff re-pleaded each of the claims that he brought in his Second Amended Complaint, but he added claims against at least some of the Official Capacity Defendants for violation of Plaintiff's Fourth Amendment rights on the basis of an unreasonable search and seizure of his telephone calls, emails,

and text messages (Claim Fifteen); violation of the Foreign
Intelligence Surveillance Act (FISA) (Claim Sixteen); violation
of the Stored Communications Act (Claim Seventeen); violations
of the Wiretap Act (Claim Eighteen); and a claim for return of
unlawfully searched-and-seized property pursuant to Federal Rule
of Criminal Procedure 41(g) (Claim Nineteen).

In Fall 2014 Defendants amended the Department of Homeland
Security Traveler Redress Inquiry Program (DHS TRIP) procedures
available to individuals who had been denied boarding on a
commercial airline, including those denied boarding because they
were on the No-Fly List. Defendants amended these procedures
after this Court concluded in *Latif v. Holder, et al.,* that the
DHS TRIP procedures in place at the time Plaintiff filed this
action violated the *Latif* Plaintiffs' procedural due-process
rights. *See* 28 F. Supp. 3d 1134 (D. Or. 2014).

Even though this action had not yet proceeded beyond the
Rule 12 stage, Defendants moved for an extension of time to
respond to Plaintiff's Third Amended Complaint in order to
permit Defendants to reassess Plaintiff's DHS TRIP inquiry
pursuant to the new procedures. On March 16, 2015, the parties
filed a Joint Status Report (#58) in which the Official Capacity
Defendants indicated Plaintiff remained on the No-Fly List after

reevaluation of his DHS TRIP inquiry and that Plaintiff had returned to the United States. Accordingly, the parties agreed Plaintiff should be entitled to amend his Complaint again to reflect these developments.

On April 1, 2015, Plaintiff filed a Fourth Amended Complaint (#60). In his Fourth Amended Complaint, however, Plaintiff failed to plead and to identify specifically in his procedural due-process claim the protected liberty and/or property interest(s) that he was allegedly denied. Because this was a pleading deficiency that had persisted since Plaintiff's original Complaint, the Court granted Plaintiff leave to file a Corrected Fourth Amended Complaint to address that issue. *See* Order (#61) issued Apr. 2, 2015. Accordingly, on April 6, 2015, Plaintiff filed a Corrected Fourth Amended Complaint (#62) in which Plaintiff updated the factual pleadings, identified the protected liberty interests that he was allegedly denied as a result of procedural due-process violations, and otherwise re-pleaded each of the claims that he raised in his Third Amended Complaint.

Defendants moved to dismiss Plaintiff's Fourth Amended Complaint on May 22, 2015. Defs.' Mot. (#69) to Dismiss. On November 4, 2015, the Court granted Defendants' Motion in part

and denied it in part. *See* Opin. and Order (#81).
Specifically, the Court denied Defendants' Motion as to
Plaintiff's substantive due-process claim as it related to the
right to international travel and his procedural due-process
claim because the Court determined Plaintiff adequately stated
those claims for relief. The Court also denied Defendants'
Motion as to Plaintiff's Wiretap Act claim as pleaded in
Plaintiff's Fourth Amended Complaint. The Court, however,
dismissed with prejudice the following claims: Plaintiff's
substantive due-process claim on the basis of Defendants' denial
of his right to return to the United States (Claim One);
Plaintiff's due-process vagueness and overbreadth claim (Claim
Three); Plaintiff's Fifth Amendment right-to-counsel claim
(Claim Four); Plaintiff's First Amendment freedom-of-association
claim (Claim Seven); Plaintiff's Fourth Amendment claim (Claim
Fifteen) as to declaratory relief only; and portions of
Plaintiff's FISA claim (Claim Sixteen). The Court dismissed
without prejudice and with leave to amend Plaintiff's FISA claim
only as to injunctive relief and his Stored Communications Act
claim (Claim Seventeen). The Court, however, stated: "In light
of the age of this case and Plaintiff's numerous previous
pleading attempts, the Court does not grant Plaintiff leave to

amend his Complaint to add new claims or to materially alter any other existing claims." Opin. and Order (#81) at 48. Finally, the Court also dismissed Plaintiff's Claim Nineteen without prejudice because the legal basis for Claim Nineteen, Federal Rule of Criminal Procedure 41(g), could not act as a stand-alone claim but could serve as a remedy in the event Plaintiff prevailed on his Fourth Amendment claim.

