IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**YONAS FIKRE**,

        Plaintiff,

        v.

**CHRISTOPHER WRAY**, Director of the
Federal Bureau of Investigation (sued in his
official capacity), et al.,

        Defendants.

Case No. 3:13-cv-00899-MO

OPINION AND ORDER

**MOSMAN, J.**,

      This case comes before me on Defendants' Motion to Dismiss [ECF 146] Plaintiff Yonas

Fikre's Seventh Amended Complaint [ECF 145]. Defendants move to dismiss Mr. Fikre's latest

complaint for lack of subject matter jurisdiction (due to lack of standing) and for failure to state a

claim. While I find that Mr. Fikre has standing, I hold that his complaint fails to state a claim.

Therefore, for the reasons explained below, I GRANT Defendants' motion and I DISMISS this

case with prejudice.

# BACKGROUND

Mr. Fikre began this action when he filed his original complaint in this court on May 30, 2013. [ECF 1]. Then, as now, Mr. Fikre's grievance centers around alleged injuries sustained as a result of the Government's decision to list him in the Terrorism Screening Database ("TSDB") and to place him on the No Fly List. The TSDB is the federal government's integrated list of known and suspected terrorists. Watchlisting Overview [ECF 130-1] at 1-2. The No Fly List is a subset of the TSDB that bars those listed on it from boarding flights on U.S. carriers or any flight that enters U.S. airspace. *Id.* at 2. Persons listed in the TSDB but not included on the No Fly List are generally permitted to travel by air, but may be subject to additional security screening. *Id.*

Over the last seven years and in as many amended complaints, much has transpired in this case. The factual circumstances have changed, claims have fallen away, and theories have been rejected. The case has made its way from the District Court to the Ninth Circuit and back again. Here, now, Mr. Fikre has been given leave to file a Seventh Amended Complaint to advance one final remaining theory: that he has suffered a reputational injury in violation of his Fifth Amendment right to due process. As will be described in more detail below, Mr. Fikre's Seventh Amended Complaint contains new allegations which purport to accomplish this goal.[1] But the complaint (and Mr. Fikre's argument in response to Defendants' present motion) also attempts to repackage old allegations—which formed the basis of claims and theories that have already been rejected by this court—into the remaining reputational injury theory. For the cold reader, it can be hard to distinguish ground that has already been decisively covered from the new, limited issues that are the principal concern here. With that challenge in mind, I provide an

---

[1]    While much of the previous litigation in this case has centered around Mr. Fikre's status on the No Fly List, these new allegations post-date Mr. Fikre's removal from the No Fly List and focus on his inclusion in the TSDB more generally, which allegedly continues.

abbreviated procedural history of this case, beginning with the circumstances of Mr. Fikre's

successful appeal to the Ninth Circuit and the procedural and factual developments that have

occurred since.[2]

### I.    Procedural History

On November 29, 2015, Mr. Fikre filed his Fifth Amended Complaint [ECF 87] and

Defendants moved to dismiss [ECF 90]. In that complaint, Mr. Fikre asserted sixteen different

claims for relief, on constitutional, statutory, and common law grounds. Fifth Am. Compl. [87] at

23-40. Among those many claims, Mr. Fikre alleged that the Government's decision to place and

retain him on the No Fly List violated his Fifth Amendment rights to substantive due process

(claim one) and procedural due process (claim three) by infringing his liberty interest in

international travel. *Id.* at 23-24. Additionally, as part of his procedural due process claim only,

Mr. Fikre alleged that his placement on the No Fly List also infringed his protected liberty

interest "in his reputation and in freedom from government-assigned stigmas." *Id.* at 25.

On May 9, 2016, before the District Court had ruled on Defendants' motion to dismiss,

Defendants filed a notice with the court representing that Mr. Fikre had been removed from the

No Fly List. Notice [ECF 98] at 1. As a result, the court granted Defendants' motion and

---

[2]      For a comprehensive procedural history of the events that predate the filing of the Fifth
Amended Complaint and the Ninth Circuit's decision, see Judge Anna J. Brown's Opinion and
Order ("O&O") [ECF 128] at 2-12. Judge Brown was the judge on this case until July 15, 2019.
Notice [ECF 134].

dismissed Mr. Fikre's due process claims as moot. Op. and Order ("O&O") [ECF 105] at 19-27.[3]

Mr. Fikre appealed the dismissal of his due process claims. *See* O&O [128] at 11.[4]

On September 20, 2018, the Ninth Circuit issued an opinion in which it reversed the

District Court's holding that Mr. Fikre's substantive and procedural due process claims were

moot. *Fikre v. FBI*, 904 F.3d 1033, 1041 (9th Cir. 2018). Citing the voluntary cessation doctrine,

the Ninth Circuit held that the Government's disclosure that Mr. Fikre was no longer on the No

Fly List was insufficient, on its own, to ensure that the Government's allegedly illegal conduct in

placing and retaining Mr. Fikre on the No Fly List would not recur. *Id.* at 1037-41.