On November 29, 2015, Plaintiff filed a Fifth Amended Complaint (#87). In his Fifth Amended Complaint Plaintiff re-pleaded each of the claims that were not dismissed in the Court's Opinion and Order (#81). Plaintiff re-pleaded his Fourth Amendment claim (Claim Twelve), his FISA claim (Claim Thirteen), his Stored Communications Act claim (Claim Fourteen), and his Wiretap Act claim (Claim Fifteen). Plaintiff also re-pleaded his freedom-of-association claim (Claim Four) even though the Court had earlier dismissed it with prejudice. Finally, Plaintiff added a Claim Sixteen that he characterized as a "Motion for Return of Unlawfully Searched and Seized Property Pursuant to Federal Rule of Criminal Procedure 41(g)." Fifth Am. Compl., at 40.

On January 21, 2016, Defendants again filed a Motion (#90) to Dismiss Plaintiff's Fifth Amended Complaint. During the

briefing on that Motion, however, Defendants filed a Notice
(#98) that indicated Plaintiff had been removed from the No-Fly
List.  As a result, the Court directed the parties to confer and
to submit supplemental memoranda regarding the effect that
Plaintiff's removal from the No-Fly List had on Plaintiff's
then-existing claims and Defendants' Motion to Dismiss them.

After the parties submitted the supplemental briefing, the
Court issued an Opinion and Order (#105) on September 28, 2016
(*Fikre v. Federal Bureau of Investigation*, No. 3:13-cv-00899-BR,
2016 WL 5539591 (D. Or. Sept. 28, 2016)).  In that Opinion and
Order the Court dismissed Plaintiff's substantive and procedural
due-process claims as moot in light of Plaintiff's removal from
the No-Fly List.  As it did in its November 4, 2015, Opinion and
Order, the Court also dismissed with prejudice Plaintiff's First
Amendment freedom-of-association claim (Claim Four) for failure
to state a claim.  Moreover, the Court dismissed each of
Plaintiff's various surveillance claims under the Fourth
Amendment (Claim Twelve), FISA (Claim Thirteen), the Stored
Communications Act (Claim Fourteen), the Wiretap Act (Claim
Fifteen), and Federal Rule of Criminal Procedure 41(g) (Claim
Sixteen) for failure to state a claim.  In light of Plaintiff's
previous multiple opportunities to amend, the Court declined to

provide Plaintiff with a further opportunity to amend those
claims.

Although Plaintiff appealed the Court's dismissal of his
substantive and procedural due-process claims on mootness
grounds and the dismissal of his Fourth Amendment claim for
failure to state a claim, he did not appeal the dismissal of his
other surveillance claims or the dismissal of his freedom-of-
association claim.  On September 20, 2018, the Ninth Circuit
Court of Appeals reversed the dismissal of his procedural and
substantive due-process claims on mootness grounds.  The Ninth
Circuit found the government's actions in removing Plaintiff
from the No-Fly List were insufficient to overcome the
voluntary-cessation exception to the mootness doctrine and that
some relief might remain available to redress Plaintiff's
alleged injuries.  *Fikre v. Fed. Bur. of Investigation*, 904 F.3d
1033 (9th Cir. 2018).  In a separately filed unpublished opinion
that same day, the Ninth Circuit affirmed this Court's dismissal
of Plaintiff's Fourth Amendment claim.  *Fikre v. Fed. Bur. of
Investigation*, 738 F. App'x 545 (9th Cir. 2018).

On remand Plaintiff now seeks leave to file a Sixth Amended
Complaint to accomplish the following:  (1) to add the Secretary
of Homeland Security, the Administrator of the Transportation

Security Administration (TSA), and the Commissioner of Customs and Border Protection (CBP) (collectively the DHS Defendants) as Defendants related to his procedural and substantive due-process claims; (2) to remove the already-resolved claims from the operative Complaint; (3) to plead additional facts relevant to the procedural and substantive due-process claims that have recently become publicly known; (4) to add a claim under the Administrative Procedure Act on largely the same basis as Plaintiff's substantive and procedural due-process claims; and (5) to add a claim under the Religious Freedom Restoration Act (RFRA) on a basis similar to Plaintiff's previous First Amendment freedom-of-association claims.

## STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  This is "a policy 'to be applied with extreme liberality.'"  *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1173 (9th Cir. 2017).  "District courts generally consider four factors in determining whether to deny a motion to amend:  'bad faith, undue delay, prejudice to

the opposing party, and the futility of amendment.'" *In re*
*Korean Air Lines Co., Ltd.*, 642 F.3d 685, 701 (9th Cir.
2011)(quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.
1994)).

Whether an amendment will cause undue prejudice to the
defendant is the key factor the court must consider when
determining whether to grant a motion for leave to file an
amended complaint. *Eminence Capital, LLC v. Aspeon, Inc.*, 316
F.3d 1048, 1052 (9th Cir. 2003). The party who opposes
amendment bears the burden to show prejudice. *Adam v. Haw.*, 235
F.3d 1160, 1164 (9th Cir. 2000)(overruled on other grounds)
(citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th
Cir. 1987)). The court's discretion to deny leave to amend,
however, is "'particularly broad where [the] plaintiff has
previously amended the complaint.'" *Cafasso, United States ex*
*rel v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th
Cir. 2011)(quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d
1149, 1160 (9th Cir. 1989)).

## DISCUSSION

As noted, Plaintiff seeks to amend his Complaint to add the
DHS Defendants, to remove already-resolved claims, to include

additional factual allegations relevant to his due-process claims, and to add claims under the APA and RFRA. Plaintiff attaches his Proposed Sixth Amended Complaint to his Motion. Pl.'s Mot. (#125), Attach. 1. Defendants oppose Plaintiff's Motion for Leave to Amend insofar as Plaintiff seeks to add the DHS Defendants and to bring RFRA and APA claims.

The Court notes Plaintiff's Motion is unopposed insofar as Plaintiff seeks to remove resolved claims and to allege additional facts related to Plaintiff's due-process claims. The Court finds amending the Complaint to do so would be helpful to narrow the issues and to facilitate litigation of Plaintiff's remaining claims. Accordingly, the Court grants Plaintiff's Motion in those respects.

## I.   **Addition of DHS Defendants**

Defendants oppose Plaintiff's addition of the DHS Defendants on the basis that Plaintiff's attempt to do so is untimely, would unfairly prejudice those Defendants, and would not materially advance the litigation of Plaintiff's claims. In particular, Defendants contend the allegations in Plaintiff's Proposed Sixth Amended Complaint do not provide any basis to add the DHS Defendants as parties to this litigation. Defendants also contend Plaintiff does not provide any basis to add the TSA

Administrator and CBP Commissioner because Plaintiff does not
allege he was subjected to additional screening at an airport or
at the border.

Plaintiff, on the other hand, contends the DHS Defendants
will not be prejudiced by their addition to this case even
though it has been almost six years since this action was
initiated because discovery has not yet begun.  Moreover,
Plaintiff contends the DHS Defendants are relevant to
Plaintiff's due-process claims because Plaintiff alleges in his
Proposed Sixth Amended Complaint that "DHS and/or its agency
subcomponents including TSA and CBP have both decision-making
authority and veto powers over watchlisting policies affecting
the No Fly List and the [Terrorist Screening Database (TSDB)]."
Proposed Sixth Am. Compl. ¶ 9.

Although the Court finds Plaintiff's addition of the DHS
Defendants to this case is untimely, Defendants have failed to
demonstrate any meaningful prejudice to the DHS Defendants that
would arise from Plaintiff's belated attempt to bring them into
this long-pending case.  As Plaintiff points out, discovery in
this matter has not yet begun and the DHS Defendants' interests
to date have been well-represented in this matter through the
participation of multiple government agencies.

Moreover, the participation of the DHS Secretary and the
TSA Administrator may be necessary to provide Plaintiff the
relief that he would be entitled to if he prevails on the
merits. As Plaintiff alleges, DHS is the agency that contains
several of the sub-agencies that are involved in the maintenance
of the No-Fly List and the TSDB in addition to being responsible
for enforcement of any restrictions that follow from placement
on watchlists. *See* Proposed Sixth Am. Compl. ¶¶ 9-11. In
addition, DHS is involved in the DHS TRIP procedures that
Plaintiff challenges in his procedural due-process claim. *See*
*id.* ¶¶ 102-05. Similarly, after an individual who has been
denied boarding as a result of placement on the No-Fly List
submits a DHS TRIP inquiry, the TSA Administrator makes the
final decision as to whether that individual should be
maintained on the No-Fly List. *Id.* ¶ 43. Thus, Plaintiff's
claims are sufficiently related to each of these actions, and,
therefore, inclusion of the DHS Secretary and the TSA
Administrator satisfies the joinder requirements of Federal Rule
of Civil Procedure 20(a)(2). In light of the lack of any
demonstrated prejudice to these parties, the Court concludes in
the exercise of its discretion that it is reasonable to allow
Plaintiff to amend his Complaint to include the TSA

Administrator and the DHS Secretary as Defendants in their
official capacities.