Relevant for our purposes here, at the conclusion of its analysis the Ninth Circuit stated

the following:

> Finally, in response to the government's assertion that no relief is available for
> Fikre's claims, we note that Fikre's removal from the No Fly List does not
> "completely and irrevocably eradicate[ ] the effects of the alleged violation[s]" . . . .
> **Absent an acknowledgment by the government that its investigation revealed
> Fikre did not belong on the list, *and* that he will not be returned to the list
> based on the currently available evidence**, Fikre remains, in his own words,
> "stigmatiz[ed] . . . as a known or suspected terrorist and as an individual who
> represents a threat of engaging in or conducting a violent act of terrorism and who
> is operationally capable of doing so." Because acquaintances, business associates,
> and perhaps even family members are likely to persist in shunning or avoiding him

---

[3]      Judge Brown also dismissed with prejudice claim four (freedom of association claim alleging that Defendants attempted to coerce Mr. Fikre into becoming a government informant by offering to remove him from the No Fly List), claim twelve (Fourth Amendment claim alleging the Government impermissibly searched and seized Mr. Fikre's private communications), claim thirteen (alleged violations of FISA), claim fourteen (alleged violations of the Stored Communications Act), claim fifteen (alleged violations of the Wiretap Act), and claim sixteen (alleged violations of Federal Rule of Criminal Procedure 41(g)). O&O [105] at 27-29, 35, 42, 45-46. Claim two and claims five through eleven related exclusively to a subset of defendants who were sued in their individual capacities. *Id.* at 4 n.1. After Mr. Fikre filed a notice of non-objection to the dismissal of these defendants [ECF 106] the court dismissed them without prejudice. Order [ECF 107].

[4]      Mr. Fikre also appealed the dismissal of his Fourth Amendment claim (claim twelve), but the Ninth Circuit affirmed the dismissal of that claim. *Fikre v. FBI*, 904 F.3d 1033, 1036 n.2 (9th Cir. 2018).

despite his renewed ability to travel, it is plain that vindication in this action would
have actual and palpable consequences for Fikre.

*Id.* at 1040 (emphasis added) (citations omitted).

The Ninth Circuit remanded the case for further proceedings, *id.* at 1041, and Mr. Fikre

moved the District Court for leave to file a sixth amended complaint, [ECF 125]. The court

granted Mr. Fikre's motion to amend only in part. O&O [128] at 30. It permitted Mr. Fikre to

amend his complaint to remove previously resolved claims and to plead additional *factual*

allegations related to his due process claims. *Id*. But it did not permit amendment to add any new

claims, including a proposed claim under the Religious Freedom Restoration Act ("RFRA")

(which closely resembled Mr. Fikre's previously dismissed freedom of association claims). *Id*.

On May 19, 2019, Mr. Fikre filed his Sixth Amended Complaint, in which he reasserted

and updated his procedural and substantive due process claims. [ECF 129] at 32-35.[5] Defendants

again moved to dismiss. [ECF 130]. In apparent reaction to the Ninth Circuit's decision,

Defendants attached a declaration to their motion which stated, in part, that "[Mr. Fikre] was

removed from the No Fly List upon the determination that he no longer satisfied the criteria for

placement on the No Fly List. He will not be placed on the No Fly List in the future based on the

currently available information." Defs.' Mot. Ex. B [ECF 130-2] ("Courtright Decl.") ¶ 5.

---

[5]     Mr. Fikre's due process claims, as they appeared in the Sixth Amended Complaint, had
evolved in some questionable ways given the District Court's limitation that only new *factual*
allegations could be added. First, in contrast to his Fifth Amended Complaint, Mr. Fikre alleged
that his Fifth Amendment rights were violated not just through his inclusion on the No Fly List,
but also through his more general inclusion as a listee in the TSDB. Sixth Am. Compl. [126] at
32-36. Second, he appeared to allege the deprivation of a variety of additional liberty interests,
beyond the previously alleged deprivations of his travel-related and reputational interests. *See id.*
¶¶ 117, 121, 139-40. It was unclear if those allegations were part of the reputational-injury claim,
or if they were an attempt to advance new theories or to repackage previously dismissed claims
into the due process claims. Because, as discussed below, I dismissed the Sixth Amended
Complaint on jurisdictional grounds, I did not reach the question of the propriety of these
additional allegations.

Among other arguments, Defendants claimed in their motion that this declaration—specifically, the assurance that Mr. Fikre would not be re-added to the No Fly List based on "currently available information"—sufficed to moot Mr. Fikre's due process claims. Defs.' Mot. [130] at 12-13. After Defendants filed their motion, the case was reassigned to me. Notice [134].

On November 11, 2019, I heard oral argument on Defendants' motion and ruled from the bench. Min. of Proceedings [ECF 141]. In light of Defendants' declaration that Mr. Fikre would not be returned to the No Fly List based on any "currently available information," I held that Mr. Fikre's due process claims—insofar as they were based on a theory of present or future injury to a travel-related liberty interest—did not present a live case or controversy and I dismissed them, with prejudice, on justiciability grounds. Tr. [ECF 143] at 40-41.[6] But while I agreed that Defendants' declaration dispensed with Mr. Fikre's travel-related theory of injury, I did not agree that it would be sufficient to remedy a reputational injury. *Id.* at 41-42. The problem, however, was that Plaintiff's Sixth Amended Complaint did not sufficiently allege a cognizable reputational injury. *Id.* Nevertheless, despite Mr. Fikre's multiple previous opportunities to amend his complaint, I granted him leave to file a seventh amended complaint on the "sole remaining theory" that he has suffered a reputational injury in violation of his Fifth Amendment rights. *Id.* at 42-44.