As Defendants point out, however, Plaintiff does not allege
that CBP has taken any action related to Plaintiff's placement
in the TSDB or on the No-Fly List nor that Plaintiff has ever
been subjected to additional screening at the border or had any
items seized by CBP.  In his Proposed Sixth Amended Complaint
Plaintiff only mentions CBP as follows:

> Defendant McAleenan is Commissioner of the United
> States Customs and Border Protection ("CBP") of the
> United States Department of Homeland Security ("DHS").
> CBP has both decision-making authority and veto power
> over watchlisting policies affecting the No Fly List
> and TSDB.  CBP acts as a front-line agency that
> utilizes the TSDB and its No Fly List component to
> screen individuals against the TSDB, including
> Plaintiff.  These consequences include impeding
> domestic and international travel, including through
> the outright denial of boarding any flights.  The CBP
> Defendant McAleenan is being sued in his official
> capacity, only.

Proposed Sixth Am. Compl. ¶ 11.  Although this allegation may be
sufficient to establish that CBP is involved with the No-Fly
List and TSDB at some level, Plaintiff does not allege CBP was
involved in Plaintiff's placement on the No-Fly List nor in the
TSDB, that CBP took any part in processing Plaintiff's DHS TRIP
inquiry, that CBP has any authority over whether Plaintiff
remains in the TSDB, or that CBP will serve any role in

17 - OPINION AND ORDER

determining whether Plaintiff will be placed on the No-Fly List again.  Under the allegations in Plaintiff's Proposed Sixth Amended Complaint, there is not any apparent remedy that Plaintiff could specifically obtain from CBP as opposed to DHS. Accordingly, there currently is not any apparent purpose for involving the CBP Administrator in this litigation.  The Court, therefore, concludes it would be unfair to permit Plaintiff to amend his Complaint to include the CBP Commissioner as a Defendant at the six-year mark of his case.

Accordingly, on this record the Court grants Plaintiff's Motion to Amend as it relates to adding the DHS Secretary and the TSA Administrator as defendants in this action and denies Plaintiff's Motion insofar as Plaintiff seeks to add the CBP Commissioner as a defendant.

## II.  **Addition of Claims**

As noted, Plaintiff also seeks to add claims under the APA and RFRA in his Proposed Sixth Amended Complaint.

### A.  **Plaintiff's Proposed APA Claim**

Plaintiff indicates his proposed APA claim "turns on similar operative facts and legal issues as [his] Procedural Due Process claims, and therefore do not substantially alter the nature of the litigation."  Pl.'s Mot. (#125) at 9.  Plaintiff,

therefore, contends the addition of the APA claim will not prejudice Defendants and the remainder of the factors relevant to Plaintiff's Motion to Amend do not provide a basis to deny Plaintiff the opportunity to add his APA claim.

Defendants, on the other hand, contend the Court should not permit Plaintiff to add his APA claim because Plaintiff unduly delayed the addition of that claim, and, therefore, Defendants would be prejudiced by its addition. In any event, Defendants point out that Plaintiff's APA claim is redundant of his procedural due-process claim.

As noted, the Court primarily considers four factors in determining whether Plaintiff should be permitted to amend his complaint: "'bad faith, undue delay, prejudice to the opposing party, and the futility of amendment.'" *In re Korean Air Lines*, 642 F.3d at 701 (quoting *Kaplan*, 49 F.3d at 1370).

The bad-faith and undue-delay factors go hand-in-hand as related to Plaintiff's APA claim. Plaintiff does not contend that he could not have brought his APA claim in any of his numerous earlier complaints nor does Plaintiff present any reason for failing to bring his APA claim earlier. Although there is not any basis to conclude that Plaintiff deliberately attempted to prolong these proceedings by filing numerous

amendments presenting a moving target, it is indisputable that Plaintiff's repeated attempts to recharacterize previously-adjudicated claims at the pleading stage has significantly delayed this litigation and is a primary reason why this case has not yet proceeded beyond the pleading stage almost six years after it was initiated. Accordingly, although the Court does not find Plaintiff has intentionally engaged in dilatory conduct, the Court does find these factors, nonetheless, weigh against permitting Plaintiff to add his APA claim.