---

[6]     At oral argument I framed that decision using standing terminology, but key to my holding was that Defendants had met their burden under the voluntary cessation doctrine as laid out by the Ninth Circuit's decision in this case. *See* Tr. [143] at 40-41 ("I take into account that [Mr. Fikre] has been taken off the [No Fly] List and that a serious barrier has been put in place to putting him back on the list—that is, the declaration that he won't be put back on the list based on anything currently known.").

II.     **The Seventh Amended Complaint**

Mr. Fikre filed his Seventh Amended Complaint on December 18, 2019. [ECF 145]. The updated complaint adds approximately forty new paragraphs of allegations but is otherwise identical to the Sixth Amended Complaint. *See* Seventh Am. Compl. [145] ¶¶ 101, 114-153; Tr. [ECF 163] at 3-5.

The new allegations focus on two separate trips taken by Mr. Fikre: (1) a 2016 trip to Mecca to complete the Hajj in which Mr. Fikre traveled with fellow members of the Seattle-area Muslim community, and (2) a 2016 family trip to San Diego. Seventh Am. Compl. [145] ¶¶ 114, 141. Mr. Fikre alleges that during the course of traveling through U.S. airports as part of these two trips, the Government stigmatized him (and thus injured his reputation) by subjecting him to repeated, non-random, intensive security screening in front of his co-travelers, which led those co-travelers to believe that the Government suspected Mr. Fikre of being a terrorist. *See generally id.* ¶¶ 114-153. Mr. Fikre alleges he has suffered a variety of harms as a result of his injured reputation. *See, e.g.*, *id.* ¶¶ 138-40.

More specifically, Mr. Fikre alleges a chain of causation that breaks down into four parts. First, Mr. Fikre alleges that while he was no longer on the No Fly List at the time of the two 2016 trips, he remained a listee on the TSDB subject to non-random, intensive screenings at airports. *Id.* ¶¶ 35, 113, 116-17. Second, Mr. Fikre alleges that on both trips, because of his TSDB status, he was subjected to repeated, intensive security screenings in front of his community members (the Mecca trip) and his family members (the San Diego trip). *Id.* ¶¶ 117-18, 128-29, 143-44. Third, because the Muslim community is familiar with the consequences of being listed on the TSDB, including being subjected to intensive screenings at airports, the Muslim community members who witnessed Mr. Fikre's treatment at airport security "deduced

his TSDB status from how Defendants treated him," or, more generally, "could tell that the federal government believed Fikre was dangerous." *Id.* ¶¶ 119, 124. Fourth, because certain community members and family believed that the federal government suspected Mr. Fikre of being a terrorist, they shunned him in various ways and the stigma spread throughout Mr. Fikre's local and religious community. *Id.* ¶¶ 120-21, 127, 132-33, 138-40.

Mr. Fikre seeks a variety of declaratory and injunctive relief, including sixteen specific injunctions. *Id.* at 46-49. He asserts that his reputational injury can only be cured if Defendants "repudiate in its entirety the decision to add Fikre to the TSDB with a No Fly List annotation and maintain him there for approximately five years." *Id.* at 49.

## DISCUSSION

Defendants move to dismiss the Seventh Amended Complaint on two main grounds: (1) that Mr. Fikre lacks standing, and (2) that he fails to state either a substantive due process or a procedural due process claim. Defs.' Mot [146] at 3, 15, 19. I take each argument in turn.

### I.    Standing

Standing is a remedy-specific inquiry. *See Lyons v. City of Los Angeles*, 461 U.S. 95, 105, 109 (1983) (holding that the plaintiff had standing to pursue damages for his past injury but lacked standing to pursue injunctive relief to prevent future harm). The general rule of standing is that a plaintiff must allege (1) a concrete, particularized and personal injury that is (2) fairly traceable to defendant's allegedly unlawful conduct, and (3) is redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Where the plaintiff alleges a threatened or future injury that has not yet occurred, the potential injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to

constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient.")
(internal quotations omitted). Relatedly, "[p]ast exposure to harmful or illegal conduct does not
necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer
adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citation omitted).

Finally, when a defendant brings a standing challenge against an amended complaint that
was filed subsequent to the original commencement of the action, the proper focus in
determining jurisdiction is the factual lay of the land at the time the complaint under
consideration was filed, rather than the facts as they existed at the time the original complaint
was filed. *Northstar Financial Advisors, Inc. v. Schwab Investments*, 779 F.3d 1036, 1044 (9th
Cir. 2015).