The Court also finds permitting Plaintiff to add his APA claim would prejudice Defendants. In complex cases like this, litigation under Rule 12(b)(6) serves the important purpose of narrowing and focusing the issues to guide the parties and the Court in the subsequent stages of the proceedings. Allowing Plaintiff to amend his Complaint repeatedly to raise new and recharacterized claims would (if it has not already) turn this important stage of the proceedings into a pleading version of "Whac-a-Mole" and would frustrate the ability of the Court and the parties to proceed to consider the merits of the important issues raised in this case. Especially because Plaintiff has already been given numerous opportunities to amend, it would contradict the overriding direction in Rule 1 to "construe[],

administer[], and employ[]" the Rules of Civil Procedure "to
secure the just, speedy, and inexpensive determination of every
action and proceeding" if the Court interpreted the policy of
"freely giv[ing]" a party leave to amend its complaint under
Rule 15(a)(2) by allowing this type of repeated
recharacterization of claims.  Accordingly, on this record the
Court concludes this factor weighs against permitting Plaintiff
to add his APA claim.

Finally, the Court also concludes Plaintiff's addition of
an APA claim to his Complaint would be futile.  As Plaintiff
candidly admits, the APA claim is largely duplicative of the
procedural due-process claim that this Court has already found
passes Rule 12(b)(6) muster.  Plaintiff does not identify any
potential additional remedy or other meaningful advantage that
would be available to him if he were permitted to proceed with
his APA claim.  Accordingly, the Court concludes the futility
factor also weighs against permitting Plaintiff to proceed with
his APA claim.

On this record, therefore, the Court denies Plaintiff's
Motion to Amend insofar as Plaintiff seeks to add an APA claim
in his Sixth Amended Complaint.

**B.    Plaintiff's Proposed RFRA Claim**

Plaintiff also seeks to add a RFRA claim on the basis that Defendants' alleged attempts to coerce Plaintiff into becoming an informant by placing Defendant on the No-Fly List violated his religious freedoms protected by RFRA.  Plaintiff contends there is "little difference" between his RFRA claim and his previously-dismissed freedom-of-association claims.  Pl.'s Mot. (#125) at 6.  Defendants, on the other hand, contend Plaintiff should not be permitted to add his RFRA claim because it constitutes a mere repackaging of his previously-dismissed claims and it is futile because it does not state a viable claim.

As the Court earlier noted with respect to Plaintiff's APA claim, Plaintiff has unduly delayed asserting his RFRA claim. Plaintiff contends he now brings his RFRA claim because two recent cases (*Tanvir v. Tanzin*, 894 F.3d 449 (2d. Cir. 2018), and *Fazaga v. Federal Bureau of Investigation*, 916 F.3d 1202 (9th Cir. 2019)) indicate such a claim is viable in these circumstances.

As relevant here, the plaintiffs in *Tanvir* brought a RFRA claim for damages against various federal officials on the basis that those officials improperly placed the plaintiffs on the No-

Fly List in retaliation for their refusal to serve as
informants. 894 F.3d at 452. Rather than consider the merits
of the plaintiffs' claims, the Second Circuit addressed a narrow
issue: whether "RFRA permits a plaintiff to recover money
damages against federal officers sued in their individual
capacities for violations of RFRA's substantive protections."
*Id.* at 453. After engaging in a detailed statutory-
interpretation analysis, the Second Circuit concluded RFRA
permitted such an action for damages against officers in their
individual capacities. *Id.* at 464. Although Plaintiff contends
the Second Circuit's opinion impliedly suggests the *Tanvir*
plaintiffs' claim was viable on the merits, the Second Circuit
expressly declined to address that issue when it "decline[d] to
address in the first instance whether the Defendants are
entitled to qualified immunity." *Id.* at 472. The Court,
therefore, concludes *Tanvir* does not provide any support for
Plaintiff's assertion that the government's placement or
maintenance of an individual on the No-Fly List in retaliation
for refusal to serve as an informant violates RFRA. As a
result, the Court does not find *Tanvir* establishes any new basis
for Plaintiff to believe his RFRA claim is more viable now than
it may have been before the Second Circuit issued the *Tanvir*

opinion.