Here, Defendants spend the bulk of their briefing arguing that Mr. Fikre has not shown
that there is a "certainly impending" risk of a future injury to his reputation sufficient to confer
standing for any prospective relief. *See* Mot. [146] at 4-7. Fair enough: many of the specific
injunctions that Mr. Fikre requests are forward looking. *See, e.g.*, Seventh Am. Compl. [145] at
48 (requesting an injunction that would require Defendants to provide written notice if they were
to re-add Mr. Fikre to the No Fly List). And to the extent Mr. Fikre seeks prospective relief, I
agree with Defendants that Mr. Fikre has not alleged a certainly impending risk of a future
reputational injury. But the allegations in the complaint concerning the reputational injury that
purportedly resulted from the 2016 Mecca and San Diego trips do not describe a future, yet-to-
be-realized harm, they describe a harm that has already occurred and is ongoing. The standing
inquiry for such a present, ongoing harm is the standard three-prong analysis of injury, causation,
and redressability.

### A.  Injury-in-fact

Injury to one's reputation can be a cognizable injury-in-fact to confer standing to bring suit. *See Meese v. Keene*, 481 U.S. 465, 474-76, 479 n.14 (1987) ("The risk of this reputational harm . . . is sufficient to establish appellee's standing . . . ."); *Robins v. Spokeo*, 867 F.3d 1108, 1112 (9th Cir. 2017) ("[H]arm to one's reputation . . . may be sufficient for Article III standing.").

Here, Mr. Fikre has alleged that the Government stigmatized him and that his reputation within his community—and even within his own family—has suffered. He has alleged specific facts that show that his injured reputation has manifested in real consequences. For example, he alleges that members of his local congregation have opposed him leading prayer or calling the adhan and refuse to share their names with him. Seventh Am. Compl. [145] ¶¶ 136, 138. That community members have stopped or reduced their patronage of his restaurant. *Id.* ¶ 139. That friends and even family members have ended their relationships with him. *Id.* ¶¶ 140, 146-47. And he has alleged that his reputation continues to suffer and that his community and family persist in shunning him. *Id.* ¶ 151.

Therefore, I hold that Mr. Fikre has sufficiently alleged a reputational injury that constitutes a concrete, particularized injury-in-fact.

### B.  Causation

The question here is whether there is a "fairly traceable" causal connection between Mr. Fikre's injured reputation and Defendants' alleged unlawful conduct: listing Mr. Fikre in the TSDB without due process. *See Lujan*, 504 U.S. at 560. "[T]he causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties, but need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs

would succeed on the merits." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846,

860 (9th Cir. 2005) (citation omitted); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th

Cir. 2011) ("A causation chain does not fail simply because it has several "links," provided those

links are 'not hypothetical or tenuous' and remain 'plausib[le].'") (citation omitted).

As described above in the background section, Mr. Fikre alleges a four-part causal chain

between Defendants' conduct and his injured reputation. I hold that Mr. Fikre's allegations at

each part are plausible and thus there is a "fairly traceable" causal connection between the

alleged injury and Defendants' alleged conduct that is sufficient for standing purposes.

There is no real dispute that the allegations regarding the first, second, and fourth steps in

the causal chain are plausible. First and second, it is plausible that despite being removed from

the No Fly List, Mr. Fikre remained a listee of the TSDB subject to intensive screening when

traveling through airports, and that he was so screened when he traveled in 2016. Fourth, it is

plausible that someone's community and family might shun him if it were revealed that the

government suspected that person of being a terrorist.

Defendants focus on the third step, where Mr. Fikre alleges that members of his

community and family discerned that the Government suspected him of being a terrorist after

observing the intensive security screening that Mr. Fikre received at the airport. Defendants

argue that Mr. Fikre "cannot establish that the Government's placement of him on the No Fly

List has caused the alleged harms to his reputation, because the Government does not disclose

watchlist status publicly" and because "the disclosure of his former No Fly List status and

subsequent removal was made publicly available through this lawsuit which [Mr. Fikre]

brought." Mot. [146] at 8 (citation omitted).

Taking Defendants' second argument first, Mr. Fikre's reputational allegations concern his alleged TSDB listee status, not his No Fly List status, so the argument is inapposite—there has been no public disclosure one way or the other in this lawsuit with respect to Mr. Fikre's possible TSDB status. As to their first argument, that the Government does not publicly disclose watchlist status, Defendants make this argument more fully when addressing the merits of Mr. Fikre's stigma-plus claim (which I discuss at length below). In short, they argue that the Government can only be causally connected to a reputational injury when the Government stigma results from an "official disclosure" of information. *See id.* at 8, 21. But Defendants cite no authority that, for standing purposes, a reputational injury is only fairly traceable to an official government disclosure of information. Nor would such a requirement make sense. The Government can surely stigmatize someone through its conduct, official or not. For example, it could stigmatize someone as a possible criminal through a false arrest conducted in public view.