In *Fazaga* the plaintiffs were members and/or imams at two
mosques that the FBI surveilled using electronic surveillance
and a confidential informant who attended the mosques. 916 F.3d
at 1212-14. As relevant to this case, the plaintiffs brought
RFRA claims against both individual-capacity and official-
capacity defendants alleging the surveillance activities
substantially burdened the exercise of their religion. The
district court dismissed those claims under the state-secrets
privilege. *Id.* at 1215. The Ninth Circuit reversed the
district court's dismissal of the plaintiffs' claims on the
basis of the state-secrets privilege, but the court continued to
consider other bases for dismissal that were raised in the
defendants' motion to dismiss before the district court. *Id.* at
1225-39.

The Ninth Circuit did not address any basis for dismissal
of the RFRA claim as related to the official-capacity defendants
because they "offer[ed] no argument for dismissal of the RFRA
claim other than the state secrets privilege." *Id.* at 1246.
The Ninth Circuit, in fact, expressly stated it "d[id] not
address any other defenses the [official-capacity defendants]
may raise before the district court in response to Plaintiffs'

RFRA claim." *Id.* at 1248 n.45.

The Ninth Circuit, however, considered whether the RFRA claim against the individual-capacity defendants should be dismissed on qualified-immunity grounds.[2] The Ninth Circuit noted the plaintiffs were required to present allegations to allow the trier of fact to determine two elements: (1) whether the allegedly burdened activities qualified as an "exercise of religion," and (2) whether the government action "substantially burden[ed]" that exercise of religion. *Id.* at 1246. Although the Ninth Circuit noted the plaintiffs alleged a variety of ways in which their exercise of religion was burdened by the government's actions, the court dismissed the plaintiffs' RFRA claim as to the individual-capacity defendants on qualified-immunity grounds because it was not "clearly established" at the time of the conduct that "surveillance conducted on the basis of religion would meet the RFRA standards for constituting a substantial religious burden on individual congregants." *Id.* at

---

[2] The Ninth Circuit did not reach whether RFRA permits lawsuits for damages against individual-capacity defendants because it dismissed the RFRA claim on qualified-immunity grounds, but, nonetheless, it noted two other circuits (including the Second Circuit in *Tanvir*) had concluded such claims were permissible.

1247.

Contrary to Plaintiffs' insistence that *Fazaga* indicated
Plaintiff's RFRA claim is now viable and, therefore, that he did
not unduly delayed in bringing this claim, the Ninth Circuit's
treatment of the *Fazaga* plaintiffs' claims does not speak one
way or the other to the viability of Plaintiff's claim for two
reasons.  First, the court in *Fazaga* did not indicate a RFRA
claim on the basis raised in that case would be viable even
outside of the context of qualified immunity because it declined
to consider additional potential defenses pertaining to the RFRA
claim against the official-capacity defendants.  Second, the
claims in Fazaga and the case before this Court are factually
distinguishable; *i.e.*, direct surveillance of individuals'
activities and communications in a place of worship bears a much
closer nexus to the burdening of religious practices than the
actions alleged in this case.  As noted, the crux of Plaintiff's
RFRA claim is that Defendants attempted to use Plaintiff's
presence on the No-Fly List as leverage to coerce Plaintiff into
becoming an informant regarding activities in Plaintiff's
mosque.  Plaintiff alleges these actions "forced Plaintiff into
an impermissible choice between obeying his sincerely held
religious beliefs regarding honesty, integrity, trust and

community and remaining on the No Fly List or disobeying his

religious beliefs and succumbing to Government coercion in order

to violate his religious beliefs." Proposed Sixth Am. Compl.

¶ 66. Although Plaintiff alleges Defendants' actions forced him

to choose between remaining on the No-Fly List or compromising

sincerely held religious values, Plaintiff does not allege

Defendants' actions burdened the kinds of specific religious

practices that the surveillance in *Fazaga* prevented.[3]

Like the court in *Tanvir*, therefore, this Court concludes

*Fazaga* does not provide any basis for Plaintiff to believe his

RFRA claim is any more viable today than it may have been before

---

[3] The *Fazaga* court summarized the allegedly burdened
practices as follows:

> Malik trimmed his beard, stopped regularly wearing a skull
> cap, decreased his attendance at the mosque, and became
> less welcoming to newcomers than he believes his religion
> requires. AbdelRahim "significantly decreased his
> attendance to mosque," limited his donations to mosque
> institutions, and became less welcoming to newcomers than
> he believes his religion requires. Fazaga, who provided
> counseling at the mosque as an imam and an intern
> therapist, stopped counseling congregants at the mosque
> because he feared the conversations would be monitored and
> thus not confidential.