Rather, the inquiry here is whether the allegations regarding this third step are plausible. I think they are. It is common knowledge for Americans who travel that airport security is tight and that anyone might be randomly subject to additional, more invasive screening upon passing through security. But while it might be unremarkable to see a member of your traveling party pulled aside for extra screening while passing through security, eyebrows would surely raise if that same person were repeatedly subjected to intense scrutiny, including at the gate (where people are not routinely re-screened) and at subsequent airports throughout the course of the journey. *See* Seventh Am. Compl. [145] ¶¶ 118, 122-23. I also find it plausible that those of Muslim faith living in America might be especially sensitive and aware of security procedures when traveling, given the pervasive and harmful stereotypes in our society that broadly associate

Muslims with terrorism.[7] Therefore, I find it plausible that Mr. Fikre's co-travelers, after viewing how he was treated, could come to the conclusion that the Government believed Mr. Fikre was potentially a terrorist, or at least a dangerous person.[8]

### C. Redressability

Having sufficiently plead an injury that is fairly traceable to Defendants' conduct, the only question remaining is whether that injury is redressable by the requested relief. Among other relief, Mr. Fikre seeks an injunction which would require that "Defendants repudiate in its entirety the decision to add Fikre to the TSDB with a No Fly List annotation and maintain him there for approximately five years." Seventh Am. Compl. [145] at 49. This injunction—and this one only—would redress Mr. Fikre's injured reputation and was explicitly contemplated by the Ninth Circuit in its recent decision in this case. *See Fikre v. FBI*, 904 F.3d 1033, 1040 (9th Cir. 2018) (stating that any reputational injury to Mr. Fikre would not be redressed "absent an acknowledgement by the government that . . . Fikre did not belong on the [watch]list").

In sum, Mr. Fikre has alleged injury, causation, and redressability sufficient to confer standing for an ongoing reputational injury for which he may seek an injunction that would require the Government to repudiate its purported decision to list him in the TSDB.

---

[7]    *See* Michael T. Luongo, *Traveling While Muslim Complicates Air Travel*, N.Y. Times (Nov. 7, 2016), https://www.nytimes.com/2016/11/08/business/traveling-while-muslim-complicates-air-travel.html.

[8]    It does not matter whether his co-travelers believed specifically that Mr. Fikre was a listee on the TSDB; it is enough that his reputation suffered because his co-travelers believed the Government suspected him of being a dangerous person or possible terrorist. Mr. Fikre's alleged TSDB status is only relevant here because it purportedly set this causal chain in motion.

## II.      Whether the Seventh Amended Complaint States a Claim

### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only

"'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not

do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### B.  Substantive Due Process Claim

In his response to Defendants' motion, Mr. Fikre seeks to "incorporate [his] prior

substantive due process arguments made in response to Defendants' prior motion to dismiss"

rather than provide any new briefing on why the particular substantive due process claim alleged

in his Seventh Amended Complaint should survive Defendants' current motion. Resp. [152] at

25. That won't cut it. If I had found the arguments made in Mr. Fikre's last round of briefing

compelling, I would not have granted Defendants' previous motion to dismiss. I thus decline to

take up his request to revisit the arguments made in his last round of briefing.

Regardless, I am persuaded by Defendants' argument that Plaintiff states no substantive

due process claim in his Seventh Amended Complaint because he alleges no facts that show

"conscience shocking" behavior by Defendants that resulted in the deprivation of a reputational

liberty interest. *See* Mot. [146] at 15-18; *see also Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir.

2006) ("[I]n order to establish a constitutional violation based on substantive due process, [a

plaintiff] must show both a deprivation of her liberty and conscience shocking behavior by the

government."). I therefore DISMISS Plaintiff's substantive due process claim with prejudice.

### C.  Procedural Due Process Claim

"To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (citation omitted).

An injured reputation, by itself, is not a liberty deprivation that can sustain a procedural due process claim. *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976)). If, however, a plaintiff is "stigmatized in connection with the denial of a 'more tangible' interest" then the plaintiff may advance what has become known as a "stigma-plus" claim. *Id.* (citing *Paul*, 424 U.S. at 701-02); *see also Ulrich v. City and County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

According to the Ninth Circuit, there are two independent ways that a plaintiff can make out a stigma-plus claim. The first route requires the plaintiff to "show that the injury to his reputation was inflicted *in connection with* the deprivation of a federally protected right." *Hart*, 450 F.3d at 1070. The second route requires the plaintiff to "show that the injury to reputation *caused* the denial of a federally protected right." *Id.*; *see also Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).[9] In either case, a legal right is sufficiently deprived or altered for the purposes of a stigma-plus claim when the plaintiff shows she "legally [cannot] do something that she could otherwise do." *Miller v. California*, 355 F.3d 1172, 1179 (9th Cir. 2004) (discussing *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)). The plaintiff must also contest the accuracy of the stigmatizing label. *Ulrich*, 308 F.3d at 982.

---

[9]      The denial or alteration of a right or status previously recognized by *state* law (as opposed to just federal law) also suffices. *See Humphries v. County of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009) (citing *Paul*, 424 U.S. at 711).

Here, Defendants argue that Mr. Fikre fails to state a stigma-plus claim for two reasons. First, they argue the Seventh Amended Complaint "does not allege facts that show public stigmatization by the Government." Mot. [146] at 21-22. Second, that it also "fails to allege a 'plus' factor . . . ." *Id*. I take each argument in turn.