916 F.3d at 1247. Although here Plaintiff alleges Defendants'
actions "chilled his religious exercise" (Proposed Sixth Am.
Compl. ¶ 158), that bare allegation is far too conclusory to
pass muster under Rule 12(b)(6).

the Ninth Circuit decided *Fazaga*. Accordingly, as with Plaintiff's APA claim, the Court finds Plaintiff has not provided any reason why he could not have raised his RFRA claim earlier, and, therefore, Plaintiff unduly delayed bringing his RFRA claim.

The Court also finds permitting Plaintiff to add his RFRA claim would prejudice Defendants. Plaintiff acknowledges there is "little difference" between his proposed RFRA claim and his freedom-of-association claim. As noted, the Court dismissed with prejudice Plaintiff's freedom-of-association claim on November 4, 2015 (Opin. and Order (#81)), and again on September 28, 2016 (Opin. and Order (#105)). Plaintiff did not appeal the Court's dismissal with prejudice of his freedom-of-association claim. To permit Plaintiff to bring a new claim that is derivative of his freedom-of-association claim more than two years after the Court dismissed the associative-freedom claim would rob Defendants of the finality that they earned regarding those issues.

Finally, Defendants contend Plaintiff's RFRA claim is futile because Plaintiff fails to make a plausible allegation that Defendants substantially burdened Plaintiff's exercise of his religion when Defendants allegedly placed and/or maintained

Plaintiff on the No-Fly List in order to coerce him into being
an informant at his mosque.  In particular, Defendants contend
"a 'substantial burden' is imposed only when individuals are
forced to choose between following the tenets of their religion
and receiving a governmental benefit . . . or coerced to act
contrary to their religious beliefs by the threat of civil or
criminal sanctions." *Navajo Nation v. United States Forest
Serv.*, 535 F.3d 1058, 1069-70 (9th Cir. 2008).  Defendants point
out that "[a]n effect on an individual's 'subjective, emotional
religious experience' does not constitute a substantial burden,
. . . nor does 'a government action that decreases the
spirituality, the fervor, or the satisfaction with which a
believer practices his religion." *Fazaga*, 916 F.3d at 1447
(quoting *Navajo Nation*, 535 F.3d at 1063, 1070).

The Court shares some of Defendants' concerns regarding the
pleading adequacy of Plaintiff's RFRA claim and, in particular,
as to whether Plaintiff has pleaded an adequate nexus between
his placement and maintenance on the No-Fly List and the alleged
request that he serve as an informant at his mosque.
Nonetheless, the Court concludes it need not determine whether
Plaintiff's RFRA claim is futile because the Court concludes it
would be unfair to permit Plaintiff to add that claim for the

reasons stated above.  Because Plaintiff has had numerous opportunities to amend prior Complaints and the parties have engaged in multiple rounds of Rule 12(b)(6) litigation, it would be inappropriate for the Court to permit Plaintiff to start that process anew almost six years after Plaintiff filed this action.

Accordingly, the Court denies Plaintiff's Motion to Amend insofar as Plaintiff seeks to add a RFRA claim in his Sixth Amended Complaint.

## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion (#125) to Amend.  Plaintiff may amend his Complaint to remove previously resolved claims, to plead additional factual allegations related to Plaintiff's due-process claims, and to add the DHS Secretary and the TSA Administrator as defendants.  Plaintiff may not, however, add the CBP Commissioner as a defendant or add any new claims.

The Court directs Plaintiff to file his Sixth Amended Complaint consistent with this Opinion and Order **no later than May 20, 2019.**  As the Court indicated in its Scheduling Order (#124) issued February 26, 2019, Defendants' anticipated motion

to dismiss Plaintiff's Sixth Amended Complaint is due **no later than June 19, 2019.**

IT IS SO ORDERED.

DATED this 8ᵗʰ day of May, 2019.

_____
ANNA J. BROWN
United States Senior District Judge