### 1.  Public Stigmatization

Defendants argue that to state a stigma-plus claim, the government must officially disclose stigmatizing information. *See id.* at 20-21. More specifically, the government must publicly disclose a spoken or written statement that is defamatory. *See* Tr. [163] at 13-15. In other words, the government's unspoken conduct does not count, even if that conduct clearly imposes a stigma and injures one's reputation. *See id.*

I disagree. True, in most of (if not all) the Ninth Circuit cases that address stigma-plus claims, the underlying factual scenario was a typical defamation incident—the plaintiff had alleged that the government stigmatized him through some defamatory written or spoken statement that was released to the public. *See, e.g.*, *Hart*, 450 F.3d at 1069 (alleging defamatory statements made by police during a press conference); *Herb*, 169 F.3d at 645 (accusing prosecutors of defamatory comments). And in those cases, the Ninth Circuit has sometimes articulated the stigma-plus test with reference to the publication of stigmatizing "statements" rather than using more general language that would unambiguously encompass stigmatizing government conduct. *See, e.g.*, *Ulrich*, 308 F.3d at 982 ("Under [the stigma-plus] test, a plaintiff must show the public disclosure of a stigmatizing statement by the government . . . .").

But I think the latter is an inadvertent consequence of the former, rather than a clear decision by the Court of Appeals to limit stigma-plus claims solely to spoken or written statements. Indeed, neither party has cited a Ninth Circuit case that has explicitly considered the

question of whether stigmatizing government conduct can form the basis of a stigma-plus claim. *See* Tr. [163] at 14. And the United States Supreme Court has acknowledged that the government can injure a person's reputation through its actions as well as its speech. For example, it has warned of the stigma that can accompany the mere fact of an arrest. *Michelson v. United States*, 335 U.S. 469, 482 (1948) ("Arrest without more may nevertheless impair or cloud one's reputation."); *see also Paul*, 424 U.S. at 733 n.17 (Brennan, J., concurring in part).

It is unclear what principle would support drawing a line between government statements and conduct in the stigma-plus context. It does not matter whether your neighbors think you are a drug dealer because the police said so in a press release or because they saw dozens of agents swarming your lawn wearing jackets emblazoned with the letters "DEA." The Court has made it clear that the harm underlying such claims is the "badge of infamy" that the government stamps on an individual. *See Paul*, 424 U.S. at 705-08. It should not matter by what method the government assigns that badge.

Because I hold that stigmatizing conduct can form the basis of a stigma-plus claim, the only question here is whether Defendants engaged in such conduct. The analysis of that question plays out the same as the analysis of causation in the standing section, described above. In short, I think Mr. Fikre has plausibly alleged that Defendants have stigmatized him as a suspected terrorist (or, at least, a dangerous person) by subjecting him to intensive, repeated, non-random security screenings in front of members of his community and family during his 2016 Mecca and San Diego trips.[10]

---

[10]     In his briefing, Mr. Fikre appears to argue that he was publicly stigmatized in other ways separate from the 2016 Mecca and San Diego trips. For example, he argues that the Government stigmatized him when it "broadcast to the UAE that Fikre was a suspected terrorist," which allegedly led to his torture in the UAE. Resp. [152] at 19. He also argues his "No Fly List status became public" because he "could not hide, from his family or from his friends, the reasons for

## 2.  The "Plus" Factor

Mr. Fikre argues that his "watchlist status" has led to the denial or alteration of five legal

rights or statuses. Response [152] at 21. Specifically, that:

1. His "watchlist status led to his 106 day detainment and torture at the hands of UAE."

2. His "No Fly List status prohibited him from flying on an airplane to, from, or over the United States."

3. His "watchlist status appeared to have contributed to his indictment in the United States."

4. His "watchlist status led to his communications being intercepted in violation of his Fourth Amendment rights."

5. His "watchlist status led the Government to try and interfere with his sincere religious beliefs protected under RFRA by demanding he act as an informant as a way to get off the No Fly List."

*Id*.

Additionally, Mr. Fikre points to paragraph thirty-five of the Seventh Amended

Complaint for other "legal disabilities" that generally accompany someone who is a listee of the

TSDB and argues that these, too, constitute plus factors. *Id.* at 22-23; Tr. [163] at 23. These

"disabilities" include "lengthy and onerous secondary screening at airports; . . . the mandatory

search and copying of . . . electronic devices at borders;" and loss of "access to employment or

credentials across federal agencies and public and private infrastructure industries." Seventh Am.

Compl. [145] ¶ 35.

The question is whether any of these alleged facts constitutes a plus factor. As described

above, to state a "plus" factor Mr. Fikre must either show that (1) injury to his reputation was

---

his inability to board a plane back to the United States." *Id.* at 20. But these allegations are not
new, and this court has already rejected them as the basis for a reputational injury claim. *See
generally* Tr. [143]; *see also* Tr. [163] at 3-6 (discussing the reputational injury theory of the
Seventh Amended Complaint).

inflicted *in connection with* the deprivation of a protected right or (2) that injury to his reputation *caused* the denial of a protected right. *Hart*, 450 F.3d at 1070.

Resolution of this question is aided by the fact that counsel for Mr. Fikre has explicitly disavowed any reliance on the second route—that the 2016 reputational injuries *caused* a deprivation of rights. Tr. [163] at 34-35. Just so, given that all five of the alleged rights violations identified in Mr. Fikre's briefing occurred well before the 2016 trips. *Id.* at 22. Thus, the only issue left to decipher is whether Mr. Fikre has successfully traveled the first route by alleging that a protected right was deprived "in connection with" the reputational injury he suffered as a result of the 2016 trips.

The most straightforward example of an "in connection with" stigma-plus claim is when the police or prosecutors make defamatory comments about a plaintiff following an arrest or an indictment that was made without probable cause. *See, e.g.*, *Herb*, 169 F.3d at 645 (recognizing a stigma-plus claim where "prosecutors made defamatory comments in connection with indictments and arrests for which there was no probable cause"); *see also Hart*, 450 F.3d at 1070. In such cases, the injury to reputation and the separate deprivation of a protected right are both caused by the same set of actors, they occur in close temporal proximity, and arise out of the same set of circumstances.

A somewhat more complex example is found in *Humphries v. County of Los Angeles*, 554 F.3d 1170 (9th Cir. 2009), *rev'd on other grounds,* 562 U.S. 29 (2010). In that case, the plaintiffs advanced a stigma-plus claim on the basis of their inclusion in California's Child Abuse Central Index ("CACI"). *Id.* at 1185-92. The CACI is a statutorily created database that contains a list of individuals suspected of child abuse, which is made available to a "broad range of third parties." *Id.* at 1176-77. Other California statutes require various state and licensing

agencies to consult the CACI such that "the CACI listing plays an integral role in obtaining many rights under California law, including employment, licenses, volunteer opportunities, and even child custody." *Id.* at 1178. The plaintiffs argued that being listed on the CACI stigmatized them as child abusers and that the variety of statutory consequences of being listed on the CACI constituted a plus factor, thus creating a stigma-plus liberty interest that could not be deprived without due process of law. *Id.* at 1185.

The court quickly agreed that being listed as a suspected child abuser was stigmatizing before turning to the question of whether the plaintiffs had stated a plus factor. *Id.* at 1186. It then held that "where a state statute creates both a stigma and a tangible burden on an individual's ability to obtain a right or status recognized by state law, an individual's liberty interest has been violated." *Id.* at 1188. And it also stated that a "tangible burden" can be created when "the law creates a framework under which agencies reflexively check the stigmatizing listing—whether by internal regulation or custom—prior to conferring a legal right or benefit." *Id.* The court concluded that the CACI statute was of this nature. *Id.*

But it was not enough for the plaintiffs to point to the CACI statute's general nature for them to prevail. Rather, in concluding that the plaintiffs had demonstrated a plus factor, the *Humphries* court emphasized that the plaintiffs had proved that their status on CACI had led to an actual alteration of their rights via the designed operation of the statutory framework. *Id.* ("We have mentioned, and the district court found, that the Humphries were directly affected in their eligibility to work or volunteer at a local community center. The Humphries also introduced evidence indicating that Wendy was affected in her ability to renew her teaching credentials."). Finally, the court emphasized that its "decision is limited to those 'stigma-plus' situations where

both the defamatory statement and the tangible burden on a legal right are statutorily created."
*Id.* at 1189.

Here, Mr. Fikre has failed to plead that his 2016 reputational injury occurred in connection with the denial or alteration of a right. In explaining my reasoning, I will first discuss the five rights violations described by Mr. Fikre in his briefing. I will then address the allegations in paragraph thirty-five of the Seventh Amended Complaint.

To begin, I want to point out that four of the five rights violations (excluding the "indictment" theory) that are described in Mr. Fikre's briefing are familiar to this court. That is because each of them was at some point the foundation of a distinct, independent claim advanced by Mr. Fikre—totally separate from any stigma-plus due process claim. And each of those distinct claims was rejected by this court.[11] Thus I think it dubious, at best, to find them reincarnated as "plus" factors in Mr. Fikre's procedural due process claim. For example, it is hard to see how allegations that were too speculative to support a discrete claim of a rights violation could nevertheless be sufficient to state a plus factor. In any event, even if these theories could be rejected as plus factors on procedural grounds, they also fail on the merits.

The purported connection between all five rights violations and Mr. Fikre's 2016 reputational injury is that all roads lead back to his alleged status as a listee in the TSDB. As a

---

[11]    The torture theory involving the UAE was discussed extensively at the oral argument on Defendants' motion to dismiss the Sixth Amended Complaint, and I held that that theory was too speculative to serve as a basis for standing. *See* Tr. [143] at 7-9, 15, 24-27, 40-42; *see also* O&O [128] at 2-4 (describing other iterations of Mr. Fikre's torture theory). As discussed at length in the procedural history section of this opinion, Mr. Fikre's claims involving the No Fly List and his travel interest have also been dismissed with prejudice. Likewise, his claim that his communications were intercepted in violation of his Fourth Amendment rights was dismissed with prejudice. O&O [105] at 29-35. Finally, his claim that he was coerced to become an informant in violation of RFRA was disallowed as outside the scope of the court's leave to amend (it also closely resembled an earlier claim that had been dismissed with prejudice). O&O [128] at 22-30.

result, Mr. Fikre argues that, under *Humphries*, these violations constitute "tangible burdens" on a legal right that were suffered in connection with a reputational injury. *See* Resp. [152] at 22; Tr. [163] at 24-25. But four of the five theories suffer from the same general flaw which precludes them from constituting a plus factor under the logic of *Humphries*. Neither being tortured, being indicted, having your communications intercepted in violation of the Fourth Amendment, nor being coerced to act as an informant in violation of your religious beliefs is a "tangible burden" on a legal right that is "statutorily created," i.e., that the burden is created by the statutory scheme. *Humphries*, 554 F.3d at 1189. Setting aside the fact that the TSDB is authorized and governed by a presidential directive rather than a statute, Watchlisting Overview [130-1] at 1, the TSDB process creates no scheme—either formally or informally—which purposefully subjects a TSDB listee to any of these legal violations. Thus, any analogy to *Humphries* with respect to those four theories is inapposite.

That leaves Mr. Fikre's argument that he states a plus factor by alleging that his "No Fly List status prevented him from traveling to, from, or over the United States." Resp. [152] at 21. In general, there might be a closer analogy to *Humphries* if an individual were to suffer a stigma as a result of their placement on the No Fly List and then were denied the ability to travel due to the No Fly List, given that denying the ability to travel is an intended consequence of the No Fly List scheme. But that is not what happened here. The only stigmatic injury for which Mr. Fikre has established standing is the 2016 reputational injury he allegedly suffered as a result of the Mecca and San Diego trips. At the time of that injury, Mr. Fikre was not on the No Fly List. Nor was he prevented or significantly impeded from traveling during those two trips. To be sure, Mr. Fikre alleges in his complaint that he was prevented from traveling to the United States as a result of his earlier placement on the No Fly List. *See, e.g.*, Seventh Am. Compl. [145] ¶¶ 89-

105. But those alleged events occurred years before Mr. Fikre's 2016 Mecca and San Diego trips and are far too attenuated in both time and circumstance to be deemed as having occurred "in connection with" his 2016 reputational injury.

That is a problem that plagues all five of the "plus" theories Mr. Fikre lists in his briefing. Other than the alleged connection of these alleged rights violations to Mr. Fikre's TSDB status, the surrounding circumstances of each violation has absolutely nothing to do with the events of Mr. Fikre's 2016 reputational injury. They involve different actors, they occurred years apart (with the alleged right violations all occurring at a time when Mr. Fikre had suffered no cognizable reputational injury) and happened for a host of possible different reasons. Mr. Fikre's most fundamental and insuperable problem is this: an alleged connection to Mr. Fikre's purported TSDB status cannot link what are otherwise completely discrete events to Mr. Fikre's later reputational injury in a way that is sufficient to state a stigma-plus claim.[12]

Finally, the allegations in paragraph thirty-five of Mr. Fikre's complaint do not establish a plus factor. With the exception of more significant security screening, Mr. Fikre has not alleged that he has personally suffered any of these consequences, such as the denial of credentials or employment. As described above, the *Humphries* court held that it was insufficient for a plaintiff to merely point to general possible consequences of a stigmatizing statutory scheme without alleging that he has personally suffered any of those consequences. *Humphries*, 554 F.3d at 1186; *see also Abdi v. Wray*, 942 F.3d 1019, 1033 (10th Cir. 2019) (holding that the plaintiff's

---

[12]    Separately, while I do not wish to retread arguments against theories that have already been rejected by this court (such as the speculative aspects of Mr. Fikre's torture theories), I want to point out that Mr. Fikre's third "plus" theory, that his "watchlist" status contributed to his indictment in the United States, fails for the additional reason that he has not alleged that he was the subject of anything but a duly-issued indictment. *Cf. Herb*, 169 F.3d at 645 (recognizing an indictment issued without probable cause as a "plus" factor).

stigma-plus argument regarding TSDB-related consequences failed because the plaintiff "did not specifically allege that he has actually been prevented from participating in any of the [described] activities"). And while Mr. Fikre alleges he was subjected to intensive, non-random security screening during his 2016 Mecca and San Diego trips, the level of extra screening he received does not implicate a travel-related interest which suffices to constitute a "plus" factor. *See Latif v. Holder*, 969 F.Supp.2d 1293, 1302-05 (D. Or. 2013) (holding that the plaintiffs had established a "plus" factor based on a travel interest because they were "legally banned from traveling by air"); *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) ("burdens on a single mode of transportation do not implicate the right to interstate travel.") (citing *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999)).

    In sum, Mr. Fikre had two available routes to demonstrate a "plus" factor. He could either show that his 2016 reputational injury *caused* the deprivation of a right, or he could show that the reputational injury occurred *in connection with* a deprivation of a right. But Mr. Fikre has disavowed that his 2016 reputational injury caused the deprivation of a right, and he fails to identify an alleged deprivation of a right that occurred "in connection with" his 2016 reputational injury. Therefore, because Mr. Fikre has not alleged a viable "plus" factor, he fails to state a stigma-plus procedural due process claim. Because Mr. Fikre has already received multiple opportunities to amend his complaint and this particular claim, and because I believe further amendment would be futile, I dismiss his procedural due process claim with prejudice.

//

//

//

//

## CONCLUSION

For the foregoing reasons, I GRANT Defendants' Motion to Dismiss [146] and DISMISS

Plaintiff's Seventh Amended Complaint [145] in its entirety, with prejudice.

IT IS SO ORDERED.

DATED this __12th__ day of August, 2020.


_Michael W. Mosman_
_____
MICHAEL W. MOSMAN
United States District Judge